UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CRIMINAL NO.: 1:08cr00214-RMC |
| v. | ) |
| | ) |
| NEMR ALI ZHAYTER, | ) |
| | ) |
| Defendant. | ) |

**GOVERNMENT'S RESPONSE TO DEFENDANT ZAITAR'S MOTION FOR COURT ORDER RELATED TO DISCOVERY AND 'REGULATION OF TRIAL' ISSUES**

The United States of America, by and through its attorneys, Meredith A. Mills and Tritia L. Yuen, United States Department of Justice, Narcotic and Dangerous Drug Section, Criminal Division, files this response to Defendant's Motion for Court Order Related to Discovery and 'Regulation of Trial' Issues.

I.   Response to Defendant's Request for Deadlines

In paragraph 2 of his motion, Defendant has represented that the Court ordered the government to provide to the defense by August 8, 2011, the following: (1) notice of any evidence the government intends to introduce at trial pursuant to Fed. R. Evid. 404(b); (2) notice of expert testimony; (3) draft transcripts and translations of any recordings that the government intends to introduce at trial; and (4) copies of all materials received from the Mutual Legal Assistance Treaty (MLAT) to Paraguay, including translations of any documents the government intends to introduce at trial. The government respectfully submits that the Court did order the government to produce by August 8, 2011, (1) notice of any 404(b) evidence, and (2) notice of expert testimony. However, the Court did not set this deadline for production of draft transcripts and translations of any recordings that the government intends to introduce at trial. Rather, the

government represented that it was disclosing the transcripts as they were being received from the vendors who are completing the transcriptions and translations, and that much of the delay in the government's transcribing and translating additional is due to past representations regarding guilty pleas.  Moreover, the government has represented that it delayed incurring the cost of transcribing and translating these additional recordings to provide Defendant the opportunity to earn the extra point, pursuant to U.S.S.G. §3E1.1, for acceptance of responsibility given the past indications of guilty pleas.[1]  Therefore, the government again asserts that it will provide draft copies of transcriptions and translations of any recordings as soon as possible.  Although this is unlikely to occur by August 8, 2011, the government has provided Defendant with draft copies of many transcripts already, and will continue to provide draft copies as they are received and reviewed.

The government also concurs with Defendant's representation that it must provide copies of all materials received from the MLAT to Paraguay by August 8, 2011.  In fact, the government intends to provide copies of the relevant MLAT materials, by Friday, July 29, 2011.  The government also intends to provide the English translations of materials that the government may use at trial to the defense by August 8, 2011.[2]  As with the other translated materials, the government will provide draft copies to Defendant as soon as they are received and reviewed.

---

[1] Specifically, U.S.S.G. § 3E1.1 exists as a mechanism to account for a defendant's assisting the government by "permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently."

[2] The government has secured special software to assist with the translation of these materials.  Assuming that the software is received and installed as planned, the defense will receive these English translations by August 8, 2011.  Should complications arise, the government will advise defense counsel as soon as possible.

In paragraph 4 of his motion, Defendant seeks an August 8, 2011 deadline for a number of discovery items. The government responds to each item as follows:

a.  Documentation of Forensic Evidence

The government concurs with setting an August 8, 2011 deadline for production of documentation of any forensic evidence. The January 4, 2011 Paraguayan MLAT contains drug (cocaine) and other electronic media forensic reports.

b.  Access to Physical Evidence

The government concurs with setting an August 8, 2011 deadline for access to viewing and photographing any physical evidence the government seeks to introduce at trial. The government notes that defense counsel never has sought access to any physical evidence prior to the filing of the instant motion, and the government has never withheld any such access.

c.  Identities of Law Enforcement Agents who took Defendant's Statements

The government concurs with setting an August 8, 2011 deadline for disclosure of the identity of law enforcement agents who took Defendant's statements in this matter.

d.  Disclosure of Defendant's Statements

The government concurs with setting an August 8, 2011 deadline for disclosure of all statements of the defendants.

e.  Jencks Materials and Translations

The government objects to Defendant's request for a standing order that all prior statements of any witness be provided in the original language and transcripts of the translation into English. The government objects on that basis that prior statements of witnesses need not be produced before a witness is cross-examined, and that English translations of *all* such statements is not required, and would create an impermissible burden on the government.

The production of witness statements is governed by Title 18, United States Code, § 3500(b) (the "Jencks Act"), and Federal Rule of Criminal Procedure 26.2(a).  "After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b).  "After a witness . . . has testified on direct examination, the court, on motion of a party who did not call the witness, must order" the production of any relevant witness statement.  Fed. R. Crim. P. 26.2(a); *see United States v. Celis*, 608 F.3d 818, 835 (D.C. Cir. 2010) ("The prosecution also must disclose under the Jencks Act, 18 U.S.C. § 3500, statements of the prosecution witness after the witness has testified on direct examination . . . .").

As each rule makes clear, a defendant is not entitled to a witness statement until after the witness has completed direct testimony.  These rules provide for the production of materials to be used for appropriate impeachment.  The timing of the disclosure requirements shows that the defendant has no right to these materials for investigative purposes.  *See also Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("It does not follow from the prohibition against concealing evidence favorable to the accused that the prosecution must reveal before trial the names of all witnesses who will testify unfavorably.").

Courts have regularly held that the Jencks Act's prohibition against disclosure of witness statements prior to the completion of direct examination may not be ignored.  *See*, *e.g.*, *United States v. Lewis*, 35 F.3d 148, 150-51 (4th Cir. 1994) (holding the district court erred when it ordered the government produce all Jencks Act material prior to trial, as "such an order is plainly inconsistent with the language of the Act"); *In re United States*, 834 F.2d 283, 287 (2nd Cir. 1987) (holding "the district court had no inherent power to modify or amend the provisions

of...[the Jencks] Act"); *United States v. Spagnuolo*, 515 F.2d 818, 821 (9th Cir. 1975) (permitting district courts to compel disclosure contrary to the language of the Jencks Act would frustrate the purpose of the Act); *United States v. Beckford*, 962 F. Supp. 780, 787 (E.D. Va. 1997) ("a district court may not order the disclosure of Jencks material earlier than provided by statute"); *United States v. Poindexter*, 727 F. Supp.1470, 1484 (D.D.C. 1989) (noting that even in a complex case, "the government is technically not required to produce witness statements pursuant to the Jencks Act, 18 U.S.C. § 3500, in advance of trial").

That the rules do not require the production of witness statements until after the witness who made the statement has testified demonstrates that a defendant only has a right to a witness statement for the purposes of impeaching the witness who made it. *Palermo v. United States*, 360 U.S. 343, 349 (1959) ("[The Jencks Act] manifests the general statutory aim to restrict the use of such statements to impeachment."). Accordingly, Defendant's claim that he has a right to witness statements six weeks before trial is unfounded. *See also United States v. Tarantino*, 846 F.2d 1384, 1414 (D.C. Cir. 1988) (stating that the Jencks Act is the only means to obtain statements of government witnesses). Nevertheless, the government submits that disclosure of all Jencks material not later than one week prior to trial would afford defense counsel more than adequate time to make effective use of the material, to prepare for cross-examination and to prevent unnecessary delays in the trial.

The government further submits that it is not required to provide English translations of all witness statements to the defense. Defendant cites no case law supporting his request. Indeed, in *United States v. Celis*, the D.C. Circuit found that the district court properly denied defense counsel's request for all discovery documents to be translated into English. 608 F.3d at 840-41. In *Celis*, the D.C. Circuit noted that although the district court has discretion in deciding

what documents it may require the government to translate into English, the Constitution certainly does not require such translations. *Id.* at 841.

Although Defendant cites to another case in which such translations were ordered, he presents no basis for why this case or the present circumstances are similar to that case. Accordingly, the government submits that Defendant's request should be denied.

    f.    <u>Other Witness Statements</u>

The government objects to Defendant's request for the government to produce all prior statements of overseas witnesses and notes of witness interviews by August 8, 2011. For the same reasons articulated above, the government submits that there is no legal authority for production of witness statements pursuant to the Jencks Act before trial. The government agrees to disclose all Jencks material not later than one week before trial, which affords defense counsel sufficient time to prepare for cross-examination of witnesses at trial.

    g.    <u>Production of Law Enforcement Witnesses</u>

The government objects to Defendant's request that the government make available any law enforcement agents who investigated the case or took witness statements. The request for production of all U.S. and foreign law enforcement witnesses has been improperly made, and should be denied.

First, as to the request for production of U.S. law enforcement witnesses, section 301 of Title 5 of the United States Code gives federal agencies the power to proscribe regulations to govern, *inter alia*, subpoenas of agency employees. *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468 (1951). Accordingly, 28 C.F.R. 16.21, *et seq.*, known as the *Touhy*

regulations, governs requests for production of witnesses who are employees of federal agencies. It states:

> If oral testimony is sought by a demand in a case or matter in which the United States is a party, an affidavit, or, if that is not feasible, a statement by the party seeking the testimony or by the party's attorney setting forth a summary of the testimony sought must be furnished to the Department attorney handling the case or matter.

28 C.F.R. 16.23(c). In civil contexts, the D.C. Circuit has upheld application of the *Touhy* regulations as constitutional and enforceable. *See Yousuf v. Samantar*, 451 F.3d 248, 251 (D.C. Cir. 2006) (upholding application of the State Department's *Touhy* regulations in a civil context); *see also In re Apollo Group Inc. Sec. Litig.*, Misc. Action No. 06-558 (CKK), 2007 WL 778653, at *5) (D.D.C. 2007). Other Circuits have also upheld the Department of Justice's *Touhy* regulations. *See United States v. Wallace*, 32 F.3d 921, 929 (5th Cir. 1994) (applying Department of Justice *Touhy* regulations); *United States v. Allen*, 554 F.2d 398, 406 (10th Cir. 1977) (same); *United States v. Bizzard*, 674 F.2d 1382, 1387 (11th Cir. 1982) (same); *United States v. Marino*, 658 F.2d 1120, 1125 (6th Cir. 1981) (same); *see also United States Soriano-Jarquin*, 492 F.3d 495, 504 (4th Cir. 2007) (applying Department of Homeland Security *Touhy* regulations).

When the defense has properly submitted its request for a witness subpoena, these regulations set forth the limits within which a subpoena directed to a DOJ employee can proceed. The need for compliance with these regulations has been upheld by the Supreme Court in *United States ex rel. Touhy v. Ragen*. In *Touhy*, an FBI agent, following the instructions of the Attorney General of the United States and Department of Justice regulations, refused to comply with a subpoena *duces tecum,* in the district court. The district court held the FBI agent in contempt for his refusal to testify. The court of appeals reversed, and the Supreme Court granted *certiorari*.

On review, the Supreme Court limited its examination to whether refusal by a subordinate of the Department of Justice to submit papers to the court in response to a subpoena *duces tecum* was proper, on the ground that the subordinate was prohibited from making such submission by his superior and a federal regulation. *Id.* at 465-67.

In holding that the Attorney General had the authority to validly issue the regulations which were followed by the FBI agent, the Court noted that "[w]hen one considers the variety of information contained in the file of any government department and the possibility of harm from unrestricted disclosure in court, the usefulness, indeed the necessity, of centralizing the determination as to whether subpoenas *duces tecum* will be willingly obeyed or challenged is obvious. *Id.* at 468.

In this case, Defendant has not identified which witnesses he needs at trial, let alone provided any summary of the proposed testimony. Aside from the procedural defect, the government notes that should the law enforcement agency itself refuse to produce properly identified witnesses at trial, this Court lacks jurisdiction to compel production. The Court lacks jurisdiction because of the long and well-established principal that the United States, its agencies and instrumentalities, are immune from suit except as Congress has expressly consented. Only upon such consent may suit be brought in accordance with the strictest observance of and adherence to its terms. Moreover, the precise terms of that consent define any court's jurisdiction to entertain an action brought pursuant to it. *See, e.g.*, *United States v. Dalm*, 494 U.S. 596, 608 (1990); *United States v. Mottaz*, 476 U.S. 834, 841 (1986); *Block v. North Dakota*, 461 U.S. 273, 287 (1983); *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *United States v. Kubrick*, 444 U.S. 111, 117-118 (1979); *United States v. Testan*, 424 U.S. 392, 399 (1976); *United States v. Sherwood*, 312 U.S. 584 (1941). Absent a waiver by the United States of its

sovereign immunity, the proper course of action would be a challenge to the final agency decision through the Administrative Procedure Act, 5 U.S.C. § 701-706.  It is equally well established that subject matter jurisdiction can never be waived and may be raised by a court *sua sponte* at any time.

Second, regarding foreign law enforcement witnesses, the government has no authority to compel the appearance of foreign law enforcement officers.  Rather, the government must submit a formal request pursuant to the applicable MLAT, for the presence of the witnesses.  Although the government has requested the presence of some witnesses pursuant to an MLAT to Paraguay, it cannot be certain that the witnesses Defendant wants to testify at trial are covered by the MLAT because Defendant has not identified which witnesses he is requesting.  Should Defendant identify these witnesses, the government will be in a better position to determine whether it must submit additional MLATs; the government also will need to advise the Court about whether sufficient time exists for the foreign government to respond and produce the witnesses in time for the September 19, 2011 trial date.

Notwithstanding the incredible and unreasonable burden it would place on the government to transport a dozen or more witnesses to the District of Columbia to wait for four weeks or more (the length of the trial) without any indication about whether or to what they will testify at trial, the government has no obligation to compel the presence of the U.S. law enforcement witnesses at this time; the government has no ability to compel the presence of the foreign law enforcement witnesses.  The Court should deny this request absent the defense's adherence to the proper procedure for such requests.

h.      Impeachment Materials Pursuant to <u>*Giglio v. United States*</u>

Finally, the government objects to Defendant's request for impeachment material by August 8, 2011, pursuant to *Giglio v. United States*. The government further objects to the request for the disclosure of the investigating agency's entire file on the confidential witnesses.

<u>Early disclosure of *Giglio* Materials</u>

Defendant asserts that *Brady* material includes *Giglio* and Jencks materials. Preliminarily, the government notes that although the principles of *Brady* have been extended to include impeachment materials, *see United States v. Bagley*, 473 U.S. 667, 676 (1985), Jencks materials constitute a separate category of discoverable material. *See United States v. Williams Companies, Inc.*, 562 F.3d 387, 396 (D.C. Cir. 2009) (distinguishing between *Brady* and Jencks materials); *see also United States v. Caro*, 597 F.3d 608, 620 (4th Cir. 2010) ("Rule 16 differs from *Brady* . . . .") (citing *United States v. Baker*, 453 F.3d 419, 424 (7th Cir. 2006)); *United States v. Conder*, 423 F.2d 904, 911 (6th Cir. 1970). The government hereby states that it is not aware of any exculpatory *Brady* materials at this time. Should the government uncover any exculpatory *Brady* materials, it will disclose them immediately. *See also United States v. Pray*, 764 F. Supp. 2d 184, 189 (D.D.C. 2011) (Collyer, J.) ("[T]he Court agrees that *Brady* disclosure is a *trial* right.").

To the extent that Defendant's request should be construed as a request for *Giglio* materials, the government asserts that disclosure so far in advance of trial is improper. Impeachment material under *Giglio* must be disclosed "at such a time as to allow the defense to use the material effectively in the preparation and presentation of its case, even if satisfaction of [*Giglio*] requires pre-trial disclosure." *United States v. Pollack*, 534 F.2d 964, 973 (D.C. Cir. 1976). Where Giglio material can only be used to challenge the credibility of Government

witnesses, courts generally have held that a defendant's right to a fair trial does not require pretrial production. *See Weatherford*, 429 U.S. at 559; *Celis*, 608 F.3d at 836-37. Courts routinely have refused to order pretrial production of *Giglio* materials, particularly when the purpose of obtaining the materials is to ascertain areas for impeachment. *See, e.g., United States v. Rinn*, 586 F.2d 113, 119 (9th Cir. 1978) (information concerning "favor or deals" merely goes to the credibility of the witness and it need not be disclosed prior to the witness testifying); *Hemphill v. United States*, 392 F.2d 45, 48 (8th Cir. 1968) ("assertion that the government should have informed the defendant prior to trial of the criminal record of the government's witnesses is utterly lacking in merit, and requires no further comment"). Because the defense is requesting the agency files for impeachment purposes, pre-trial disclosure is unwarranted.

Rather, courts often have held that the defendant's right to a fair trial is fully protected if disclosure is made the day the witness testifies. *See United States v. Higgs*, 713 F.2d 39, 43 (3rd Cir. 1983). Although trial courts maintain discretion in ensuring that the government provides timely disclosure of favorable material to the defense, they usually do so in a way that properly balances "the potential dangers of early discovery," with the defense's ability to use such material effectively. *Pollack*, 534 F.2d at 973-74. Notably, "'[t]he Supreme Court has never established a specific amount of time before trial when a *Brady* disclosure regarding witnesses must be made,' so long as it is made in time for the defense to prepare and present its case effectively." *Pray*, 764 F. Supp. 2d at 189 (citation omitted). And specifically, as to *Brady* and *Giglio* information regarding confidential witnesses, "the interests of justice would not be served by premature release of information that could compromise the security and safety of witnesses and informants who have been cooperating with law enforcement." *United States v. Edelin*, 128

F. Supp. 2d 23, 31 (D.D.C. 2001). Thus, in cases such as this where there exist witness security concerns, the government submits that early *Giglio* disclosure is unwarranted.

In *United States v. Presser,* 844 F.2d 1275 (6th Cir. 1988), the Sixth Circuit reviewed a district court order that the government disclose to the defense before trial the names and addresses of all government witnesses and the known records of prior criminal convictions of prospective witnesses, based on that court's interpretation of *Brady* and *Giglio* obligations. The Sixth Circuit vacated the discovery order stating that "the district court overstepped its authority when it ordered the government to disclose impeachment evidence before trial." The court concluded that neither *Giglio* nor *Bagley* were inconsistent with the tenet on which the *Brady* doctrine was based. "Neither case, however, gives the defense a general right to pre-trial discovery of evidence impeaching the government's witnesses, where the prosecution denies that any such material is exculpatory and material under *Brady*." 844 F.2d at 1283. Although pre-trial disclosure of *Giglio* materials clearly is not required by law, the government agrees to provide defense with all *Giglio* materials one week before trial begins. This satisfies Defendant's concern about having sufficient opportunity to prepare to cross-examine witnesses.

<u>Request for Entire Confidential Witness Files</u>

Defendant's request for the entire confidential witness files is improper because "[a] defendant's right to discover exculpatory evidence does not include unsupervised authority to search through the [government's] files." *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987). "Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance." *Id.* Accordingly, the government is not required to disclose the investigating agency's entire file on the confidential witnesses. *See also Weatherford*, 429 U.S. at 546 ("[T]here is no general constitutional right to discovery in a criminal case, and *Brady* did not

create one."). So long as the government discloses the information required under the law, discovery obligations are satisfied. *See Smith v. Pennsylvania*, 376 U.S. 354, 355 (1964) (remanding a case to allow the government to respond to specific requests for witness statements taken by the FBI that it previously was not informed of, but silent as to the Solicitor General's previous claim of confidential privilege when the defense first made a "broad-based demand for virtually the entire FBI file on the matter). Defendant's concern about the government withholding information about benefits given to any confidential witnesses is unfounded. The government will disclose one week before trial all *Giglio* materials of which it is aware, including the benefits received, relevant criminal history, and any statements made by law enforcement agents regarding the witness's credibility or misconduct.

In *United States v. Prochilo*, 629 F.3d 264, 268-69 (1st Cir. 2011), the United States Court of Appeals for the First Circuit, reversed the district court's order granting the defendant's request "that the government disclose all cooperator-related material in its possession." The First Circuit expressly held that these materials did not fall under *Brady*. *Id.* at 268. The First Circuit also stated that the defendant "must make a some showing that the materials in questions could contain favorable, material evidence" and "should be able to articulate with some specificity what evidence he hopes to find in the requested materials, why he thinks the materials contain this evidence, and finally, why this evidence would be both favorable to him and material." *Id.* at 268-69 (citation omitted). The First Circuit specifically rejected the defendant's argument that only defense counsel can judge whether evidence is favorable and material to the defense, citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987). Accordingly, the First Circuit reversed the district court's ruling, noting that requiring disclosure of all cooperator-related materials "shifted from the government to the defendant the primary authority to assess whether material in the

government's possession must be disclosed, and in so doing endorsed a broad rule of discovery in criminal cases; *Brady* permits neither." *Id.* at 270 (citation omitted).

Similarly here, Defendant's request for the entire confidential informant file is premised on the assertion that "[t]hat file contains an assortment of information that is discoverable under *Brady* and its progeny." Def. Mot. at 9. The government is well aware of its obligations pursuant to *Brady*, *Giglio*, and Rule 16, and will disclose the required information one week before trial commences. The government respectfully submits that the Court should deny Defendant's request for the entire file.

II.     Government's Request for Deadlines

The government hereby requests the following additional deadlines for regulation of trial.

a.      Transcript Edits

The government requests that the defense submit any proposed edits to the draft transcripts provided by the government to date, by August 19, 2011. Proposed edits to any additional draft transcripts provided by the government must be submitted within 2 weeks of the receipt of the transcript.

b.      Transcripts for Cross-Examination

The government requests that the defense provide to the government copies of any transcripts (other than those provided to the defense by the government) that it intends to use at trial (for cross-examination or in its presentation of evidence), by August 19, 2011. The government will provide to the defense any proposed edits to these draft transcripts by August 29, 2011.

      c.      <u>Translation/Interpretation Challenges</u>

As was made apparent at the last status conference on July 12, 2011, the instant case presents several unique translation and interpretation difficulties. In addition to the challenges defense counsel highlighted about finding interpreters to aid their communication with their clients, the government also has faced significant translation and interpretation difficulties. While the government is taking every measure to address these difficulties, new challenges continue to arise and they will be very challenging, costly, and time-consuming to overcome. Further, for purposes of case preparation and trial, this case will involve four languages in addition to English: Spanish, Portuguese, Levantine Arabic and, to a lesser extent, Romanian. The government is making every effort to secure only Levantine Arabic linguists to ensure the utmost accuracy in the transcription and translation of the audio evidence in this case, as well as for the translation of the documentary evidence, given the difficulties with regards to the dialect of Arabic that the defendants speak. Therefore, the government is unable to contract the services of Sudanese, Egyptian or other Arabic dialects for the purposes of this case.

The government has the additional restriction that linguists hired by us must hold at minimum a moderate risk level background investigation. This restriction is severely limiting the pool of linguists from which the government can hire for case preparation, and slowing down the pace at which the translations/transcriptions are being completed. In addition, the government is making every effort to avoid a potential conflict of interest that might arise if the government were to contract linguists who are expected to serve as court interpreters for trial. Unless defense counsel stipulates to the translations, the government will have to call as many as 5 or more linguists to be witnesses at trial. This, of course, creates a conflict for the interpreters

hired by the court for trial. The government has advised the Court's Office of Interpreting Services about these complications.

The government has consulted with the two language companies that hold contracts with the Criminal Division to provide language services, and only one company has the Arabic resources available to handle any portion of the transcriptions and translations for this trial. This company can only take a portion of the transcription/translation work, however, and the government currently is reaching out to other language companies that may be able to handle the remainder of the work. The government has contracted with another company, which has the Arabic resources; however, the company does not have many translators who hold the appropriate level of security clearance. The government has contracted with this company the amount of work that their cleared resources can handle in a reasonable amount of time.

At this time, the government still has a large portion of audio evidence to be transcribed, and is attempting to do so in a timely manner for production to the defense, and for trial. The government faces the additional complication that many of the recorded audio evidence contain conversations that switch constantly between English, Arabic, Portuguese and Spanish. These are particularly difficult to transcribe, given that each of the different linguists has to listen to the recording in its entirety to ensure that they transcribe all of the portions spoken in the language of their expertise. This alone can triple or even quadruple the amount of time it takes the companies to complete the transcription and translation, and even further complicates and prolongs their quality review. The government will continue to advise the Court and defense counsel about these challenges and the government's progress in securing accurate transcriptions and translations of the foreign language audio evidence it intends to introduce at trial or motions hearings. The government requests a telephonic or in-court status conference early during the

week of August 1, 2011, so that it may advise the Court and the defense about the status of the transcriptions/translations, and whether the government may need to seek a continuance.

For the foregoing reasons, the government respectfully asks that the Court grant in part and deny in part Defendant's motion.

Date: July 26, 2011                                    Respectfully submitted,

                                                       ARTHUR G. WYATT
                                                       Chief
                                                       Narcotic and Dangerous Drug Section
                                                       Criminal Division
                                                       United States Department of Justice

                           By:           /s/
                                                       Tritia L. Yuen
                                                       Meredith A. Mills
                                                       Trial Attorneys
                                                       Narcotic and Dangerous Drug Section
                                                       Criminal Division
                                                       United States Department of Justice
                                                       1400 New York Avenue, N.W., 8th Floor
                                                       Washington, DC 20530
                                                       Telephone: (202) 616-2251
                                                       E-mail: Tritia.Yuen@usdoj.gov

CERTIFICATE OF SERVICE

    I hereby certify that on the 26th day of July 2011, I filed the foregoing Notice of Appearance with the Clerk of the Court via the CM/ECF system which will deliver a Notice of Electronic Filing to all counsel of record.

    By:      /s/
            Tritia L. Yuen