**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| vs. | * | Case No. 1:08-cr-00214-RMC |
| | | 1. |
| **NEMR ALI ZHAYTER,** | * | |
| **Defendant** | | |
| | ****** | |

**REPLY TO GOVERMENT'S RESPONSE TO DEFENSE MOTION
RELATING TO DISCOVERY AND THE REGULATION OF TRIAL**

Nemr Ali Zhayter, by his undersigned counsel, hereby respectfully replies to the Government's Response to Defendant Zaitar's motion regarding issues of discovery and the regulation of trial. (Docs 26 and 23). In general, the government response ignores the unique foreign aspects of this case, which make it necessary that it produce discovery earlier than might otherwise be appropriate and which require that discovery be translated for use by the defense. In this case, waiting until one-week before trial and producing materials at that time without translation will violate Mr. Zhayter's Fifth and Sixth Amendment rights to a fair trial, to assist in his defense, to due process of law, to present a defense and will impede the ability of his counsel to provide investigate the case, interview witnesses, prepare for trial and otherwise provide him with effective assistance of counsel.

**FACTUAL BACKGROUND**

This case is unique in ways that materially affect the production of discovery and the manner in which this Court should regulate the trial in this case.

### A. Language Issues

None of the evidence in the case is in English, except as the government has produced translations of the original materials. The case primarily consists of recorded conversations in Arabic, with some phrases in Portugese and Spanish thrown in for good measure. The case also involves Romanian speakers. The defendants, who are of Lebanese descent, speak Arabic. Defense counsel do not read or speak any Arabic. While the defendants also speak a little Spanish and Portugese and some English learnt while detained pretrial in the case, their lack of fluency in those languages prevents intelligent discussion with counsel in the absence of an interpreter.

Defense counsel are unable to review documents and recorded materials unless the materials are first translated. Defense counsel are also unable to discuss the discovery with the defendants unless the materials are first translated.

Significantly, the government itself acknowledges that "the instant case presents several unique translation and interpretation difficulties," which "will be very challenging, costly, and time-consuming to overcome." Gov't Response at 15.

### B. Events Wholly Outside the United States

All the alleged conduct took place outside the United States in far-flung locations including Paraguay, Brazil, Spain, Romania, Lebanon, Turkey, Africa, and Afghanistan. Law enforcement agents from Romania and Paraguay and perhaps other countries were involved in various aspects of the case. There is no physical evidence in the United States. No drugs, money, bank accounts, firearms, cars, drug ledgers or any other item was seized in the United States. All persons who may have witnessed any of the alleged events were situated outside the United States. All fact-witnesses except DEA agents and possibly the confidential source, are located in foreign countries. In sum,

all investigation in the case will need to be done in a foreign country. Any documents will be in a foreign language and will need to be translated in order that the defendants and counsel may understand it and use it for trial.

Moreover, Mr. Zhayter never traveled outside Paraguay during the relevant period. Mr. Zhayter also did not meet or discuss the alleged importation of heroin into the United States with the confidential source, the undercover officer or anyone else.

### C.   Volume of Discovery Will Likely Be Extensive And in a Foreign Language

While the defense does not know the number of witnesses the government will present or the extent of the materials that it proposes to produce, delaying such production until one week before trial is likely to be too late. Undersigned counsel is of the opinion given her experience with international importation conspiracies that the materials the government will produce at the last minute will be extensive. In light of the unique language issues and the situs of events in this case, it is likely that it will be impossible for defense counsel to have the materials translated in time for use during trial or to consult with the defendant. Unless there is earlier production, the Court will have to grant continuances to accommodate the need to translate the materials. Even if translation were possible in such a short time, it will be substantially more expensive to have translations completed on an expedited basis than were it done in a more timely fashion.

### D.   Defendants Are Indigent

Mr. Zhayter and his brother are indigent. Each is represented by solo practitioners and must rely on the approval of this Court before they can undertake any investigation or contract for translation services. Unlike the government, they do not have at their disposal multiple law enforcement agents, the cooperation of foreign governments, and the assistance of multiple lawyers,

paralegals, and computer and other support personnel.

Against this unique background, the government's argument that it should not be required to produce *Giglio* material until one week before trial or later is unreasonable. Its request that it not be required to translate the discovery is also unreasonable. If this Court grants the government's proposal, it will result in a violation of Mr. Zhayter's fair trial rights under the Fifth and Sixth Amendment, to due process of law, and to present a defense. It will also impede the ability of his counsel to investigate the case, interview witnesses and otherwise provide effective assistance of counsel, and prevent him from assisting in his own defense.

### A.     *Brady/Giglio* Materials Must Be Disclosed Immediately

The D.C. Circuit has consistently held that the government must disclose *Brady/Giglio* materials "at such a time as to allow the defense to use the favorable material effectively in the preparation and presentation of its case, even if satisfaction of this criterion requires pre-trial disclosure." *United States v. Pollack,* 534 F.2d 964, 973 (D.C. Cir.1976). Under the unique circumstances of this case, production one-week before trial, as the government proposes, would prevent effective use of the materials in the preparation and presentation of its case. It would not allow sufficient time to translate, analyze, review with defendants, and otherwise to use it for trial.

While the government cites cases from other circuits for the proposition that it need not produce *Giglio* material until one-week before trial, that simply is not the standard in this Circuit.

> The timing of the government's disclosures of *Brady* and *Giglio* evidence and information to the defense is important. In *United States v. Pollack,* 534 F.2d 964 (D.C.Cir.1976), this court instructed that "[d]isclosure by the government must be made at such a time as to allow the defense to use the favorable material effectively in the preparation and presentation of its case, even if satisfaction of this criterion requires pre-trial disclosure." *Id.* at 973. Similarly, in

4

> *Bagley,* 473 U.S. at 678, 105 S.Ct. 3375, the Supreme Court had observed that "[t]he constitutional error, if any, in this case was the Government's failure to assist the defense by disclosing information that might have been helpful in conducting the cross-examination." *Cf. Leka v. Portuondo,* 257 F.3d 89, 103 (2d Cir.2001).

*United States v. Celis*, 608 F.3d 818, 834-835 (D.C. Cir. 2010).

It is significant that the D.C. Circuit in *Celis* cited *Leka*, where the Second Circuit found that the government's belated production of *Brady* violated its obligations under *Brady*. As the Second Circuit explained:

> The limited *Brady* material disclosed . . . could have led to specific exculpatory information only if the defense undertook further investigation. When such a disclosure is first made on the eve of trial, or when trial is under way, the opportunity to use it may be impaired. The defense may be unable to divert resources from other initiatives and obligations that are or may seem more pressing. And the defense may be unable to assimilate the information into its case.

*Leka v. Portuondo,* 257 F.3d at 101.

Moreover, the government's citation to *Celis* for the proposition that it can wait until one-week before trial to produce *Giglio* is misplaced. The Court in *Celis* upheld the belated production because of the security issues involved in a case where the defendant was a member of the FARC, a paramilitary organization that has been designated a terrorist organization and the government had obtained a protective order based on a particularized presentation to the district court. *Celis*, 608 F.3d at 826 ("in issuing and managing the protective order the district court accommodated the government's law enforcement interests in a manner that did not impermissibly intrude upon appellants' Sixth Amendment rights and did not result in prejudice that would require reversal of their convictions"). No such security concerns are involved in this case.

### C.     Translation of Discovery Materials

The government argues cites *Celis* for the proposition that "English translations of *all* such statements is not required, and would create an impermissible burden on the government." Gov't Response at 3. *Celis* is inapposite to the particular language issues present in the instant case because all defense counsel were bilingual, could communicate directly with the defendants in their native language, and only Spanish and English were involved not the multiple languages as are present here. *Celis*, 608 F.3d at 840-41 ("in this case, in which [the defendant] was assisted by bilingual counsel and where there is no reason to believe [the defendant] was unable to understand the charges and evidence against her, we find no abuse of discretion").

In the instant case, the government proposes to produce materials one-week before trial even as it describes for the Court the limited pool of competent linguists and the time-consuming and financial costs of translating materials. If it is difficult for the government with its vast resources and the years it has had to pursue this case, it will be difficult for these indigent defendants to translate materials that are produced all at once one-week before trial.

### D.     Production of Law Enforcement Witnesses

The practice in this district is for the government to make accessible law enforcement witnesses without need of complying with the *Touhy* regulations. Moreover, the regulations must give way to the Defendant's Sixth Amendment right to compulsory process and to present a defense and his Fifth Amendment rights to due process of law.

E.	**Witness List**

In this district, when regulating the trial of international drug conspiracies, district courts require the government to identify its witnesses and the wire intercepts it will introduce to the defense well in advance of trial. *E.g., United States v. Borda,* No. 07-065 (GK), doc 89, attached as exhibit 1 (directing disclosure of witnesses and exhibit list 2 months before trial).

Respectfully submitted,

August 3, 2011                                                      /s/ *Carmen D. Hernandez*
**Carmen D. Hernandez**
Bar No. MD 03366
7166 Mink Hollow Rd
Highland, MD 20777
240-472-3391; 301-854-0076 (fax)
chernan7@aol.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the instant Reply to Gov't Response was served on all counsel of record via ECF this 3d day of August, 2011.

/s/ *Carmen D. Hernandez*
**Carmen D. Hernandez**