UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CRIMINAL NO.: 1:08cr00214-RMC |
| v. | ) |
| | ) |
| NEMR ALI ZHAYTER, | ) |
| | ) |
| Defendant. | ) |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SEVER**

The United States of America, by and through its undersigned counsel, hereby opposes Defendant's motion for severance (Docket No. 25, Exhibit 21). Defendant NEMR ZHAYTER seeks severance from his co-defendant, YAHYA ALI ZAITAR, for the trial currently scheduled to begin on September 19, 2011. Defendant argues that a joint trial would prevent the jury from making a reliable judgment about the guilt or innocence of each defendant because the jury will be confused and unable to separate the evidence offered against each defendant. Def.'s Mot. at 2. However, Defendant does not meet the heavy burden of demonstrating compelling substantial prejudice that would prevent the jury from following the court's instruction and separately considering the evidence relating to each defendant. In this case, the Court properly joined the defendants for trial and there is no justifiable basis for severance. The Court can ameliorate any prejudice, if in fact some does arise, by curative instruction. Accordingly, Defendant's request for severance should be denied.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

A.  **YAHYA ZAITAR'S INDICTMENTS**

On April 28, 2008, a Grand Jury sitting in the United States District Court for the District of Columbia returned a then-sealed original one-count indictment against defendant YAHYA ALI ZAITAR (hereinafter "ZAITAR") in this instant matter at 1:08cr123-RMC.  The indictment charged the defendant as follows:

> From in or about May 2007 and continuing thereafter up to and including the date of the filing of this Indictment, the exact dates being unknown to the Grand Jury, in Paraguay, Brazil, Romania, and elsewhere, the defendant, YAHYA ALI ZAITAR, A/K/A YEHYA ALI DAOUD ZEITER, A/K/A ABU RABIH, did knowingly and unlawfully combine, conspire, confederate and agree with others known and unknown to the Grand Jury to commit the following offenses against the United States: (1) to knowingly and intentionally import 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule II controlled substance, into the United States from the Middle East, in violation of Title 21, United States Code, Sections 952 and 960, and (2) to knowingly and intentionally distribute 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule II controlled substance, intending and knowing that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959(a) and 960.  All in violation of Title 21, United States Code, Sections 960, 963, and Title 18, United States Code, Section 2.

ZAITAR was also previously charged on November 30, 2007, in Criminal Case No. 1:07cr329-RMC, in a two-count indictment alleging:  (1) conspiracy to import and to distribute 500 grams or more of cocaine knowing and intending it will be imported into the United States, in violation of 21 U.S.C. §§ 963, 960, 952 and 959, and (2) distributing 500 grams or more of cocaine knowing and intending it will be imported into the United States, in violation of 21 U.S.C. §§ 959(a) and 960.  The indictment was superseded on April 25, 2008, to encompass a five kilograms or more cocaine conspiracy.  ZAITAR was charged in those cocaine-related offenses with another individual, MOHAMMED ALI AWALI, and arrest warrants were issued thereafter.

ZAITAR was arrested in Romania on April 14, 2008, on a Provisional Arrest Warrant requested by the United States in criminal case numbers 1:07cr329 and 1:08cr123. ZAITAR was extradited to the United States from Romania on August 15, 2008, and on or about August 21, 2008, appeared in this district court for his initial appearance and arraignment. Between August 21, 2008, and August 18, 2010, the Court continued ZAITAR's cases and set periodic status conferences. On August 18, 2010, the Court set a trial date of April 18, 2011, with an alternative trial date of September 19, 2011.

B.   **NEMR ZHAYTER'S INDICTMENT**

On July 17, 2008, a Grand Jury sitting in the United States District Court for the District of Columbia also returned a then-sealed original one-count indictment against defendant NEMR ALI ZHAYTER (hereinafter "ZHAYTER") in Criminal Case No. 1:08cr214-RMC. The indictment charged ZHAYTER as follows:

> From in or about May 2007 and continuing thereafter up to and including the date of the filing of this Indictment, the exact dates being unknown to the Grand Jury, in Paraguay, Brazil, Romania, and elsewhere, the defendant, NEMR ALI ZHAYTER, A/K/A SHADI, did knowingly and unlawfully combine, conspire, confederate and agree with others known and unknown to the Grand Jury to commit the following offenses against the United States: (1) to knowingly and intentionally import 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, into the United States, in violation of Title 21, United States Code, Sections 952 and 960, and (2) to knowingly and intentionally distribute 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, intending and knowing that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959(a) and 960. All in violation of Title 21, United States Code, Sections 960, 963, and Title 18, United States Code, Section 2.

An arrest warrant was also issued consonant with this indictment. Soon thereafter, the United States procured a Provisional Arrest Warrant for ZHAYTER, which Paraguayan authorities

executed in Paraguay on or about August 6, 2008. ZHAYTER then entered the extradition process and the United States was officially informed by Paraguay's Central Authority / Office of International Affairs on or about January 5, 2011, that ZHAYTER was approved for extradition. On or about February 10, 2011, ZHAYTER was extradited to the United States from Paraguay. He appeared before this Court for arraignment on February 25, 2011.

C.   **PROCEDURAL HISTORY**

After two years of continuing ZAITAR's cocaine and heroin importation conspiracy cases due to outstanding MLAT evidence and the pending extraditions of AWALI (from Brazil) and ZHAYTER (from Paraguay), this Court set trial for April 18, 2011, with an alternative trial date of September 19, 2011, during the August 18, 2010 status conference. The Court and the parties recognized at that time that which conspiracy proceeded first, and on which trial date, would largely depend on which conspirator, AWALI or ZHAYTER, was extradited first and when that occurred. At the January 18, 2011 status conference, the Court vacated the April 18, 2011 trial date at ZAITAR's defense counsel's request so that the defense for both ZAITAR and ZHAYTER could be adequately prepared for trial, particularly in light of the government's report of ZHAYTER's anticipated extradition to the United States by the end of February 2011. At this time, September 19, 2011 remains on the calendar as the now current trial date for both of ZAITAR's cases.

February 25, 2011 was the first date on which ZAITAR and ZHAYTER appeared together before this Court. During this status conference, which also was the date on which ZHAYTER was arraigned, the government orally moved to consolidate Criminal Case Nos. 08-cr-214 (NEMR ZHAYTER's indictment) and 08-cr-123 (YAHYA ZAITAR's heroin

4

indictment).  Defendants did not oppose this motion.  The Court granted the motion and consolidated the cases.

On July 26, 2011, ZHAYTER filed a "First Motion to Adopt Motions of Defendant Zaitar" (Docket No. 25), which included Exhibit 17, which is ZAITAR's Motion to Dismiss (08-cr-123, Docket No. 34).  Defense counsel modified this "First Motion to Adopt" on August 1, 2011.  The Court granted the motion to adopt, and subsequently ordered ZHAYTER's attorney to file all motions adopted by him.  Defense has not yet filed the motions separately.  Therefore, the government has filed this opposition as a response to Docket No. 25, Exhibit 21.

## II.  ARGUMENT

The Court properly joined ZAITAR and ZHAYTER's cases under Federal Rule of Criminal Procedure 13, which allows the court to order separate cases to be tried together.  The test in determining if separately indicted defendants may be jointly tried is whether they could have been jointly indicted.  *King v. United States*, 355 F.2d 700, 703 (1st Cir. 1966).  In considering whether a joint trial warrants severance under Rule 14 of the Federal Rules of Criminal Procedure, courts will consider whether the Defendant will be prejudiced by the joint trial and whether the judicial system's strong and legitimate interest in efficient and expeditious proceedings are satisfied.  *United States v. Long*, 905 F.2d 1572, 1581 (D.C. Cir.), *cert. denied*, 499 U.S. 948 (1990).

A. **The Court Properly Joined Defendants' Cases for Trial**

    1. **The Government Could Have Charged Both Defendants in the Same Indictment**

The Court properly joined Defendants' cases for trial under Fed. R. Crim. P. 13. Rule 13 provides that "[t]he court may order that separate cases be tried together as though brought in a single indictment or information if all offenses and all defendants could have been joined in a single indictment or information." In turn, Rule 8 of the Federal Rules of Criminal Procedure governs the joinder of offenses or defendants and states at subsection (b) that:

> [t]he indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. R. Crim. P. 8(b). Accordingly, separately-indicted defendants may be joined for trial pursuant to Rule 13 if the offenses and defendants could have been indicted together in a single indictment under Rule 8. *See, e.g., United States v. McDaniel*, 538 F.2d 408, 411 (D.C. Cir. 1976); *United States v. Briscoe*, 798 F. Supp. 28, 31 (D.D.C. 1992). Where multiple defendants are involved, this district's case law points to subsection (b) as the governing provision under Rule 8. *See, e.g., United States v. Halliman*, 923 F.2d 873, 882 (D.C. Cir. 1991) ("Rule 8(b) governs the joinder of defendants *and* offenses when there are multiple defendants.") (emphasis in original and citations omitted).

Paramount in the evaluation of the permissibility of the joinder is the nature or scope of the defendants' participation in the acts or transactions constituting the offenses to be charged. "Acts or transactions form a 'series' within the meaning of the rule if they 'constitut[e] parts of a common scheme or plan.'" *Halliman*, 923 F.2d at 883 (quoting *United States v. Perry*, 731 F.2d

6

985, 990 (D.C. Cir. 1984), and *United States v. Jackson*, 562 F.2d 789, 796 (D.C. Cir. 1977)). The *Perry* court explained: "In other words, there must be a logical relationship between the acts or transactions within the series." *Perry*, 731 F.2d at 990; *see also United States v. Gbemisola*, 225 F.3d 753, 760 (D.C. Cir.), *cert. denied*, 531 U.S. 1026 (2000) (joinder of defendants was proper because evidence showed participation in same drug scheme which led to offense). Ascertaining the defendants' participation for purposes of Rule 8(b) is less problematic in conspiracy cases and, not surprisingly, where the defendants have conspired together to commit an illegal act, the district case law favors joint indictment and joint trials. *See, e.g., United States v. Gray,* 292 F. Supp. 2d 71, 86 (D.D.C. 2003) (Lamberth, C.J.) (citing *United States v. Richardson*, 167 F.3d 621, 624 (D.C. Cir. 1999) ("The joinder of defendants and charges is favored in RICO and conspiracy cases.")). This is so because the conspiracy charge is the common thread that ties all the defendants together. In *Gray*, unlike here, the defendants were indicted together in a single indictment on drug conspiracy and RICO charges. However, certain defendants cited the district court's denial of their severance motions in post-conviction motions for new trial. Upon evaluating the severance arguments, Chief Judge Lamberth concluded:

> [J]oinder was proper. The defendants were charged in decade-long narcotics and RICO conspiracies. *They were alleged to have engaged in the same acts or series of transactions in furtherance of the criminal drug conspiracies with which they were charged, often by actively aiding one another in the commission of crimes.* Not[] only did the defendants meet the definition of permissible joinder, but the type of conspired, complex and interdependent crimes with which they were charged favored application of the joinder rule. *The evidence, in type and substance, was so similar for each defendant* that the caution regarding joinder, spillover of otherwise inadmissible evidence, was obviated and did not pose a high risk of prejudice.

*Gray*, 292 F. Supp. 2d at 87 (emphasis added). Chief Judge Lamberth further noted:

> Consistent with the law of this jurisdiction, '[o]nce each [defendant] was tied to the conspirac[ies], the acts of each conspirator in furtherance of the conspirac[ies]' aims were attributable to all. The evidence and the charges were substantially overlapping, but the overlap was caused by the involvement of each appellant in [the conspiracies]. In these circumstances severance is not required.

*Id.* (quoting *United States v. Tarantino*, 846 F.2d 1384, 1399 (D.C. Cir. 1988)); *see also United States v. Edelin*, 118 F. Supp. 2d 36, 40 (D.D.C. 2000) (Lamberth, C.J.) ("'The general rule is that defendants who are jointly indicted should be tried together, and this rule applies with particular force to conspiracy cases.'") (quoting *United States v. Walker*, 720 F.2d 1527, 1533 (11th Cir. 1983)).

Of course, it is well understood that in conspiracy cases, not all of the conspirators need to have participated in all phases of the conspiracy. *Blumenthal v. United States*, 332 U.S. 539, 556-57 (1947). However, in "chain conspiracies," which are common in drug cases, including the conspiracies here, the conspirators are inextricably linked because they share a common goal or objective. The achievement of that goal "depends upon the successful operation of each link in the chain conspiracy." *United States v. Thomas*, 525 F. Supp. 2d 17, 23 (D.D.C. 2007). Thus, in such cases, "[r]arely, if ever, will it be improper for co-conspirators to be tried together." *Edelin*, 118 F. Supp. 2d at 40 (quoting *United States v. Jackson*, 64 F.3d 1213, 1217 (8th Cir. 1995)).

In the present case, the indicted conspiracy to import heroin into the United States and to distribute heroin intending and knowing that it would be unlawfully imported into the United States provides the common scheme which connects defendants ZAITAR, ZHAYTER and their unindicted co-conspirators. Foremost, the government notes that ZAITER and ZHAYTER could have been charged in the same indictment. This did not happen due to timing and other

considerations related to the respective provisional arrest and extradition requests submitted by the United States to Paraguay and Romania.

While a facial comparison of the indictments is only marginally helpful to the Court in the absence of identified overt acts, the Court may look to pre-trial representations by the government in support of the indictments that ZAITAR and ZHAYTER could have been joined together in the heroin importation conspiracy under a single indictment pursuant to Rule 8(b). *See Briscoe*, 798 F.Supp. at 32 & n.8; *Perry*, 731 F.2d at 990-91 (basis for joinder may be determined from the pretrial evidence if it is not apparent from the indictment). While the scope of evidence is admittedly broader against ZAITAR, ZHAYTER's participation is a subset of the overall "series of acts or transactions," or a link in the chain conspiracy, forming a crucial part of the ZAITAR indictment.

In particular, ZHAYTER participated in telephone calls with his brother while ZAITAR was in Romania. At the same time, ZHAYTER assisted ZAITAR by contacting the sources of supply for price quotes and obtaining couriers to transport the heroin sample to Bucharest. The acts of each defendant are "logically related" through a common purpose to import heroin into the United States and to distribute heroin intending and knowing that it would be unlawfully imported into the United States. This includes ZAITAR's initial meetings and calls with the Confidential Informant (CI) and Undercover (UC), which lays the foundation for the heroin importation and the calls between ZAITAR and ZHAYTER once they decided the heroin test sample would be transported to Bucharest. Therefore, the two defendants logically and properly could have been charged together in a single indictment under Rule 8(b).

### 2. Judicial Economy and Lack of Prejudice Support Joinder

"The language of Rule 13 is permissive with regard to consolidation of appropriate indictments, and therefore the Court should consider the effect of consolidation on judicial economy," as well as "weigh any possible prejudice to the defendants." *Briscoe*, 798 F. Supp. at 32-33 (citing *United States v. Burkley*, 591 F.2d 903, 919 (D.C. Cir. 1978), *cert. denied*, 440 U.S. 966 (1979)). Courts overwhelmingly have supported joint trials when, as here, the evidence against the defendants significantly overlaps and many of the witnesses (both domestic and foreign) would present identical testimony in both trials. Judicial economy requires a single trial to conserve limited judicial resources and to prevent an unnecessary strain on the court's crowded docket, by avoiding the duplication of evidence and witnesses through two separate trials. *See, e.g.*, *United States v. Gbemisola*, 225 F.3d 753, 761 (D.C. Cir. 2000); *see also Edelin*, 118 F. Supp. 2d at 40 ("'The preference for a joint trial of multiple defendants in conspiracy cases reflects the sound policy of joinder where charges may be proven with substantially the same evidence.'") (citation omitted).

The trial of ZAITAR and ZHAYTER will involve approximately twenty witnesses, many of whom are foreign witnesses from Paraguay, Brazil, and Romania. The government must make significant travel arrangements, including consultation with foreign governments and the U.S. Department of Homeland Security, to ensure the witnesses' availability and ability to testify before this Court. Further, in the cases against ZAITAR and ZHAYTER, the bulk of the government's evidence is audio and video recordings, most of which are multi-lingual. This, combined with the need for Arabic interpretation for the Defendants' comprehension of the proceedings, leads to an estimated trial of four weeks in length. Notwithstanding the significant

challenge of scheduling two separate four-week trials on the Court's calendar, proceeding in separate trials against ZAITAR and ZHAYTER on the same offense, with essentially the same evidence and witnesses, would be a significant drain on the government's and the Court's resources. Thus, there exists "substantial public interest" in conducting a joint trial in this case. This Court properly joined the Defendants for trial under Rule 13 and the joinder of the Defendants is in the best interest of the judicial economy.

**B.      Severance is Unwarranted**

       **1.      Defendant Fails to Establish Prejudice Sufficient to Warrant Severance**

Under Rule 14 of the Federal Rules of Criminal Procedure,[1] a trial court may order separate trials for co-defendants if joinder of offenses or defendants is prejudicial. Once there has been proper joinder under Rule 8, "a district court should grant severance . . . only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). Along with considerations of unfair prejudice, trial courts also should consider the judicial system's strong and legitimate interest in efficient and expeditious proceedings when making a severance determination. *United States v. Long*, 905 F.2d 1572, 1581 (D.C. Cir.), *cert. denied*, 499 U.S. 948 (1990). As noted above, joinder of counts and defendants is designed to promote judicial economy and efficiency by avoiding multiple trials,

---

[1] The relevant portion of Rule 14 reads as follows:

> If it appears that a defendant or the government is prejudiced by joinder of offences or defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

Fed. R. Crim. P. 14.

and there is a strong preference for joint trials in the federal system where that can be accomplished without substantial prejudice to a specific trial right of the defendant. *Zafiro*, 506 U.S. at 536. Trial courts exercises wide discretion in determining severance. *United States v. Butler*, 822 F.2d 1191, 1194 (D.C. Cir. 1987). "In general, [courts] strike a balance in favor of joint trials." *United States v. Manner*, 887 F.2d 317, 324 (D.C. Cir. 1989), *cert. denied*, 493 U.S. 1062 (1990). Salient factors the Court should consider, and which militate against severance, include: (1) the presentation of the same evidence; (2) testimony from the same witnesses; and (3) the same illegal conduct. *Id.* at 325; *Tarantino*, 846 F.2d at 1398-1400.

"Although Rule 14 allows for severance of properly joined defendants, the defendant requesting the severance bears the heavy burden of showing that joinder would violate his constitutional fair trial rights." *Edelin*, 118 F. Supp. 2d at 41 (citations omitted). In particular, upon balancing the risk of prejudice to the defendant against the interest of judicial economy, the Court must find the risk of prejudice to be compelling. *United States v. Cross*, 928 F.2d 1030, 1037 (11th Cir. 1989), *cert. denied*, 502 U.S. 985 (1991). The test for determining "compelling prejudice" is the jury's ability to follow the trial court's instructions and separate evidence relating to each defendant. *Id.* at 1039; *see also United States v. Leavitt*, 878 F.2d 1329, 1340 (11th Cir.), *cert. denied*, 493 U.S. 968 (1989). In other words, where adequate instructions are available, a defendant cannot make out compelling prejudice. *United States v. West*, 877 F.2d 281, 288 (4th Cir.), *cert. denied*, 493 U.S. 959 (1989). "When interests of judicial economy are weighed, the charges and defendants are linked by an alleged overarching conspiracy, and there is no finding of prejudice, concerns of judicial economy will mandate a joint trial." *United States*

*v. Gray*, 173 F. Supp. 2d 1, 6 (D.D.C. 2001) (citing *United States v. Vaccaro*, 816 F.2d 443 (9th Cir. 1987), *cert. denied*, 484 U.S. 928 (1987)).

Defendant has failed to meet this heavy burden. In his motion, he notes that "the likelihood that evidence concerning Mr. Zhayter is interpreted (either through translation or a misunderstanding by a juror) to be concerning Mr. Zaitar." Def. Mot. at 2. He also notes "a risk may occur when evidence that the jury could not consider against Mr. Zaiter and would not be admissible if he were tried alone, is admitted against a codefendant." Def. Mot. at 3. Even excusing the lack of any specificity undergirding his concerns, these are commonplace issues in any trial involving more than one defendant that does not warrant separate trials. *See, e.g.*, *United States v. Phibbs*, 999 F.2d 1053, 1067 (6th Cir. 1993); *United States v. LeQuire*, 943 F.2d 1554, 1563 (11th Cir. 1991). Severance is not appropriate simply because all the conspirators did not participate in all phases of the conspiracy. *Blumenthal v. United States*, 332 U.S. 539, 556-57 (1947); *Edelin*, 118 F. Supp. 2d at 43. Nor is it proper because one defendant's role in the conspiracy was smaller or less important than another's. *United States v. Neresian*, 824 F.2d 1294, 1304-05 (2d Cir.), *cert. denied*, 484 U.S. 958 (1987); *United States v. Ianniello*, 621 F. Supp. 1455, 1477-78 (S.D.N.Y. 1985) (fact that defendant plays minor role in RICO conspiracy does not entitle him to severance); *United States v. Smolar*, 557 F.2d 13, 21, *cert. denied*, 434 U.S. 971 (1977). Severance also is not required because the evidence against a co-defendant is more damaging. *United States v. Fuel*, 583 F.2d 978, 988 (8th Cir. 1978), *cert. denied*, 439 U.S. 1127 (1979). Given this obvious reluctance to find spillover evidence sufficiently prejudicial, the present case involving only one count against only two defendants absent nothing but a boilerplate recitation of feared prejudice, fails to establish the heavy burden required for severance.

*See, e.g.*, *United States v. Soto-Beniquez*, 356 F.3d 1, 29 (1st Cir. 2004) (affirming the district court's denial of severance where several defendants sought a severance to prevent them from being tried alongside more senior members of the drug organization, claiming that they were prejudiced by the presentation of spillover evidence regarding fifteen murders committed by their co-defendants, in which they did not participate); *Schaffer v. United States*, 362 U.S. 511, 512-13 (1960); *United States v. Leach*, 613 F.2d 1295, 1303 (5th Cir. 1980) (finding severance unwarranted where all conspirators were not charged in each, or all, of the substantive counts).

        2.        **Limiting Instructions are the Proper Method for Addressing Possible Prejudice in this Case From a Joint Trial**

"Because there is a preference for joinder of offenses and defendants in a conspiracy trial, the court should look to other methods for reducing the risk of prejudice." *Edelin*, 118 F. Supp. 2d at 42 (citing *Zafiro*, 506 U.S. at 539). Defendants bear the burden to demonstrate that no less dramatic alternative than severance exists to ensure a fair trial; limiting instructions, which are the preferred method in reducing prejudice, will often suffice to cure any risk of prejudice. *Zafiro*, 506 U.S. at 540; *Edelin*, 118 F. Supp. 2d at 42. They are presumed to be effective because "[a] jury is presumed to follow its instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *accord Edelin*, 118 F. Supp. 2d at 42; *United States v. Cuesta*, 597 F.2d 903, 919 (5th Cir.), *cert. denied*, 444 U.S. 964 (1979) (approving the district court's denial of severance whereupon it instructed the jury about the limited admissibility of co-conspirator statements against each defendant).

To establish a disparity of evidence that mandates severance, the defendants must demonstrate that the evidence was so complicated that it prevented the jury from separating the evidence and properly applying it only to those against whom it was offered. *Soto-Beniquez*, 356

F.3d at 29; *United States v. Boylan*, 898 F.2d 230, 246 (1st Cir. 1990); *United States v. Sandini*, 888 F.2d 300, 307 (3d Cir. 1989). Even where the evidence against one defendant is far more damaging than the evidence against another defendant, courts have consistently refused to grant a severance merely because a defendant might have had a better chance of acquittal if tried separately. *United States v. Halliman*, 923 F.2d 873, 884 (D.C. Cir. 1991); *see also United States v. Wright*, 783 F.2d 1091, 1095 (D.C. Cir. 1986); *United States v. Hopkins*, 464 F.2d 816, 819 (D.C. Cir. 1972); *United States v. Wilson*, 434 F.2d 494, 501 (D.C. Cir. 1970). With the benefit of cautionary instructions, most courts have found that jurors can separately consider each defendant and offense. *United States v. Natanel*, 938 F.2d 302, 308 (1st Cir. 1991); *United States v. Arzola-Amaya*, 867 F.2d 1504, 1516 (5th Cir. 1989); *United States v. Pace*, 898 F.2d 1218, 1245-46 (7th Cir. 1990); *United States v. McConnell*, 903 F.2d 566, 571 (8th Cir. 1990); *United States v. Lehder-Rivas*, 955 F.2d 1510, 1521 (11th Cir. 1992).

Here, Defendant has made no showing of a serious risk that a joint trial would prevent the jury from making a reliable judgment about either of the defendants' guilt or innocence. There is simply no reason to believe that, under proper instructions from the Court, a reasonable jury will not be able to make a reliable judgment about each defendant's guilt or innocence, or, for that matter, compartmentalize the evidence and render a fair verdict as to each defendant. Nor has Defendant shown a disparity of evidence that would compromise a specific trial right or prevent the jury from making a reliable judgment about guilt or innocence. He has failed to demonstrate that no less dramatic alternative than severance exists to ensure a fair trial.

### III.  CONCLUSION

For the foregoing reasons, the government respectfully submits that Defendant's motion should be denied.  The Court properly joined for trial Criminal Case Nos. 08-123 and 08-214, because these cases could have been charged in a single indictment and because judicial economy supports joinder given that the trials would involve largely the same evidence and witnesses.  In addition, the Court should deny Defendant's request for severance.  Although he claims unfair prejudice will result from the joinder, he has failed to show how this is sufficiently compelling to warrant the drastic measure of severance, and why the less dramatic alternative of limiting instructions would not be sufficient to ensure a fair trial.

Respectfully submitted,

ARTHUR G. WYATT
Chief
Narcotic and Dangerous Drug Section

By: _____/s/_____
Tritia L. Yuen
Meredith A. Mills
Trial Attorney
Narcotic and Dangerous Drug Section
U.S. Department of Justice / Criminal Division
1400 New York Avenue, NW
Washington, DC 20005
Main Office: (202) 616-2251
Fax: (202) 514-0483
Tritia.Yuen@usdoj.gov

CERTIFICATE OF SERVICE

    I hereby certify that on the 9th day of September 2011, I filed the foregoing GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SEVER with the Clerk of the Court via the CM/ECF system which will deliver a Notice of Electronic Filing on all counsel of record.


                                By:       /s/
                                       Tritia L. Yuen