UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CRIMINAL NO.: 1:08cr00214-RMC |
| v. | ) |
| | ) |
| NEMR ALI ZHAYTER, | ) |
| | ) |
| Defendant. | ) |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PURSUANT TO FED. R. CRIM. P. 12(B)(3)**

The United States of America, by and through its attorneys, Meredith A. Mills and Tritia L. Yuen, United States Department of Justice, Narcotic and Dangerous Drug Section, Criminal Division, files this response in opposition to Defendant's Motion to Dismiss Pursuant to Fed. R. Crim. P. 12(b)(3) (Docket No. 25, Exhibit 7).  In support thereof, the Government states the following:

**I.  PROCEDURAL BACKGROUND**

On April 25, 2008, a Grand Jury sitting in the United States District Court for the District of Columbia returned a then-sealed original one-count indictment in Criminal Case No. 1:08cr123-RMC against YAHYA ALI ZAITAR (hereinafter "ZAITAR"), alleging that ZAITAR conspired with others to import heroin into the United States.  ZAITAR also previously was charged with MOHAMMED ALI AWALI on November 30, 2007, in Criminal Case No. 1:07cr329-RMC.  The 1:07cr329 indictment alleged that ZAITAR and AWALI conspired with others to import cocaine into the United States, and that ZAITAR and AWALI knowingly distributed 500 grams or more of a mixture and substance containing a detectable amount of

cocaine, knowing and intending that such cocaine would be unlawfully imported into the United States.

On July 17, 2008, a Grand Jury sitting in the United States District Court for the District of Columbia, returned an indictment against NEMR ALI ZHAYTER in Criminal Case No. 1:08cr214.  ZHAYTER is charged with the same conspiracy as ZAITAR to import heroin into the United States.

On July 26, 2011, ZHAYTER filed a "Motion to File Motions Late by One Business Day" (Docket No. 25), which included Exhibit 7, ZAITAR's Motion to Dismiss Pursuant to Fed. R. Crim. P. 12(b)(3) (08-cr-123, Docket No. 40).  Defense counsel filed a "First Motion to Adopt" on August 1, 2011.  The Court granted the motion to adopt, and subsequently ordered ZHAYTER's attorney to file all motions adopted by him.  Defense has not yet filed the motions separately.  Therefore, the government has filed this opposition as a response to Docket No. 25, Exhibit 7.

## II.  GOVERNMENT'S PROFFER OF FACTS REGARDING THE ALLEGED HEROIN CONSPIRACY

From in or about May 2007 until the date of indictment on July 17, 2008, Defendant ZHAYTER was a manager or supervisor in a drug trafficking organization ("DTO") operating in the Tri-Border area of Paraguay, Brazil and Argentina that was led by his brother and coconspirator, ZAITAR.  Among other drugs, Defendant, ZAITAR, and other known and unknown organizational members transported multiple kilogram quantities of heroin to other drug traffickers to or from various locations in South America, Europe, the Middle East, the United States, and elsewhere.

Defendant was aware that the DTO utilized various methods of transportation, including, but not limited to, having individuals known as "mules" internally transport the drugs to the destination after ingesting wrapped pellets containing the heroin. As a manager or supervisor in the DTO, Defendant was responsible for organizing drug shipments by, *inter alia*, recruiting and coordinating mules and couriers in their transport of heroin and engaging in negotiations with sources of supply and other members of the conspiracy on pricing, manufacture, quality testing, packaging and delivery of the drugs to ensure the success of the drug transportation venture.

In or about early April 2008, the defendant became aware that his brother, ZAITAR, had traveled to Bucharest, Romania to meet in person with a potential large scale heroin buyer to discuss a multiple kilogram quantity deal. The buyer was an undercover agent ("UC"). While ZAITAR was in Romania negotiating the deal, Defendant and ZAITAR spoke by telephone about the pending transaction on numerous occasions. Defendant agreed in those intercepted calls to assist ZAITAR in coordinating the transport of a one to three kilogram test sample of heroin from their drug associates for delivery by a courier to ZAITAR and the UC in Bucharest. Defendant knew from these telephone conversations with ZAITAR that the buyer (the UC) was an American and that ZAITAR needed Defendant to coordinate the delivery of higher quality white heroin because the heroin sample was destined for the United States. Defendant was aware that the reason for sending the test sample of heroin to Bucharest was to demonstrate to the undercover agent the high quality of heroin trafficked by the DTO for distribution in the United States, so that ZAITAR could successfully negotiate future multi-kilogram quantity heroin transactions with the undercover agent on behalf of the DTO. Defendant also knew that the

future heroin to be distributed by ZAITAR, the defendant and their organization was also intended for importation into the United States.

Specifically, Defendant agreed to procure the drug mules or couriers to transport and deliver the heroin sample from Lebanon to Romania and to personally arrange for or to supervise other organizational members in planning the mule's or courier's itinerary, obtaining the requisite passports, visas and airline tickets, and paying the travel costs and smuggling fees to the mules or couriers. To that end, Defendant recruited more than one courier to transport the heroin to ZAITAR and arranged for the requisite travel documents and payments; to that end, he instructed another associate to book the tickets for the flights.

Defendant also agreed during the calls to consult telephonically and in person, on ZAITAR's behalf, with other organizational members and at least one source of supply, in order to obtain information on the price and availability of a kilogram of heroin, the supplier's ability to fulfill the test sample order during the week ZAITAR was in Romania, and the transport of the heroin from the supplier in Lebanon. Following communications with these individuals, Defendant and ZAITAR discussed the various price quotes they had each received, including a quote from a DTO member who was a relative residing in Lebanon. Defendant and ZAITAR also discussed the down payment requested by the supplier in Lebanon and how they were going to obtain the money to pay him. They also discussed the means by which the money for the heroin would be transferred to the DTO from America by the undercover agent, including by having it delivered by an organizational member to Defendant. Defendant also periodically reported to ZAITAR on the status of the manufacture of the heroin sample and its planned transport from Lebanon.

Defendant was arrested in Paraguay in connection with the offenses on or about August 6, 2008, and remained in custody from that time until his extradition to the United States.

### III.  ARGUMENT

The Government respectfully submits that Congress clearly intended 21 U.S.C. § 959 conspiracy charges to apply extraterritorially.  Therefore, this Court has jurisdiction to hear the case.  The Government further submits that pre-trial determination of jurisdiction is not warranted because the jurisdictional requirement under the statute is also a substantive element of the offense charged.  Thus, jurisdiction is an issue to be determined at trial.

A. **Extraterritorial Jurisdiction Applies to a Conspiracy to Violate Section 959**

Congress has the authority to criminalize extraterritorial activity so long as its intent to do so is clear, *United States v. Bowman*, 260 U.S. 94, 98 (1922), and the statute is consistent with the Fifth Amendment's Due Process Clause, *Strassheim v. Daily*, 221 U.S. 280, 285 (1911).  In ascertaining Congress's intent, courts look to the statute to see whether "the affirmative intention of the Congress" is clearly expressed.  *Benz v. Compania Naviera Hidalgo, S.A.*, 353 U.S. 138, 147 (1957).

Defendant's reliance on case law citing the presumption against extraterritoriality is misplaced.  Defendant merely has cited cases that state that there is a presumption against extraterritoriality and that it may only be overcome where Congressional intent is clear.  (Def.'s Mot. ¶ 3).  What Defendant fails to address is how the charged offense in the instant case is one to which the presumption against extraterritorial application should be applied.  In fact, § 959 on its face demonstrates Congress's clear and explicit intent that it apply extraterritorially.  *See* 21 U.S.C. § 959(c) ("This section is intended to reach acts of manufacture or distribution committed

*outside the territorial jurisdiction of the United States*") (emphasis added); *see also United States v. King*, 552 F.2d 833, 850 (9th Cir. 1976) (stating that § 959 "is expressly aimed at having extraterritorial effect"). While Defendant is charged with a conspiracy to violate § 959, rather than a substantive § 959 offense, extraterritorial jurisdiction also applies to a conspiracy to violate § 959. *Cf. Mow v. United States*, 730 F.2d 1308, 1311 (9th Cir. 1984) ("This court . . . has regularly inferred extraterritorial reach of conspiracy statutes on the basis of a finding that the underlying substantive statutes reach extraterritorial offenses"). Courts have extended extraterritorial jurisdiction to conspiracies to commit substantive drug trafficking offenses on the grounds that "the conspiracy alleged implicate[s] a crime that would produce detrimental effects within this nation and affront its denouncement of the possession of and traffic in drugs." *United States v. Brown*, 549 F.2d 954, 956 (4th Cir. 1977) (finding jurisdiction for conspiracy to import heroin from Germany into the United States).

      Additionally, the constitutionality of § 959's express extraterritorial jurisdiction has been upheld under the objective territorial principle. *Mow*, 730 F.2d at 1312. The objective territorial principle confers jurisdiction over "[a]cts done outside a jurisdiction, but intended to produce and producing detrimental effects within it." *Strassheim*, 221 U.S. at 285. Because § 959 specifically requires that the defendant know or intend that the drugs are destined for the United States, courts have upheld its extraterritorial reach. *King*, 552 F.2d at 852 (concluding that "the jurisdictional reach of § 959 is properly within the scope of Congress's legislative power"); *United States v. Noriega*, 746 F. Supp. 1506, 1513 (S.D. Fla. 1990) ("The fact that no act was committed and no repercussions were felt within the United States did not preclude jurisdiction

over conduct that was clearly directed at the United States."). Thus, this Court has jurisdiction over the subject matter criminalized under the charged statutes.

Defendant has argued that this Court does not have jurisdiction over him because his conduct occurred outside the United States. However, his argument is misplaced. The relevant inquiry is whether Defendant's conduct was directed at the United States; in other words, whether Defendant conspired to sell drugs with the knowledge or intent that the drugs were destined for the United States. *See United States v. Yun*, 958 F.2d 440, 443 (D.C. Cir. 1992). Nexus is both a jurisdictional issue and also an element of the offense to be determined by the jury at trial. *See United States v. Martinez*, 476 F.3d 961, 968 (D.C. Cir. 2007) (upholding jury's finding that the defendant knew cocaine shipment was headed for the United States). Therefore, so long as jurisdiction is pled properly in an indictment, pre-trial determination of the sufficiency of the evidence establishing jurisdiction is not necessary.

**B.     Where Jurisdiction is an Element of the Charged Offense,
         Pre-Trial Determination Regarding Jurisdiction is Not Warranted**

A challenge to a court's having jurisdiction is not properly raised by a pre-trial motion to dismiss for lack of jurisdiction. Rule 12(b) of the Federal Rules of Criminal Procedure provides that any issue may be raised by pretrial motion that "the court can determine without a trial of the general issue." Courts have defined "general issues" as "evidence relevant to the question of guilt or innocence. *United States v. Ayarza-Garcia*, 819 F.2d 1043, 1048 (11th Cir. 1987), *superceded by statute* 46 U.S.C. app. § 1903(a) *as stated in United States v. Tinoco*, 304 F.3d 1088 (11th Cir. 2002). Therefore, "when a question of federal subject matter jurisdiction is intermeshed with questions going to the merits, the issue should be determined at trial." *Id*.; *see*

*also United States v. Ratigan*, 351 F.3d 957, 963 (9th Cir. 2003) ("[C]ourts have consistently determined that the jurisdictional element of federal crimes does not present a pure question of the court's subject matter jurisdiction").  Clearly this rule applies to the present case where "the jurisdictional requirement is also a substantive element of the offense charged." *Ayarza-Garcia*, 819 F.3d at 1048.  The appropriate procedure for challenging "the sufficiency of the government's evidence" to support jurisdiction is "by a motion for judgment of acquittal under Rule 29 and not by a pretrial motion to dismiss." *Id.* at 1048–49.

In *Ayarza-Garcia*, defendants appealed their convictions for "conspiracy to possess marijuana on the high seas with intent to distribute and possession of marijuana on the high seas with intent to distribute in violation of 21 U.S.C. §§ 955(a), 955(c)."[1]  819 F.2d at 1045.  The defendants alleged that "the district court erred in reserving decision" on whether the vessel they were arrested on was "a vessel subject to the jurisdiction of the United States." *Id.* at 1045, 1048.  They asserted that "the jurisdictional issue was a matter of law that should have been decided by the trial court on the pretrial motion to dismiss." *Id.* at 1048.  The Court of Appeals noted that the charging statute made "the jurisdictional element one of the material elements of the crime." *Id.*  Therefore, the court held that "because [the defendants'] jurisdictional challenge was a challenge to the sufficiency of the government's evidence which would have involved determination of issues of fact going to the merits of the case, the district court did not err" by declining to rule on the jurisdictional question in the defendants' pretrial motion. *Id.*

---

[1] This statute has since been superceded by 46 U.S.C. § 1903(a).  *See Tinoco*, 304 F.3d at 1096-97.

8

Similar to *Ayarza-Garcia*, the statutes in the instant case make jurisdiction a substantive element of the offense.  At trial, the Government will have the burden of presenting evidence that Defendant knew or intended that the drugs were destined for the United States.  Therefore, attempting to determine the jurisdictional issue pretrial will result in the Court necessarily determining issues of fact that go to the merits of the case.  Thus, the Government respectfully submits that this issue is not appropriate for pretrial determination and Defendant's motion should be denied.

C.      **Even if Pre-Trial Determination of Jurisdiction was Proper, the Court Should Find that Jurisdiction Exists**

Even if this Court chooses to consider the sufficiency of the evidence establishing jurisdiction, it should still deny Defendant's motion.  Section 959 requires actual knowledge or intent, which may be satisfied by direct or circumstantial evidence.  *Yun*, 958 F.2d at 443.  There is sufficient direct evidence to be presented at trial establishing Defendant's actual knowledge that the drugs were intended for the United States.  As noted in the government's proffer above, Defendant's dealings with the UC were based on the fact that Defendant believed the UC to be the head of a narcotics trafficking organization operating in New York.  Additionally, in recorded conversations with the UC and CI-1, Defendant openly discussed the transportation of drugs into New York, and on one occasion even expressed his willingness to place cocaine directly on a plane to New York.  Unless Defendant does not know the location of New York, clearly he knew and intended that the ultimate destination of the drugs he was conspiring to sell was the United States.

## IV.  CONCLUSION

For the foregoing reasons, the United States respectfully submits that Defendant's motion be denied.  Section 959 of Title 21 clearly was intended to apply extraterritorially, and a pre-trial motion to dismiss for lack of jurisdiction in a § 959 case is not the proper mechanism for raising such a challenge.  Nevertheless, even if the Court decides to determine jurisdiction at this time, the government's proffer of evidence more than sufficiently establishes that the Court has jurisdiction in this case because Defendant knew that he was conspiring to import drugs to the United States.

    Respectfully submitted,

    ARTHUR G. WYATT
    Chief
    Narcotic and Dangerous Drug Section

By:        /s/
    Tritia L. Yuen
    Meredith A. Mills
    Trial Attorneys
    Narcotic and Dangerous Drug Section
    U.S. Department of Justice / Criminal Div.
    1400 New York Avenue, NW
    Washington, DC 20005
    Main Office: (202) 616-2251
    Fax: (202) 514-0483
    Tritia.Yuen@usdoj.gov

CERTIFICATE OF SERVICE

    I hereby certify that on the 9th day of September 2011, I filed the foregoing GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO Fed. R. Crim. P. 12(b)(3) with the Clerk of the Court via the CM/ECF system which will deliver a Notice of Electronic Filing on all counsel of record.


                                              By:          /s/
                                                          Tritia L. Yuen