UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CRIMINAL NO.: 1:08cr00214-RMC |
| v. | ) | |
| | ) | |
| NEMR ALI ZHAYTER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO SUPPRESS STATEMENT EVIDENCE**

The United States of America, by and through its undersigned counsel, hereby responds

Defendant's Motion to Suppress Statement Evidence (Docket No. 25, Exhibit 5).  Defendant

NEMR ALI ZHAYTER has adopted Yahya ZAITAR's motion to suppress (Criminal Case No.

08cr123, Docket No. 41), which moves pursuant to Rules 12, 41, and 47 of the Federal Rules of

Criminal Procedure,[1] and the Fifth and Sixth Amendments of the Constitution,[2] to suppress

statements made by Yahya ZAITAR to law enforcement in Romania on or about August 14,

2008.  The government submits that ZHAYTER lacks standing to move to suppress the

statements of another.  The government also submits that the Court does not need to conduct a

hearing on this matter because the statements at issue all are recorded; the government has

---

[1] Rule 12 governs pleadings and pretrial motions.  Rule 41 governs search and seizure.
And Rule 47 governs motions and supporting affidavits.

[2] The Fifth Amendment provides in relevant part: "No person . . . shall be compelled in
any criminal case to be a witness against himself . . . ."  U.S. Const. amend. V.  Sixth
Amendment provides in relevant part: "In criminal prosecutions, the accused shall enjoy . . . the
Assistance of Counsel for his defence."  U.S. Const. amend. VI.

provided copies of the recordings and draft transcripts to defense counsel, and also will provide

copies to the Court.  Additional testimony or a hearing on this issue will not aid the Court in its

consideration of Defendant's motion.  D.D.C. Loc. R. 7(f) ("A party may in a motion or

opposition request an oral hearing, but its allowance shall be within the discretion of the court.").

Accordingly, the government requests that the Court issue an order by September 26, 2011,

notifying the government about whether it will require witness testimony at the October 4, 2011

hearing on this motion.

### I.  Factual Background

Pursuant to a Provisional Arrest Warrant requested by the United States in the above-

captioned case, and in Criminal Case No. 1:07cr329-RMC, Defendant YAHYA ALI ZAITAR

was arrested in Romania on April 14, 2008.  ZAITAR was extradited to the United States from

Romania on August 15, 2008, and on or about August 21, 2008, appeared in this district court for

his initial appearance and arraignment.

Upon his arrest on April 14, 2008, ZAITAR was transported to the police station in a

vehicle that contained a recording device.  The recording of spontaneous statements made during

the car ride is Exhibit N-13.  It is approximately 40 minutes in length.

Upon arrival at the police station, the agent immediately informed ZAITAR of his rights

pursuant to *Miranda v. Arizona*, 382 U.S. 436 (1966), in Portuguese.  Although ZAITAR initially

said that he did not understand, he was readvised of his rights.  Specifically, the agent warned

ZAITAR as follows: "You don't have to say anything.  Anything you say we can use against

you."  Ex. 1 at 1-2.  ZAITAR responded, "yes."  Ex. 1 at 2.  The agent went on to say, "You, you

know this in English, right?  All movies have this."  Ex. 1 at 2.  When ZAITAR stated that he did

not have money for a lawyer to talk to, he was again advised in Portuguese,

> During, uh, interrogation of you, okay?  If you can't, uh, if you don't have money,
> uh, for a lawyer, a government lawyer, pay a lawyer for you.  These rights are
> from the United States.  Obviously you're not in the United States - outside - but
> we don't need to talk about this.  One moment: you understand everything here,
> understand?

Ex. 1 at 2.  To this, ZAITAR confirmed "I understand Portuguese."[3]  When the agent again asked

whether ZAITAR understood, ZAITAR responded: "Yes, Yes."  He subsequently began

answering the officers' questions.  Later, when asked what was his native language, ZAITAR

responded "Lebanese, I, uh, Portuguese I understand everything. // Spanish I'm understanding."

Ex. 1 at 8.

The entire recording of N-15 occurs on four disks that are 17:44, 28:08, 16:16, and 16:50

in length, respectively; the total length of the recording is 1:18:58.  A copy of the recordings and

draft transcripts have been provided to defense[4]; the government will hand-deliver copies of N-

---

[3] Portions of this recording occurred in Romanian, because there was at least one Romanian law enforcement officer present.  These portions are reflects in Exhibits 2 and 4.  It appears that the Romanian law enforcement officer was speaking on the phone to a superior.  Because this background conversation is audible, the government had it transcribed.  It, however, appears to have no probative value.

[4] The government also has provided copies of a short 58 second video, taken at the time of ZHAYTER's arrest.  In this video, there are numerous Paraguayan law enforcement officers present, and one Paraguayan law enforcement officer advised Defendant of the charges against him.  DEA Special Agent John Kanig arrived on scene after Defendant had been arrested.  S/A Kanig spoke briefly with ZHAYTER, but did not ask him any substantive questions.  In addition, the government has provided defense with a copy of an interview that occurred on or about August 8, 2008, of ZHAYTER by Paraguayan prosecutors in Asuncion, Paraguay, in accordance with Paraguayan criminal procedure.  No U.S. law enforcement officials were present for this interview.  The government has provided Spanish copies of the Paraguayan report from this interview.  The government provided an English transcript of this interview report to defense on or about August 8, 2011, and again in a letter dated August 12, 2011.  The government further informed defense counsel on July 28, 2011, that at some point after ZHAYTER's arrest in Paraguay, S/A Kanig met with ZHAYTER and Amer Zoher EL HOSSNI together in Paraguay.

13, N-15, and draft transcripts to the Court.

## II.  Proffer of Testimony

The government maintains that no hearing is necessary in this matter because a hearing would not aid the Court in its decision on the pending motion.  Indeed, all of the statements at issue were recorded.  Were the Court to conduct a hearing, the government hereby proffers that the law enforcement witnesses who took ZAITAR's statement would testify that ZAITAR did not sign any written acknowledgment that law enforcement informed him of his *Miranda* rights, or any written waiver of his *Miranda* rights.  They would testify that the recordings (Exhibits N-13 and N-15) are true and accurate representations of the events that occurred on or about April 14, 2008.  The government concedes that ZAITAR was in custody when the statements were made.

## III.  Argument

The United States Supreme Court in *Miranda v. Arizona* required that law enforcement advise those facing custodial interrogation of certain rights.  Specifically, the Supreme Court stated that:

> [W]e hold that an individual held for interrogation must be clearly informed that
> he has the right to consult with a lawyer and to have the lawyer with him during
> interrogation . . . .  As with the warnings of the right to remain silent and that
> anything stated can be used in evidence against him, this warning is an absolute

---

There were two or more meetings, and at one of these meetings, former NDDS prosecutor Larry Schneider also was present.  At all but one of these meetings, ZHAYTER had a Paraguayan defense attorney present.  To the best of the government's knowledge, S/A Kanig advised ZHAYTER of his *Miranda* rights at all of these meetings.  The primary purpose of these meetings was to discuss potential cooperation with the government.  The government is not aware that ZHAYTER (or EL HOSSNI) made any specific or substantive statements during these meetings, and at this time, does not intend to use any statements made during those meetings at trial.

4

> prerequisite to interrogation . . . . Only through such a warning is there
> ascertainable assurance that the accused was aware of this right.

382 U.S. at 471-72.  These warnings implicate both the Fifth and Sixth Amendments.  The Fifth

Amendment protects the right to remain silent, and the right to have counsel when in custody of

law enforcement.  Fifth Amendment rights attach even if the suspect has not yet been formally

charged.

The Sixth Amendment governs elicitations by law enforcement officers and their agents

at critical pretrial stages.  *See Massiah v. United States*, 377 U.S. 201, 206 (1964).  The Sixth

Amendment protects the right to have counsel present at critical post-charge stages of

prosecution.  *See Fellers v. United States*, 540 U.S. 519, 523 (2004).  The Sixth Amendment

does not apply, however, to pre-indictment questioning, even when the suspect is in custody,

*United States v. Gouveia*, 467 U.S. 180 (1980), or is represented by counsel on other pending

charges, *Hoffa v. United States*, 385 U.S. 299 (1966).  Post-arrest, law enforcement may not act

in ways short of express questioning if there is a reasonable likelihood that this will elicit an

incriminating response from a suspect.  *Rhode Island v. Innis*, 446 U.S. 291, 300-301 (1980).

Although the Sixth Amendment bars law enforcement officers from deliberately eliciting

information from an indicted individual in the absence of his attorney, law enforcement agents

may still question a defendant when the defendant properly is advised of and waives his right to

counsel.  *See Patterson v. Illinois*, 487 U.S. 285, 292 (1988).

A defendant must be in custody, or at a critical stage of prosecution, before he is entitled

to *Miranda* warnings.  *Patterson*, 487 U.S. at 292; *California v. Beheler*, 463 U.S. 1121, 1123

(1983).  *Miranda* warnings need not be made verbatim; rather, the substance of the warnings are

5

sufficient. *Duckworth v. Eagan*, 492 U.S. 195 (1989). A defendant may waive, or give up, her

or his rights. *Miranda*, 382 U.S. at 475; *accord Maryland v. Shatzer*, 130 S. Ct. 1213, 1219

(2010). To establish a valid waiver, the government must demonstrate that the waiver was

knowing, intelligent, and voluntary based "upon the particular facts and circumstances

surrounding the case." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). As noted above, the

government concedes that ZAITAR was in custody when he made the statements contained in N-

13 and N-15.[5]

## A.   ZHAYTER Lacks Standing to Move to Suppress ZAITAR's Statements

It is well-established that one lacks standing to move to suppress the statements of

another person. *See*, *e.g.*, *United States v. Vega*, 678 F.2d 376, 379 (1st Cir. 1982); *United States*

*v. Johnson*, 466 F.2d 1206, 1208 (8th Cir. 1972); *cf. Rakas v. Illinois*, 439 U.S. 128, 133-34

(1978) (standing required to challenge a seizure under the Fourth Amendment); *Alderman v.*

*United States*, 394 U.S. 165, 171-72 (1969) ("The established principle is that suppression of the

product of a Fourth Amendment violation can be successfully urged only by those whose rights

were violated by the search itself, not by those who are aggrieved solely by the introduction of

damaging evidence."). Accordingly, ZHAYTER lacks standing to move to suppress ZAITAR's

statements.

---

[5] ZAITAR made the statements at issue on April 14, 2008. The heroin indictment, Case No. 1:08cr123-RMC was returned by a Grand Jury sitting in the District of Columbia on April 28, 2008. The cocaine indictment, Case No. 1:07cr329-RMC was returned on November 30, 2007, and superceded on April 28, 2008. Accordingly, ZAITAR had Sixth Amendment rights regarding the cocaine indictment, and not the heroin indictment, at the time the statements were made. *See McNeil v. Wisconsin*, 501 U.S. 171, 176 (1985) (Sixth Amendment right to counsel is offense-specific).

### III.  Conclusion

For the foregoing reasons, the government submits that no hearing is necessary, and the

Court should deny Defendant's Motion to Suppress Statement Evidence.  ZHAYTER lacks

standing to challenge admission of ZAITAR's statements.  The government also requests that the

Court issue an order by September 26, 2011, notifying the government about whether it will

require witness testimony at the October 4, 2011 hearing on this motion.


Respectfully submitted,

ARTHUR G. WYATT
Chief
Narcotic and Dangerous Drug Section

By: _____/s/_____
Tritia L. Yuen
Meredith A. Mills
Trial Attorney
Narcotic and Dangerous Drug Section
U.S. Department of Justice / Criminal Division
1400 New York Avenue, NW
Washington, DC 20005
Main Office: (202) 616-2251
Fax: (202) 514-0483
Tritia.Yuen@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on the 9th day of September 2011, I filed the foregoing
GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS STATEMENT
EVIDENCE with the Clerk of the Court via the CM/ECF system which will deliver a Notice of
Electronic Filing on all counsel of record.


     By:           /s/           
                Tritia L. Yuen