UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CRIMINAL NO.: 1:08cr00214-RMC |
| | ) | |
| NEMR ALI ZHAYTER, | ) | |
| A/K/A SHADI, | ) | |
| Defendant. | ) | |

**GOVERNMENT'S OPPOSITION RESPONSE TO
DEFENDANT'S MOTION FOR A BILL OF PARTICULARS**

COMES NOW the United States of America, by and through its undersigned counsel, and

respectfully opposes defendant's motion for a bill of particulars, filed in the above-captioned

matter on July 26, 2011.  *See* Motion for a Bill of Particulars (Docket No. 39) ("Mot. For Bill of

Part."), filed in Criminal Case No. 1:08cr123.[1]

**Procedural Background**

Defendant YAHYA ALI ZAITAR, a/k/a "Yehya Ali Daoud Zeiter," a/k/a "Abu Rabih"

(hereafter "ZAITAR") has been separately charged in this district on heroin and cocaine related

offenses.  Specifically, on April 25, 2008, ZAITAR was indicted by a federal grand jury sitting in

the District of Columbia on charges of conspiring, from in or about May 2007 to April 25, 2008,

in Paraguay, Brazil, Romania, and elsewhere, to (1) knowingly and intentionally import 1

---

[1] As a result of Criminal Case Nos. 1:08cr123 and 1:08cr214 being joined for trial, this
Opposition will be filed in both cases, with the difference in content being only the captions.
ZAITAR and NEMR ALI ZHAYTER (the defendant in 1:08cr214) are collectively referred to
herein as "the defendants."  ZHAYTER's counsel did not file a separate motion for a bill of
particulars (except as attachment #9 to Docket Entry 25, which was a motion to file motions one
day late).  On August 5, 2011, ZHAYTER's counsel moved to join ZAITAR's motions filings
and the Court granted that motion.  Therefore, ZAITAR's Motion for a Bill of Particulars, at
Docket Entry 39 in Criminal Case No. 1:08cr123, serves as the pending motion also for
ZHAYTER's case in Criminal Case No. 1:08cr214.

kilogram or more of heroin into the United States from the Middle East, in violation of 21 U.S.C. §§ 952 and 960, and (2) knowingly and intentionally distribute 1 kilogram or more of heroin, intending and knowing that such substance would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a) and 960, all in violation of 21 U.S.C. §§ 960 and 963, and 18 U.S.C. § 2. The heroin importation conspiracy case is the subject of the above-captioned matter (Criminal Case No. 1:08cr123). Although not specifically named in ZAITAR's indictment, conspirators in the heroin importation conspiracy include, among others, his brother NEMR ALI ZHAYTER, a/k/a "Shadi" (hereinafter "ZHAYTER"). The heroin-related indictment contains forfeiture allegations; no overt acts are specifically identified.

ZAITAR also was indicted on November 30, 2007, by a federal grand jury sitting in the District of Columbia on charges of conspiring, from in or about July 2007 through the date of indictment, in Paraguay, the United States and elsewhere, with MOHAMMED ALI AWALI, a/k/a "Ali Gordo," to (1) knowingly and intentionally import 500 grams or more of cocaine into the United States from Paraguay, in violation of 21 U.S.C. §§ 952 and 960, and (2) knowingly and intentionally distribute 500 grams or more of cocaine intending and knowing that such substance would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a) and 960, all in violation of 21 U.S.C. §§ 960 and 963 and 18 U.S.C. § 2. ZAITAR and AWALI also were charged in Count Two of that indictment with distribution of 500 grams or more of cocaine knowing and intending it will be imported into the United States, in violation of 21 U.S.C. §§ 959(a) and 960. That indictment was superseded on April 25, 2008, to encompass a five kilograms or more cocaine importation conspiracy in Count One, and to extend the conspiracy time period out to the date of the superseding indictment; Count Two remained the

same.  Count Two relates to an October 6, 2007 transaction where, at ZAITAR's instruction, AWALI transported a kilogram test sample of cocaine to a Burger King restaurant in Ciudad del Este, Paraguay, and delivered the cocaine, which was hidden in a concealed and hidden compartment of a rolling suitcase, to a Paraguayan undercover officer posing as a drug mule.  AWALI was extradited from Brazil and first appeared in this district on August 30, 2011.  The cocaine importation conspiracy case against ZAITAR and AWALI is the subject of Criminal Case No. 1:07cr329 which also is currently pending before this Court.

Following ZAITAR's provisional arrest in Romania on or about April 14, 2008, on both his cases, he was extradited to the United States on or about August 15, 2008, and first appeared before this Court on or about August 21, 2008.  He has remained in U.S. custody since that time pending trial.

ZAITAR's brother, NEMR ALI ZHAYTER, a/k/a "Shadi," (hereafter "ZHAYTER") was indicted separately in this district in Criminal Case No. 1:08cr214 in the same heroin importation conspiracy as ZAITAR.  Specifically, on July 17, 2008, ZAITAR was indicted by a federal grand jury sitting in the District of Columbia and charged with conspiring, from in or about May 2007 until the time of his indictment, in Paraguay, Brazil, Romania and elsewhere, to (1) knowingly and intentionally import 1 kilogram or more of heroin into the United States, in violation 21 U.S.C. §§ 952 and 960, and (2) to knowingly and intentionally distribute 1 kilogram or more of heroin intending and knowing that such substance would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a) and 960, all in violation of 21 U.S.C. §§ 960 and 963 and 18 U.S.C. § 2.  The indictment contains forfeiture allegations; no overt acts are identified specifically.

3

ZHAYTER was arrested provisionally in Paraguay on or about August 6, 2008; he was extradited to the United States on or about February 24, 2011, and first appeared before this district court on or about February 25, 2011.  He also has remained detained since that time pending trial.

ZAITAR's heroin importation conspiracy case at Criminal Case No. 1:08cr123 has since been joined for trial with that of his brother's, NEMR ALI ZHAYTER, at Criminal Case No. 1:08cr214.  Their trial currently is set for May 14, 2012, after having been continued from September 19, 2011, at the government's request at the status conference conducted August 3, 2011.  This Court has continued the defendants' cases since their respective extraditions to the United States for a number of reasons. This includes ZAITAR's wish to await his brother's arrival from Paraguay so that they could consult on how best to resolve their cases together because they are alleged to be involved in the same conspiracy.  Other reasons have included to await the extradition of AWALI (ZAITAR's named co-defendant in the cocaine importation conspiracy case) from Brazil and the resolution of outstanding Vienna Convention Mutual Legal Assistance Treaty requests to Paraguay.  In addition, the cases have been designated complex under 18 U.S.C. § 3161(h)(7)(A) and 18 U.S.C. § 3161(h)(7)(B)(ii), and this Court has repeatedly determined that the ends of justice is served by continuances in order to ensure, among other aspects, that the parties are afforded a reasonable period of time to review the discovery, which is more often than not in one to four foreign languages (Arabic (Lebanese dialect), Portuguese, Spanish, Romanian), in order to effectively conduct plea negotiations, file motions, and prepare for trial.

Despite the trial continuances, motions hearings are now currently set for October 3 and 4, 2011, after having been continued from August 25, 2011 and September 2, 2011 (and alternatively September 7-8, 2011). In preparation for the motions hearings and after several deadline extensions, the Court ordered the defense to file any and all motions by Monday, August 22, 2011. On July 26, 2011, ZAITAR's counsel filed a Motion for a Bill of Particulars asking the Court to direct the prosecution to file a Bill of Particulars, pursuant to Federal Rule of Criminal Procedure 7(f) and the Fifth, Sixth and Eighth Amendments of the United States Constitution. Mot. For Bill of Part. at 1. ZHAYTER has joined in this motion.

In support of ZAITAR's motion, the defense states ZAITAR is the only named defendant in his indictment and that "[t]he indictment speaks of other known and unknown (and unindicted with him) co-conspirators allegedly acting in concert with" ZAITAR. *Id.* Thus, the defense argues, "[a] bill of particulars is necessary to enable the defendant and counsel to understand the substance of the charges against Mr. Zaitar and to prepare his defense against these charges, without prejudicial surprise at trial." *Id.* The defense further states that "[o]ther 'co-conspirators' apparently have not been indicted" and that "Mr. Zaitar is also charged in another case (07-cr-329) with similar conduct." *Id.* The defense submits that "[w]hen an indictment fails to provide adequate information to the defendant and counsel for the charges to be understood or for unfair surprise to be avoided at trial, the defendant's remedy is to file a motion for a bill of particulars" and that the case law supports the ordering of a bill of particulars in broadly alleged conspiracies. *Id.* In support of this notion, counsel cites to two 1979 cases. *See United States v. Hubbard*, 474 F. Supp. 64, 81 (D.D.C. 1979) (ordering list of all unindicted coconspirators and all overt acts in furtherance of conspiracy); *United States v. Mannino*, 480 F. Supp. 1182, 1185

(S.D.N.Y. 1979) (allegedly ordering bill of particulars with respect to overt acts but the government believes this is an inaccurate read of the decision).  In turn, the defense seeks a Court-directive for the government to file a Bill of Particulars for the heroin importation conspiracy which includes the following information:

A.    The exact date(s), time(s), and place(s) (including address) when Mr. Zaitar first participated in any overt act in support or furtherance of the claimed conspiracy in this case or subsequently engaged in any overt act in support or furtherance of the claimed conspiracy in this case.

B.    A precise description of the nature of any acts or statements that Mr. Zaitar allegedly engaged in or uttered in support or furtherance of the claimed conspiracy in this case; including the name, address, and phone number of each person present when such acts were committed as well as the exact date(s), time(s), and place(s) (including address) of these acts or statements.

C.    Exactly how government law enforcement officials determined Mr. Zaitar was involved in the claimed conspiracy in this case and the production of all information and evidence supporting the belief at the time it was first held.

D.    The exact date, time, and place where the conspiracy began if Mr. Zaitar was not present as reflected in the answer to (A); including the name, address, and phone number of each person present when the conspiracy began.

E.    Precisely describe the "conduct of the co-conspirators in furtherance of the conspiracy that was known to the defendant or was reasonably foreseeable," citing Sentencing Guidelines § 201.4(a) (Commentary).

F.    A precise description of information or evidence, including names, addresses, and phone numbers, of all persons having information or knowledge, as well as the exact date(s), time(s), and place(s) (including address), demonstrating that Mr. Zaitar "conspired" with anyone.

G.    Identify and provide addresses and phone numbers of all persons who were allegedly co-conspirators and specify when they joined or left the alleged conspiracy and exactly what their participation was.

H.    Specify whether the alleged conspiracy was express or implied on the part of Mr. Zaitar and each co-conspirator. If express, state the express agreement. If implied, identify and describe the acts, meetings or statements.

6

I.      The identify [sic], address, and telephone number of all persons known by the government to have participated in each alleged overt act of the claimed conspiracy in this case or who witnessed any part of the alleged conspiracy in this case.

J.      The exact date, time, and place where law enforcement alleges that it observed conduct of Mr. Zaitar in furtherance of the charged conspiracy in this case; including the name, address, and phone number of each person present at the time.

Mot. for Bill of Part. at 2-3.

## Relevant Case Law

Rule 7(f) of the Federal Rules of Criminal Procedure provides that "[t]he court may direct the government to file a bill of particulars" and [t]he defendant may move for a bill of particulars before or within 14 days of arraignment or at a later date if the court permits." Fed.R.Crim.P. 7(f).[2]  The D.C. Circuit has stated that, "[a] bill of particulars can be used to ensure that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges, to prepare a defense, and perhaps also to be protected against retrial on the same charges." *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987); *United States v. Martinez*, 764 F. Supp. 2d 166, 173 (D.D.C. 2011) (Lamberth, C.J.); *United States v. Palfrey,* 499 F.  Supp.  2d 34, 51 (D.D.C. 2007) (Kessler, J.); *United States v. Bourdet*, 477 F. Supp. 2d 164, 184 (D.D.C. 2007) (Bates, J.).  Thus, a "court should grant a motion for a bill of particulars to the extent that it believes it is necessary to allow the defendants to adequately prepare for and avoid surprise at trial." *United States v. Bazezew*, – F.Supp.2d –, 2011 WL 1790103, at *5

---

[2] Rule 7(f) also provides that if a bill of particulars is required, the government may amend a bill of particulars subject to such conditions as justice requires.  The details and references set forth in a bill of particulars are not intended to limit the proof ultimately offered at trial, but are intended to provide a defendant with a clearer understanding of the conduct covered by the indictment.

(D.D.C. May 11, 2011) (Friedman, J.).  This does not mean that the defendant is "'entitled to

know all the evidence the government will use against him at trial[,]' but he must be 'adequately

informed' of those charges so that he may prepare a defense for trial." *Id.* at *5 (citing *United

States v. Griffith,* 362 F. Supp. 2d 1263, 1277 (D. Kan. 2005) (internal footnotes omitted)).

 Despite these strictures, the courts have not demanded much beyond a proper non-

speaking indictment to find a defendant has been adequately informed of the charges against him.

For instance, in *United States v. Mejia,* 448 F.3d 436, 445-46 (D.C. Cir. 2006), the defendants

were charged with conspiring to distribute cocaine knowing and intending its unlawful

importation into the United States, pursuant to 21 U.S.C. § 963, as is similarly charged here.  The

district court denied the defendant's motion for a bill of particulars.  The Court of Appeals

concluded, just as the district court had found, that:

> the superseding indictment "identifies what the object of the conspiracy is as is
> required by [21 U.S.C. § 963,] ... provides a time period of the conspiracy, ...
> identifies the statutes that the object of the conspiracy violated[,] ... has an
> identification of the proper mens rea required under Section 963[,] ... [and]
> identifies at least five countries where the conspirators acted."  Motions Hr'g Tr.,
> vol. V at 51 (March 13, 2001).  Although the indictment did not allege any overt
> acts, the district court correctly found that "the language of Section 963 does not
> call for any to be set forth in an indictment, nor do[ ] any ... have to have been
> committed in order for a [§] 963 [violation] to be proven." *Id.* at 52; *see United
> States v. Shabani,* 513 U.S. 10, 15, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994)
> (holding that the government need neither allege nor prove the commission of an
> overt act to establish a violation of 21 U.S.C. § 846, which is worded identically
> to 21 U.S.C. § 963).

*Mejia*, 448 F.3d at 445.

 After *Mejia*, this district court has continued to limit defendants' over broad requests for

bill of particulars.  In *United States v. Bourdet*, 477 F. Supp. 2d 164 (D.D.C. 2007), wherein the

defendants, Guatemalan nationals, were charged with conspiracy to import five kilograms or

more of cocaine into the United States in violation of 21 U.S.C. §§ 960 and 963, District Judge

John D. Bates denied defendants' request for a bill of particulars, stating:

> The Government argues that its indictment is sufficiently specific. Count two of
> the indictment identifies a time period for the alleged conspiracy (April to August
> 2006) and at least three countries where the defendants acted in furtherance of the
> conspiracy (Guatemala, El Salvador, and Panama). It also specifies the object of
> the conspiracy, the statutes violated by the conspiracy, and the mens rea required
> by those statutes. Although the indictment in this case is relatively spare, it is
> nonetheless sufficient to enable defendants to understand the charges against them
> and to prepare a defense.  Indeed, the court of appeals recently affirmed the denial
> of a bill of particulars in response to an indictment containing this exact type and
> amount of information. *See Mejia,* 448 F.3d at 445.

*Bourdet*, 477 F. Supp. 2d at 184.

More recently, the district court reinforced these restrictive principles for conspiracy

cases, stating that "the general rule is that the defendant is not entitled to obtain 'detailed

information about the conspiracy in a bill of particulars.'" *Bazewew*, 2011 WL 1790103, at *5

(citing *United States v. Diaz,* 303 F. Supp. 2d 84, 89 (D. Conn. 2004); *see also United States v.

Murgas,* 967 F. Supp. 695, 702 (N.D.N.Y. 1997)).  In *Bazewew*, a case in which defense counsel

Carmen Hernandez participated, Chief Judge Lamberth granted in part the defendants' request

for a bill of particulars since the 16 defendants' participation in the conspiracy count (conspiracy

to commit bribery) was not clear by an overt act enumerated in the superseding indictment.

However, the Court also denied defendants' request for a bill of particulars in part, stating:

> [The defendants] are not entitled to know exactly how government law
> enforcement officials determined that each defendant was involved in the
> conspiracy; the exact date, time, and place when the conspiracy began; the
> conduct of all co-conspirators in furtherance of the conspiracy that was known to
> each individual defendant; the names, addresses, and telephone numbers of all
> persons having information or knowledge of each defendant's involvement in the
> conspiracy; the identity of all persons known by the government to have
> participated in each alleged overt act; or a description of the nature of all acts or

9

statements that each defendant allegedly engaged in or uttered in support of or in
furtherance of the conspiracy.

*Bazezew*, 2011 WL 1790103, at *5.  This same type of information is also being sought in the

instant case with ZAITAR and ZHAYTER.  *See, e.g.,* Mot. for Bill of Part. at 2-3, paragraphs B,

C, D, E, F, and I.  Thus, it remains the law of this district that as long as "[t]he indictment alleges

the essential facts, charges the required elements, and bars a second prosecution for the same

offense [] [i]t need not spell out which co-conspirator committed which conspiratorial act, and, . .

. need not allege any overt act in furtherance of the conspiracy."  *Martinez*, 764 F. Supp. 2d at

173-174; *see also Palfrey,* 499 F. Supp. 2d at 51-52 (noting that in appropriate cases, the

government should disclose the names of the alleged co-conspirators, but the government "is not

required to disclose its evidence as to the details of the activities of those co-conspirators, nor is

it required to disclose its theories" of the case); *United States v. Brodie,* 326 F. Supp. 2d 83, 91-

92 (D.D.C. 2004) (Huvelle, J.) ("Nor is the government required to prove how or when the

conspiracy was formed, the details of any meeting or when the defendant joined the

conspiracy.").

To be sure, in considering whether to direct the government to file a bill of particulars,

"'[t]he Court must strike a "prudent balance" between the legitimate interests of the government

and those of the defendant[].'"  *Palfrey,* 499 F. Supp. 2d at 51 (citing *United States v. Ramirez*,

54 F. Supp. 2d 25, 29 (D.D.C. 1999)); *see also United States v. Anderson*, 441 F. Supp. 2d 15, 19

(D.D.C. 2006) (Friedman, J.) (citing *United States v. MacFarlane*, 759 F. Supp. 1163, 1169

(W.D. Pa. 1991)).  As part of this balancing act then, the court may determine that "if the

requested information is available in some other form, then a bill of particulars is not required.*"*

*United States v. Butler,* 822 F.2d 1191, 1193 (D.C. Cir. 1987); *see also Martinez*, 764 F.Supp.2d

at 173; *United States v. Bourdet*, 477 F. Supp. 2d 164, 184 (D.D.C. 2007).  This is because "[a]

bill of particulars is not a discovery tool or a devise [sic] for allowing the defense to preview the

government's theories or evidence. It properly includes clarification of the indictment, not the

government's proof of its case."  *Ramirez,* 54 F. Supp. 2d at 29.  *See also Bazezew*, 2011 WL

1790103, at *5; *Martinez*, 764 F.Supp.2d at 173; *Palfrey,* 499 F. Supp. 2d at 51; *Anderson*, 441

F.Supp.2d at 19; *Brodie,* 326 F. Supp. 2d at 91-92.  As such, the court may deny a defendant's

motion for a bill of particulars if the court finds, for instance pursuant to government counsel's

proffer, "that the information sought by defendant is available to him through the full discovery

provided by the government."  *United States v. Gray*, 723 F. Supp. 2d 82, 86 (D.D.C. 2010)

(Facciola, M.J.) (denying defendant's motion for a bill of particulars in a criminal tax case, in

part "based on representations made by the government" as to discovery produced).

　　In a case from earlier this year, wherein the defendant was charged with conspiracy to

distribute and possess with intent to distribute 50 grams or more of cocaine base and five

kilograms or more of cocaine, District of Columbia District Court Chief Judge Royce C.

Lamberth determined that the "defendant has sufficient information to prepare his defense.  The

government has provided ample discovery to defendant." *Martinez*, 764 F.Supp.2d at 174.  In

denying the defendant's request for a bill of particulars, Chief Judge Lamberth explained:

> Of the 11,508 telephone activations between co-conspirators that agents
> intercepted and recorded in this case, "[t]he government has identified 146 calls
> that may be used at trial and provided a list of those calls to the defendant," along
> with draft transcriptions and translations of those calls.  Gov't Opp'n 7, ECF No.
> 109. The government also summarized the factual background of this case at
> length in its opposition, which could indicate the facts that the government deems
> relevant to its prosecution. *Id.* at 2-14. Although the purpose of a bill of

> particulars is not to provide discovery to defendant, the fact that the government
> has provided this information to defendant shows that "the requested information
> is available in another form." *Butler,* 822 F.2d at 1193.

*Id. But see Bazezew*, 2011 WL 1790103, at *5 ("[I]t is not sufficient for the government to

respond to a motion for a bill of particulars by pointing to the voluminous discovery already

provided or by relying on a governmental open file policy. *United States v. Anderson,* 441 F.

Supp. 2d at 19 (citing *United States v. Trie,* 21 F. Supp. 2d 7, 21 n. 12 (D.D.C.1998)).").

Similarly, in *United States v. Glover*, 583 F. Supp. 2d 5 (D.D.C. 2008), District Judge

Thomas F. Hogan evaluated a defendant's request for a bill of particulars.  In *Glover*, the

defendants were charged with conspiring to possess with intent to distribute and to distribute

PCP and heroin.  One of the defendants, Velma Williams sought a court order compelling the

government to produce a bill of particulars addressing the following seven categories of

information, which are nearly identical to those requested by defendants ZAITAR and

ZHAYTER:

> (1) the names of all co-conspirators, whether unindicted or otherwise implicated,
> (2) approximate dates, times, and locations of meetings or conversations in which
> each defendant participated, (3) approximate date on which each defendant joined
> the conspiracy, (4) the role each defendant played in the alleged conspiracy, (5) all
> overt acts in furtherance of the conspiracy, (6) the names of co-defendants who
> participated in heroin distribution versus those that participated in PCP
> distribution, and (7) any and all statements the co-conspirators made about
> Williams that the government plans to prove at trial.

*Id.* at 13.  In denying the defendant's request, Judge Hogan determined that:

> "access to discovery ... weakens the case for a bill of particulars here." *United
> States v. Urban,* 404 F.3d 754, 772 (3d Cir. 2005). Williams has received
> discovery not only of communications involving her, but also of communications
> involving the other co-defendants charged with her in the superceding indictment,
> in addition to other discovery provided by the government, including discovery
> from a related trial that took place earlier this year. [footnote omitted] . . . At this

point in the pretrial proceedings, Williams has received enough discovery and other information, including information disclosed by the government during the numerous status conferences held by the Court, to illuminate the nature of the charges and her role in the alleged conspiracy with sufficient detail to enable her to understand the charges, prepare a defense, and avoid double jeopardy.

*Id.* at 13-14. Thus, the government's production of discovery is a key factor for this district court in evaluating whether a defendant's request for a bill of particulars warrants granting.

### **Argument in Opposition**

Considering the above relevant case law, the defense's request for a bill of particulars in the instant matter is insupportable. First, the indictments against ZAITAR and ZHAYTER sufficiently describe the charges brought against the defendants with enough precision to allow the defendants to understand the charges, prepare a defense, and be protected against retrial on the same charges. Second, the request not only goes beyond what a bill of particulars would traditionally include and this district court has historically ordered, but a bill of particulars is not warranted based on the broad and detailed discovery produced to the defendants to date which more than adequately apprises them of the charges and avoids unfair surprise at trial. Therefore, the government strongly opposes the defense's request for a bill of particulars and respectfully requests that this Honorable Court deny the defendant's motion. In further support of its arguments, the government offers the following.

In line with the ruling in *Mejia* described above, the indictments against both ZAITAR and ZHAYTER clearly identify what the object of the conspiracy is (to import and distribute heroin knowing and intending its importation into the United States), when the conspiracy occurred (between May 2007 until the time of their respective indictments), which statutes are violated, what mens rea is required (knowing and intending) and where the conspirators acted

13

(Paraguay, Brazil, Romania, and elsewhere).  This is all that is required and contrary to the

defense's assertions, the relevant statutory language for the offenses charged here do not require

that overt acts be alleged.  *See, e.g., United States v. Shabani,* 513 U.S. 10, 15 (1994) (holding

that the government need neither allege nor prove the commission of an overt act to establish a

violation of 21 U.S.C. § 846, which is worded identically to 21 U.S.C. § 963); *see also Mejia*,

448 F.3d at 445.

Equally important, the government *already* has provided defense counsel with much of

the requested information in other forms.  This sufficiently apprises both ZAITAR and

ZHAYTER of the conspiratorial conduct for which they are being prosecuted, the basis for those

charges, and certain aspects of the government's evidence in support of the heroin importation

conspiracy (and even the cocaine importation conspiracy, in ZAITAR's case) with which they

have been indicted.  For instance, to date, the government has produced the following materials

to the defendants:

    **a.**      **A 19-page document summarizing the direct and possible Rule 404(b)
evidence in the heroin conspiracy case against the defendants.**

The document provides a chronological synopsis of many of the consensual recordings of

calls or meetings conducted in the case and/or other information provided relating to calls or

meetings with which ZAITAR, in particular, was involved.  The synopsis also includes specific

references to other individuals involved in those recordings, putting the defense on notice as to

conspirators and possible defense or government witnesses.

    **b.**      **Over 350 audio or video recordings for calls or meetings consensually-
recorded by a confidential informant between April 2007 and April 2008.**

Simply by reviewing these recordings, the defense would learn that oftentimes the date,

time, participants and location of the meetings or calls is referenced by the informant (in English) at the beginning of the recording or is apparent in the recording itself.  Approximately 93 of those recordings are direct conversations with ZAITAR; only two conversations are believed to be with ZHAYTER directly or in his presence.  In April 2011, the defense was provided a 26-page chart identifying the location of the recordings on the various disclosed disks and the date / time and participants to these recordings (some of the recordings do not relate directly to the government's case against the defendants); consequently, the defense has been provided sufficient information to help them identify conspirators and witnesses and need only review the recordings and discuss them with their clients to understand the government's evidence against them.  Some of these recordings are in the process of being transcribed / translated and, as has been the government's practice each and every time, will be promptly turned over to the defense in draft form when completed to enable them to further understand and assess their defense.

     **c.**     **Nine (9) audio recordings for calls consensually-recorded by an undercover agent between July 10, 2007 and March 15, 2008, and the related draft transcripts.**

All of these calls are between the UC and ZAITAR.  Each was transcribed and translated; the defense has been provided with the related 164 pages of draft transcripts.  The dates / times of those calls and the transcripts themselves readily aid the defendant in understanding the chronology of the government's evidence against the defendants and the conversations in which ZAITAR engaged in furtherance of the heroin importation conspiracy.

**d.** **Eight (8) audio or video recordings (some of the same event), for meetings held in Bucharest, Romania which were consensually-recorded by undercover agents or confidential informants between April 8, 2008 and April 14, 2008, and the related draft transcripts.**

An undercover agent and confidential source(s) recorded several meetings with ZAITAR to discuss heroin trafficking while ZAITAR was in Romania from on or about April 8, 2008, until ZAITAR's arrest in Bucharest on or about April 14, 2008.  The location of the meetings were already disclosed to the defense. The meetings cover approximately 14 hours of time, although several of the recordings are of the same event but completed with separate recording devices.  The defense was provided 100 pages of draft transcripts (in English only) for three lengthy meetings held that week.  One of the recordings (identified as N-5) is in the process of being transcribed into the original languages (Arabic, Spanish, and Portuguese) as well, and as has been the government's practice each and every time, will be turned over to the defense in draft form to enable them to further understand and assess their defense.  In these recordings, ZAITAR discusses his and his associates' role and participation in the conspiracy.

**e.** **Over 800 audio recordings for calls recorded as part of a judicialized Romanian wiretap between April 8, 2008 and April 15, 2008, and related draft transcripts for 56 recordings.**

As the defense knows, while ZAITAR was in Bucharest, Romania in April 2008, meeting with the undercover agent and confidential source(s) to discuss the importation of heroin into the United States, a judicialized wiretap was executed at the U.S.'s request by Romanian authorities over target telephones utilized by ZAITAR.  Intercepted calls support the conspiracy to obtain one to three kilograms of heroin, as a test sample, for transportation via mules and carriers to ZAITAR in Romania for further distribution to U.S. customers via the undercover agent, with the

plans for the larger quantities in excess of 50 kilograms to be finalized later.  Over one-half of the

calls involved ZAITAR and ZAITAR spoke with various individuals, to include ZHAYTER (at

least 21 of the calls so far identified and both counsel have had those calls identified for them),

Amer Zoher El Hossni, Zouhair Zeayter, Ramzi Zeayter, their source of supply in Lebanon (a

relative named "Mohamed Wahbi"), a bank contact to facilitate the money laundering (an

individual named "Samir"), Adham LNU, a female mule named Marcia, and others.  Fifty-six

calls have been transcribed and translated and over 250 pages of draft transcripts have been

turned over to the defense (at least 17 of the disclosed draft transcripts are of calls between

ZAITAR and ZHAYTER).  The identities of the conspirators have not only been provided to

counsel in discovery letters, but are apparent in some of the transcripts due to ZAITAR's or

ZHAYTER's own admissions and statements with or about the conspirators (*e.g.,* oftentimes the

defendants discuss the conspirators by name and role, or ZAITAR identifies the individual with

whom he is speaking by name, or the interceptee self-identifies).  In addition to ZHAYTER, the

calls and materials disclosed identify no less than an additional eight conspirators.  All of the

calls are categorized by date and time and again readily provide the defense a chronology of the

events of the heroin conspiracy, as it was in progress, and statements made and actions taken in

furtherance of the conspiracy.  The defense has also received documents from Romania (in

Romanian and as transcribed into English) relating to the authorization for the wiretap.

     **f.**     **Two (2) audio and video recordings of conversations with ZAITAR that were consensually recorded by a confidential informant and law enforcement agents at the time of ZAITAR's arrest in Bucharest on or about April 14, 2008, and related draft transcripts.**

These separate videos represent ZAITAR's post-arrest statements, including his

interrogation by DEA Special Agents following his arrest in Romania.  The videos total one hour

and 58 minutes in length and draft transcriptions / translations of those conversations (totaling 69

pages) have been disclosed to the defendants (as has a two-page DEA-6 law enforcement report

about ZAITAR's post-arrest interview).

> **g.**     **Approximately 1,324 pages of documents, 1,242 color or black and white photos, 67 videos, and other electronic materials received from Paraguayan authorities pursuant to two Vienna Convention Mutual Legal Assistance Treaty requests dated February 6, 2008 and January 4, 2011, and certain related transcripts.**

The Paraguayan MLAT materials relate to ZAITAR, ZHAYTER, and other individuals

with whom they have been associated with in international heroin and cocaine trafficking.

Among other types of evidence, the materials include detailed and substantive law enforcement

reports generated by Paraguay' anti-narcotics bureau (SENAD) of various controlled buys and/or

surveillance of which ZAITAR and ZHAYTER others were involved and associated photographs

and videos of the surveillance conducted during the buys, the post-buy execution of search

warrants, and the results of various arrest and search warrants conducted on August 6, 2008,

when ZHAYTER and others were arrested in Paraguay for their drug trafficking conduct. Many

of these documents have been translated from Spanish into English and have been or will be

disclosed to the defense.  These reports provide a very detailed overview of the overall

investigation conducted by the Paraguayan authorities and DEA in the Tri-Border region, and of

the various players in the heroin and/or cocaine trafficking including known associates of the

defendants.  Certainly, the identity of witnesses is clear from the materials. Forensic reports

detailing the results of lab tests conducted on drugs (primarily cocaine) seized have also been

provided, as has at least two very detailed reports from the results of forensic analyses conducted

on telephones, SIM cards and other electronic media seized from ZHAYTER and other

associates on or about August 6, 2008.

      **h.**      **YouTube video of an interview conducted with Nouh Zeiter, brother to ZAITAR and ZHAYTER, and related draft transcripts.**

Nouh Zeiter is repeatedly referenced in the wiretap calls between ZAITAR, ZHAYTER

and others as being involved in the coordination of the one to three kilogram heroin sample's

transport to Romania.  An Italian reporter conducted an interview with Nouh Zeiter about his

hashish business; also disclosed were corresponding draft transcripts for each part of the two-part

video.

      **i.**      **Copies of physical evidence.**

Copies of documentation seized in Romania, to include a Western Union receipt and a

sheet of paper relating to the calculation of the cost of the heroin to be distributed to the

undercover agent, the acid used to prepare heroin for distribution in the United States, and a

conspirator's telephone number have also been disclosed. The original evidence also has been

available for the defense counsel to review.

      **j.**      **A 16-page document summarizing evidence of drugs going elsewhere (other than the U.S.) and/or information on the drug quality / type.**

This document was provided as a courtesy to the defense and offers various references

from informant debriefs, various recordings, or other materials relating to evidence of drugs

going elsewhere (other than the U.S.) and/or information on drug quality / type.

Apart from the significant discovery disclosed to date, the defense has also been put on

notice of the same information through various detailed status conferences held before this Court

and in various pleadings or motion responses filed to date by government counsel.  *See United*

*States v. Mejia*, 448 F.3d 436, 446 (D.C. Cir. 2006) (in referencing the defense's review of discovery provided months before trial in upholding the district court's denial of the defendants' motion for a bill of particulars, the Court of Appeals stated, "We can only conclude that if the defendants felt ambushed, it was not because the government was lying in wait, but because the defendants were not looking."); *see also United States v. Hubbard*, 474 F. Supp. 64, 81 (D.D.C. 1979) ("If the government has disclosed this information, the Court does not see why the government rather than the defendants should ferret it out.").

In light of the above, it can hardly be said that the defense is without the information it needs to fairly and adequately prepare its defense, much less that the defense faces unfair or prejudicial surprise at trial in the absence of this Court ordering the government to prepare a bill of particulars.  In short, the information sought by the defense in a bill of particulars *has already been disclosed to them*, including the exact date(s), time(s), and place(s) (including addresses in some instances) when the defendants and their conspirators first participated in any overt act in support or furtherance of the claimed conspiracy in this case or subsequently engaged in any overt act in support or furtherance of the claimed conspiracy in this case; a precise description of the nature of any acts or statements that the defendants or their conspirators allegedly engaged in or uttered in support or furtherance of the claimed conspiracy in this case, as well as the exact date(s), time(s), and for many of the recorded events, the place(s) of these acts or statements (including addresses - to be sure, many of the recordings with ZAITAR were conducted at ZAITAR's residence). The information provided already also explains how law enforcement officials determined the defendants were involved in the claimed conspiracy in this case and when participants to the conspiracy, such as ZHAYTER, entered the conspiracy.  The wiretap

calls and the draft transcripts especially put the defendants on notice as to which persons were

allegedly co-conspirators, when they joined or left the alleged conspiracy, and exactly what their

participation was, as well as what part of the conspirator conduct would have been known to the

defendant or was reasonably foreseeable.  Whether the conspiracy was express or implied also is

readily realized from all the various recordings and draft transcripts produced to date. That many

of the recorded events were in the presence of law enforcement also satisfy the defendants'

request for the exact date, time, and place where law enforcement alleges that it observed

conduct of the defendants in furtherance of the charged conspiracy.  Not insignificant to this

analysis is that most of the recordings are also in languages, including the Lebanese dialect, with

which the defendants are most familiar.  In addition, the government has written to the defense

describing physical and/or testimonial evidence, as well as recordings and transcripts, in the case,

all of which serve to clarify the indictment and allow the defendants to understand the charges

and prepare a defense.  The government should not have to re-package this information again for

the defense in a bill of particulars when their diligent review of the discovery produced would

accomplish the same result. In any event, this district has denied defendants' requests in other

cases to use the bill of particulars option to solicit the information the defendants herein request.

*See, e.g., Bazezew*, 2011 WL 1790103, at *5; *United States v. Glover*, 583 F. Supp. 2d at 13-14.

Even the cases cited by the defendants support denial of the instant motion.  *See United States v.*

*Hubbard*, 474 F. Supp. 64, 80-82 (D.D.C. 1979) (denying defendants' requests for information

relating to "specification of the places where the alleged conspiracy was entered into," "the exact

time or date of meetings," and "minute details of the occurrence of the overt acts" on the basis

"that such information is purely evidentiary material unavailable in a bill of particulars"); *United*

*States v. Mannino*, 480 F. Supp. 1182, 1185-1186 (S.D.N.Y. 1979) (denying production through a bill of particulars of the names of the undercover agent and other persons present during over acts, "all acts committed by claimed aiders and abettors, by analogy to the rule shielding the Government from disclosure of all overt acts involved in a conspiracy," "actions actually taken by the respective defendants" and "disclosure of the manner in which the offense was carried out" on the basis that doing so, respectively, "call[s] for the names of Government witnesses" which the prosecution is not obligated to disclose, "probe[s] too deeply into the Government's theory and method of proof" and is "not necessary to inform defendants ... of the nature of the charges against them").

Finally, to the extent the defense seeks the name, address, and phone number of each person present when such overt acts were committed or of all persons having information or knowledge demonstrating that the defendants conspired with anyone, the defense is not entitled to the government's witness list at this time (nor is the government required to identify the overt acts engaged in by their clients although much of the overt acts have already been described in detail for the defense). Again, counsel need only review the discovery disclosed or ask their clients for the name, address, and phone numbers of individuals with whom their clients participated in the recorded conversations because they were most often the defendants' own close drug associates and/or family members; indeed, many of the meetings were conducted at the defendants' overseas residences. The identities of many of the participants to the conspiracy have already been adequately identified by the government. When the requested information is available in the voluminous discovery, the case law in this district recognizes that a bill of particulars may not be required. *United States v. Brodie,* 326 F. Supp. 2d at 91-92, citing *United*

*States v. Butler,* 822 F.2d 1191, 1193 (D.C. Cir. 1987).

WHEREFORE, the government respectfully requests that this Court make a finding that a bill of particulars is not necessary for the defendants to understand the charges and prepare their defense and therefore deny the motions for bill of particulars made by both defendants.

Respectfully submitted this 9th day of September, 2011.

ARTHUR G. WYATT, Chief
Narcotic and Dangerous Drug Section

By:        */s/ Meredith A. Mills*
Meredith A. Mills (D.C. Bar # 457843)
Tritia L. Yuen
Trial Attorneys
Narcotic and Dangerous Drug Section
U.S. Department of Justice / Criminal Division
1400 New York Avenue, NW
Washington, DC 20005
Main Office: (202) 514-0917
Fax: (202) 514-0483
Meredith.Mills@usdoj.gov

23

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing GOVERNMENT'S OPPOSITION RESPONSE TO DEFENDANT'S MOTION FOR A BILL OF PARTICULARS was filed by ECF/CM on this 9th day of September 2011, and that a Notice of Electronic (NEF) filing will be served on the following:

Counsel for Defendant YAHYA ALI ZAITAR
Jenifer Wicks, Esquire
Law Offices of Jenifer Wicks
The Webster Building
503 D Street, NW, Suite 250A
Washington, DC 20001-2728
Telephone: (202) 393-3004 / Fax: (202) 478-0867
Email: jenifer.wicks@verizon.net

James L. Lyons, Esq.
Kellogg, Williams & Lyons
1350 Connecticut Avenue, N.W., Suite 600
Washington, D.C.  20036
Telephone: (202) 496-0722 / Fax: (202) 331-1257
Email: JamesLyons@verizon.net

Counsel for Defendant NEMR ALI ZHAYTER
Carmen D. Hernandez, Esq.
7166 Mink Hollow Road
Highland, MD 20777
Telephone: 202-628-0090 / Direct: 240-472-3391 / Fax: 202-628-2881
chernan7@aol.com

Respectfully submitted,

ARTHUR WYATT, Chief
Narcotic and Dangerous Drug Section

By:         /s/ Meredith A. Mills
            Meredith A. Mills (D.C. Bar # 457843)
            Tritia L. Yuen
            Trial Attorneys
            Narcotic and Dangerous Drug Section
            U.S. Department of Justice / Criminal Division
            1400 New York Avenue, NW
            Washington, DC 20005
            Main Office: (202) 514-0917
            Fax: (202) 514-0483
            Meredith.Mills@usdoj.gov