UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | CRIMINAL NO.: 1:08cr00214-RMC |
| NEMR ALI ZHAYTER, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DENY
CONSOLIDATION OF SEPARATE INDICTMENTS OR, IN THE ALTERNATIVE, TO
SEVER, AND REQUEST FOR AN EVIDENTIARY HEARING**

The United States of America, by and through its undersigned counsel, hereby responds

to defendant's Motion to Deny Consolidation of Separate Indictments or, in the Alternative, to

Sever and Request for an Evidentiary Hearing (Docket No. 69, filed 12/21/11).  Defendant

NEMR ALI ZHAYTER has moved to deny the consolidation of his Indictment for trial purposes

with that of another conspirator, Yahya Ali ZAITAR ("ZAITAR") (Criminal Case No.

1:08cr123), or in the alternative, to sever his case from ZAITAR's.  Defendant claims that the

consolidation of the cases:

(A)     is prohibited by the Rule of Specialty; therefore, the cases could not have been
        joined under Rules 8 and 13 of the Federal Rules of Criminal Procedure;

(B)     violates the defendant's Sixth Amendment Confrontation Clause rights and the
        Supreme Court's rulings in *Crawford v. Washington*, 541 U.S. 36 (2004), and
        *Bruton v. United States*, 391 U.S. 123 (1968); and

(C)     would result in prejudice to the defendant, thereby warranting severance under
        Rule 14 of the Federal Rules of Criminal Procedure.

The defendant also states that a evidentiary hearing is required to resolve his claims.

The government opposes the defendant's motion as untimely and the motion should be dismissed.  If the Court chooses to entertain the motion, the government submits that the defense arguments lack merit and respectfully requests that the Court deny defendant's motion in its entirety.  The government also submits that the Court does not need to conduct a hearing on this matter because additional testimony or a hearing on this issue will not aid the Court in its consideration of the motion.  D.D.C. Loc. R. 7(f) ("A party may in a motion or opposition request an oral hearing, but its allowance shall be within the discretion of the court.").  In support, thereof, the government states the following.

## I.   PROCEDURAL HISTORY

On April 25, 2008, a Grand Jury sitting in the United States District Court for the District of Columbia returned a then-sealed original one-count Indictment in Criminal Case No. 1:08cr123-RMC against YAHYA ALI ZAITAR (hereinafter "ZAITAR"), alleging that ZAITAR conspired with others to import heroin into the United States.  ZAITAR also previously was charged with MOHAMMED ALI AWALI on November 30, 2007, in Criminal Case No. 1:07cr329-RMC.  The 1:07cr329 Indictment alleged that ZAITAR and AWALI conspired with others to import cocaine into the United States, and that ZAITAR and AWALI knowingly distributed 500 grams or more of cocaine, knowing and intending that such cocaine would be unlawfully imported into the United States.  That Indictment was superseded on April 25, 2008, to allege an increase in the quantity of drugs the defendants conspired to import into the United States.

On July 17, 2008, a Grand Jury sitting in the United States District Court for the District of Columbia, returned an Indictment against NEMR ALI ZHAYTER in Criminal Case No.

1:08cr214.  ZHAYTER is charged with the same conspiracy as ZAITAR to import heroin into the United States.

This Court previously set July 25, 2011, as a deadline for filing of motions.  On August 1, 2011, the defendant moved to adopt ZAITAR's motions from Criminal Case No. 1:08cr123 (Docket No. 27).  The Court granted this motion on August 5, 2011, and directed the defendant to refile the motions that were Docket Nos. 34, 35, 36, 37, 38, 39, 40, 41, and 42 in Criminal Case No. 1:08cr123.  Although the defendant failed to refile the motions, the government filed its responses to these motions on September 9, 2011, in the defendant's case.  *See* Docket Nos. 42-51.  Subsequently, the defendant did refile the motions, which remain pending.  They are as follows:

> Docket No. 54 – Motion for Preliminary Determination of Existence of Conspiracy
> Docket No. 55 – Second Motion to Dismiss Case (on the basis of a single conspiracy)
> Docket No. 56 – Motion to Exclude Cooperating Witness Testimony and For Reliability Hearing
> Docket No. 57 – Motion to Sever
> Docket No. 58 – Motion for Bill of Particulars
> Docket No. 59 – Motion to Dismiss Based on Fed. R. Crim. P. 12(b)(3)
> Docket No. 60 – Motion to Suppress Statements
> Docket No. 61 – Motion to Suppress Evidence Seized Pursuant to Bucharest Tribunal
> Docket No. 62 – Motion to Adopt
> Docket No. 63 – Motion for Reliability Hearing (related to Docket No. 56)

## II.   ARGUMENT

## I.   The Defendant's Motion Should be Dismissed as Untimely.

Preliminarily, the government respectfully submits that the Court should dismiss the instant motion because it is untimely.  At the August 12, 2011 status conference in this matter, the Court ordered the defendant to file his motions to sever and suppress by August 22, 2011.  The Court set this new August 22, 2011 deadline because the defendant had missed the original

July 25, 2011 deadline for filing motions.  Nevertheless, the defendant failed to file any additional motions by August 22, 2011.

On October 7, 2011, because ZAITAR received new counsel, the Court set a new deadline for filing additional motions (or amending/withdrawing existing motions).  Although the defendant did not have a new attorney, the Court nevertheless extended the deadline for the defendant to file new motions to December 7, 2011, but limited the defendant to filing only *new* motions based on any new transcripts the government had provided to defense since the previous deadlines.  Upon granting the defendant's Amended Motion for Extension of Time to File Motions and Replies (Docket No. 68), the Court moved the defendant's deadline for filing new pretrial motions to December 21, 2011.

The instant motion, filed on December 21, 2011, does not raise new issues based on transcripts provided by the government to the defense since the previous deadline.  The defendant offers no explanation for why he could not have filed his motions previously.  Accordingly, it is untimely filed and the government submits that it should be dismissed in its entirety.

## II.      **The Defendant's Arguments Lack Merit.**

Even if the Court entertains this untimely-filed motion, the government submits that it still should be dismissed in its entirety because defendant's arguments lack merit. The government incorporates by reference for all purposes and arguments herein its initial response to the defendant's previously filed motion(s) to sever.  *See* Government's Response to Defendant's Motion to Sever, filed 9/9/11 (Doc. 44); *see also* Government's Opposition to Defendant's Motion to Sever, filed in Criminal Case No. 1:08cr123-RMC, on 9/9/11 (Doc. 60).

A.    **The Rule of Specialty is not a factor for consideration in the consolidation of defendant's case with ZAITAR's and joinder of the defendants for trial purposes is proper under Fed. R. Crim. P. 8 and 13.**

Defendant argues that he is not being prosecuted on the indictment for which he has been extradited because consolidation of his case with ZAITAR's under Rule 13 amounts to an amendment or superseding of the defendant's original indictment (by adding another defendant, ZAITAR), in violation of the Rule of Specialty.  The Rule of Specialty, an international principle of extradition, states in relevant part: "Under most international agreements, state laws, and state practice: (1) A person who has been extradited to another state will not, unless the requested state consents, (a) be tried by the requesting state for an offense other than one for which he was extradited." *See* Restatement (Third) of Foreign Relations Law of the United States § 477 (1987). Defendant cites no authority in support of his position.

Defendant's extradition and the Rule of Specialty are not factors for consideration in the legal analysis of whether the defendant's and ZAITAR's cases are properly consolidated under Federal Rules of Criminal Procedure 8 and 13.  Rule 13's permissibility of consolidating separately-indicted cases for trial requires only a review of whether the defendants could have been joined in a single indictment which, in turn, requires a determination under Rule 8(b) of whether the defendants "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  Fed. R. Crim. P. 8(b) and 13.  The ability to join defendants and indictments under Rule 8(b) is viewed in terms of the government's theory at the time of indictment.  *See, e.g., United States v. Lane*, 584 F.2d 60, 63 (5th Cir. 1978) (Rule 8(b) joinder assessed on "the government's theory of conspiracy at the time of indictment"); *see also United States v. Edgar*, 82 F.3d 499, 503 (1st Cir. 1996) (Rule 8(a)

joinder "analyzed in terms of how the government saw its case at the time of indictment").

Neither Rule 8 nor 13 are expressly or even impliedly limited in their application to defendants

"in non-extradition cases" only.

At the time of ZAITAR's indictment in the instant matter, which preceded defendant's

indictment, the government submits that its evidence supported that ZAITAR and the defendant

had participated in the same act or transaction, or in the same series of acts or transactions,

constituting conspiracy to import heroin into the United States; this satisfies the joinder test.

Support for this belief can be found in the government's various proffers at status conferences

and in its pleadings, motions, and responses thereto.[1]  Those proffers alleged that while ZAITAR

was in Romania in early April 2008 to finalize a heroin deal with a U.S. undercover federal agent

("UC"), he made numerous telephone calls to his narcotics associates in Lebanon, South America

or elsewhere in an attempt to obtain a test sample of heroin for delivery via a courier to ZAITAR

in Bucharest. The test sample was to be the precursor to later multi-kilogram heroin deals with

the undercover agent.  ZAITAR's calls to his associates were intercepted pursuant to a lawful

Romanian wiretap.  Many of ZAITAR's calls were with the defendant and evidenced, among

other acts, that the defendant agreed with ZAITAR to consult with the heroin source of supply

---

[1] The government disagrees that it "cannot go outside the four corners of the indictment to make the necessary showing by Rule 8(b)." *see* Def. Mot. at 6.  The D.C. Circuit has repeatedly stated that in a Rule 8 analysis, the court can look to the indictment and pretrial evidence offered by the government.  *See, e.g., United States v. Gooch*, – F.3d –, 2012 WL 29191, at *5 (D.C. Cir. 2012); *United States v. Carson*, 455 F.3d 336, 373 (D.C. Cir. 2006); *United States v. Spriggs*, 102 F.3d 1245, 1255 (D.C. Cir. 1996); *United States v. Wilson*, 26 F.3d 142, 153 (D.C. Cir. 1994); *United States v. Halliman*, 923 F.2d 873, 883 (D.C. Cir. 1991); *see also United States v. Suggs*, 531 F. Supp. 2d 13, 26 (D.D.C. 2008). In addition, "'[t]he government need only allege the facts necessary to sustain joinder, not prove them.'" *Gooch*, – F.3d –, 2012 WL 29191, at *5 (quoting *United States v. Carson*, 455 F.3d 336, 372 n.32 (D.C. Cir. 2006)).

and other conspirators about the price per kilogram and manufacture of the heroin sample and to arrange for the drug mules and couriers ("carriers") to transport and deliver the heroin sample to ZAITAR in Romania; the defendant was aware that the heroin was intended for the United States.  Such acts were identified, for instance, in the following calls which represent just a sampling of those between the defendant and ZAITAR that the government possessed at the time of both defendants' indictments.[2]

S39  106007251088 / Call # 173827001, conducted April 9, 2008: The defendant agrees to coordinate his (ZHAYTER's) Portugal-based drug mules' travel to Jordan where the mules will meet with a conspirator, Adham, who will give them the test sample of heroin for delivery to ZAITAR in Romania.  ZAITAR also tells the defendant that he (ZAITAR) will receive one million Euros from the buyer (the undercover agent) for the future heroin deals.

S60  106007252068 / Call # 203920001, conducted April 9, 2008: The defendant confirms he is coordinating the prices for the heroin and was quoted 25,000 Euros per kilogram. The defendant acknowledges that they will be purchasing larger quantities of heroin in the future and he inquires how much it will cost him to allow ZAITAR to use his mules. ZAITAR explains the drug mules' travel and fees will be paid by the buyer (the UC) and the current fee is $8,000. ZAITAR tells the defendant he can have the profit from the deal, but the defendant states that he would rather share in the profits together with ZAITAR.  ZAITAR explains the defendant will receive $48,000 USD for the multi-kilogram sample once the heroin is delivered and ZAITAR will be paid for the sample and future bulk quantity of heroin together.  The two discuss sending the mules separately and the defendant agrees to convince them to smuggle the drugs.

S105  106007258275 / Call # 231051001, conducted April 10, 2008:  ZAITAR tells the defendant he has been shown 300 to 400,000 Euros by the UC which is the money for the bulk quantity of heroin. ZAITAR confirms for the defendant that the buyer is American and wants high quality white heroin.

S281  106007267893 / Call #185216001, conducted April 13, 2008:  ZAITAR explains that the money for the heroin transaction can be sent from the United States to anywhere and the defendant offers to have the money sent to his account.  Although ZAITAR cautions the defendant about receiving money in his account because it may be detected by banking or law enforcement authorities, the defendant is unconcerned and claims he will not be detected.

---

[2] The government's summaries are taken from draft transcripts which have been disclosed to the defense.  The government will make the draft transcripts available to the Court, if and as requested.

<u>S299  106007268077 / Call# 195149001, conducted April 13, 2008</u>:  ZAITAR once again tells the defendant that he can take whatever profits he wants from the deals. ZAITAR also explains the buyer is from America and has been waiting on the heroin for a week. They also discuss obtaining drug mules from Nouh, their brother, and the method of the transport's execution, to include that the mule can depart Syria for Romania and ZAITAR will coordinate the mule's removal directly from inside the arriving plane to avoid any detection.  Defendant tells ZAITAR to tell the buyer that this deal has to take place since ZHAYTER's and ZAITAR's future drug deals rely on the successful test sample transaction taking place.

Notably, defendant does not dispute that he received calls from ZAITAR during the time ZAITAR was in Romania.  ZAITAR was arrested in Bucharest on or about April 14, 2008, and shortly thereafter was indicted in the United States on the heroin importation conspiracy.

Based on the wiretap calls, the government's evidence at the time of indictment supported that ZAITAR and the defendant had engaged in a conspiracy to import heroin into the United States, *i.e.*, that they participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. Therefore, the defendants could have been indicted together under Rule 8(b) and joinder is proper under Rule 13.  The analysis does not require the Court to entertain whether other impediments to joinder existed at the time or to ascertain or question the government's reasons for not jointly indicting the defendants in the first instance.  To magnify further that defendant's reliance on the Rule of Specialty is a "red herring," nowhere in Rules 8 and 13 does it state or even intimate that other factors, such as the defendants' extradition status or international principles of extradition, are relevant to the joinder evaluation; instead, the analysis is limited to the nature of the acts or transactions known to the government. And, as defendant correctly notes, there appears to be no case law interpreting the application of Rules 8 and 13 to cases involving extradited defendants where the defendant's extradition or the Rule of Specialty played *any* factor in the court's analysis of the

appropriateness of joinder or severance, much less that joinder of defendants from separate cases amounts to an amendment or superseding of the indictments of the defendants joined.[3]  As such, counsel's citation to *United States v. Sensi*, 879 F.2d 888 (D.C. Cir. 1989), is misplaced for it does not involve joinder or severance.  Moreover, in this district, joinder is preferred in conspiracy cases because "the common thread is the conspiracy itself"; thus, joinder is "presumptively proper where the alleged acts are part of the same series of facts or transactions." *Simmons*, 431 F. Supp. 2d at 65, 66 (citing *United States v. Spriggs*, 102 F.3d 1245, 1255 (D.C. Cir. 1996)); *see also United States v. Suggs*, 531 F. Supp. 2d 13, 25 (D.D.C. 2008); *United States v. Eiland*, 406 F. Supp. 2d 46, 50 (D.D.C. 2005).

The government submits it has alleged sufficient facts to demonstrate that consolidation and joinder of the cases under Rule 13 and Rule 8(b), respectively, is proper and that the Court need not hold an evidentiary hearing to require the government to present further evidence in support of its arguments.

---

[3] Assuming, *arguendo*, that defendant even has standing to raise an argument based on a purported violation of the Rule of Specialty, an issue not yet decided by the D.C. Circuit, *see United States v. Sensi*, 879 F.2d 888, 892 n.1 (D.C. Cir. 1989) (acknowledging conflict among the circuits on the issue of defendant standing, but declining to take a position because defendant's arguments lacked merit), there is no violation of the Rule of Specialty here: defendant is being prosecuted for the exact offense for which his extradition was granted.  *See* Extradition Treaty Between the Government of the United States of America and the Government of the Republic of Paraguay, U.S.-Para., Nov. 9, 1998, S. TREATY DOC. NO. 106-4 (1999) at Article XV.  *See e.g., United States v. Saccoccia*, 58 F.3d 754, 768 (1st Cir. 1995) (finding no violation of the Rule of Specialty "where the requesting nation prosecutes the returned fugitive for the exact crimes on which the surrendering nation granted extradition").

**B.      The Sixth Amendment's Confrontation Clause and the Supreme Court's Opinions in *Crawford* and *Bruton* Also Do Not Bar Consolidation of Defendant's Case With ZAITAR's and Joinder of the Defendants for Trial Purposes is Proper Under Fed. R. Crim. P. 8 and 13.**

Defendant also argues that the introduction, at a consolidated trial, of statements implicating the defendant which were made by ZAITAR, a non-testifying co-defendant, will violate the defendant's Sixth Amendment right to confront witnesses against him and are inadmissible under the Supreme Court's opinions in *Crawford v. Washington*, 541 U.S. 36 (2004), and *Bruton v. United States*, 391 U.S. 123 (1968). At issue are the possible admission of statements obtained through intercepted conversations with ZAITAR (some of which may pertain to cocaine trafficking) and ZAITAR's post-arrest statements.

**i.      ZAITAR's intercepted communications are nontestimonial statements which are not subject to the Confrontation Clause or *Crawford v. Washington*, 541 U.S. 36 (2004).**

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI.  In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that the Confrontation Clause bars the out-of-court statement of a declarant who is "unavailable" at trial if the hearsay evidence is "testimonial" and the defendant had no opportunity before trial to cross-examine the declarant.  Thus, the Confrontation Clause and *Crawford* and its progeny do not apply to non-hearsay statements, *Crawford*, 541 U.S. at 53-54, nontestimonial statements, *Whorton v. Bockting*, 549 U.S. 406, 420 (2007), and *Davis v. Washington*, 547 U.S. 813, 824-25 (2006), or if the declarant testifies at trial, *Crawford*, 541 U.S. at 59 n.9.  Testimonial statements are those made by "witnesses against the accused" "bear[ing]

10

testimony." *Crawford*, 541 U.S. at 51.  Testimony is further identified as "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* (internal citation omitted).  Classes of testimonial statements include, among others, "custodial examinations," "pretrial statements that declarants would reasonably expect to be used prosecutorially," "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," or "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 51-52 (internal citations omitted).  Described differently, testimonial statements include those about "'what happened,'" *e.g.*, "potentially criminal past events," made "some time after the events described were over," and as "an obvious substitute for live testimony, because they d[id] precisely *what a witness does* on direct examination." *Davis v. Washington*, 547 U.S. 813, 829, 830 (2006) (explaining that a domestic abuse victim's post-assault statements were testimonial).  Conversely, nontestimonial statements include those made by persons "speaking about events *as they were actually happening*, rather than 'describ[ing] past events,'" *i.e.*, they are not made as a witness for purposes of testifying where "[w]hat [the declarant] said was not 'a weaker substitute for live testimony' at trial." *Id.* at 827 (finding 911 caller's out-of-court statements were nontestimonial) (quoting *Lilly v. Virginia*, 527 U.S. 116, 137 (1999)); *see also Michigan v. Bryant*, 131 S. Ct. 1143, 1165 (2011) (mortally wounded victim's statements made soon after being shot were nontestimonial).

To the extent ZAITAR's intercepted conversations[4] relate to the heroin trafficking

---

[4] The application of *Crawford* and *Bruton* to statements made by ZAITAR at post-arrest are addressed separately below.

conspiracy, neither the Confrontation Clause nor *Crawford* extends to co-conspirator hearsay. *See Crawford*, 541 U.S. at 56 ("[S]tatements in furtherance of a conspiracy" are "by their nature ... not testimonial"); *see also Giles v. California*, 554 U.S. 353, 374 n.6 (2008) (co-conspirator hearsay does not violate Confrontation Clause because "it [is] not (as an incriminating statement in furtherance of the conspiracy would probably never be) testimonial"). The Romanian wiretap calls fall into this category.

ZAITAR's intercepted statements relating to his cocaine trafficking activities are also not testimonial because, apart from the fact that ZAITAR's cocaine trafficking related statements may not even expressly implicate the defendant, it can hardly be said that at the time ZAITAR made them that he did so for future prosecutorial use or to establish or prove some fact against his brother at trial; in other words, he did not "'intend to bear testimony against the accused,'" the defendant. *United States v. Johnson*, 581 F.3d 320, 325 (6th Cir. 2009) (quoting *United States v. Cromer,* 389 F.3d 662, 675 (6th Cir. 2004)); *see also United States v. Honken*, 541 F.3d 1146, 1160 (8th Cir. 2008) (stating that while recipient of maps drawn by co-defendant was acting as a government agent at the time and "likely anticipated [the co-defendant's] maps would be used at a later trial," "the proper focus is on [the co-defendant's] expectations as the declarant"). This is all the more persuasive a conclusion since the statements were recorded by an informant or an undercover agent, unbeknownst to ZAITAR at the time. *See, e.g., United States v. Smalls*, 605 F.3d 765, 778 (10th Cir. 2010) (finding as "unquestionably nontestimonial" co-implicating statement made by co-defendant to confidential informant where declarant/co-defendant knew informant only as an inmate); *Johnson*, 581 F.3d at 325 (finding as testimonial co-implicating statement by defendant's accomplice to fellow inmate cooperating with FBI

"[b]ecause [the declarant] did not know that his statements were being recorded and because it is clear that he did not anticipate them being used in a criminal proceeding against [the defendant].”); *United States v. Watson,* 525 F.3d 583, 589 (7th Cir. 2008) (same); *United States v. Mooneyham,* 473 F.3d 280, 286-87 (6th Cir. 2007) (finding that co-defendant's out-of-court statements to an undercover officer whose status was unknown to the declarant were nontestimonial and statements were made in furtherance of conspiracy); *United States v. Johnson*, 440 F.3d 832, 843 (6th Cir. 2006) (holding that an unwitting declarant's secretly recorded statements to an informant were nontestimonial because "a reasonable person in [the declarant's] position would not have anticipated that his statements would be used in a criminal investigation and prosecution of [co-defendant].”); *United States v. Hendricks,* 395 F.3d 173, 182 n.9, 183-84 (3d Cir. 2005) (same); *United States v. Saget,* 377 F.3d 223, 229 (2d Cir. 2004) (same). *See also Davis*, 547 U.S. at 825 (noting, in *dicta,* that statements from one prisoner to another are "clearly nontestimonial").

Therefore, there is no Confrontation Clause or *Crawford* bar to the prosecution's admission of ZAITAR's intercepted conversations, be they about the heroin or cocaine trafficking activities engaged in by ZAITAR.  The admission of any of ZAITAR's nontestimonial hearsay statements are only governed by the Federal Rules of Evidence at the time of trial.

  **ii.**  **ZAITAR's post-arrest statements are not subject to *Bruton v. United States*, 391 U.S. 123 (1968). In the alternative, redaction and limiting jury instructions satisfy *Bruton* and *Crawford*.**

*Bruton v. United States*, 391 U.S. 123, 136-37 (1968), precludes, pursuant to the Sixth Amendment's Confrontation Clause, the admission of a non-testifying co-defendant's co-implicating confession at a joint trial.  *Bruton* focused on "the powerfully incriminating

extrajudicial statements of a codefendant" where the co-defendant specifically named the

defendant. *Bruton*, 391 U.S. at 124, 135. The Supreme Court has ruled since that with "facially

incriminating confessions, *Bruton* can be complied with by redaction" and "[t]he Confrontation

Clause is not violated by the admission of a nontestifying codefendant's confession with a proper

limiting instruction when, . . . the confession is redacted to eliminate not only the defendant's

name, but any reference to [his or] her existence." *Richardson v. Marsh*, 481 U.S. 200, 211

(1987). In other words, inferentially incriminating statements, or those "that [do] not refer

directly to the defendant himself and which [become] incriminating 'only when linked with

evidence introduced later at trial'" are outside the scope of *Bruton's* rule. *Gray v. Maryland*, 523

U.S. 185, 196 (1998); *see also Richardson*, 481 U.S. at 208. Thus, to comply with the

Confrontation Clause, a confession must be redacted in such a way as to limit the ability of the

jury to determine that the confession specifically identifies the defendant. *See Gray*, 523 U.S. at

193. If it can, then *Bruton* is not violated. Redactions that "obviously refer directly to someone,

often obviously the defendant, and which involve inferences that a jury ordinarily could make

*immediately*, even were the confession the very first item introduced at trial," are redactions

prohibited by *Bruton*. *Id.* (emphasis added). "[C]onsidered as a class, redactions that replace a

proper name with an obvious blank, the word 'delete,' a symbol, or similarly notify the jury that a

name has been deleted are similar enough to *Bruton*'s unredacted confessions as to warrant the

same legal results." *Id.* at 195. *See also United States v. Clarke*, 767 F. Supp. 2d 12, 30-31

(D.D.C. 2011) (succinctly synthesizing the various Supreme Court rulings). However,

"*[a]dditional* redaction of a confession that uses a blank space, the word 'delete,' or a symbol,

however, normally is possible." *Gray*, 523 U.S. at 196 (providing example of an additional

14

permissible redaction) (emphasis added).  *See also United States v. Jass*, 569 F.3d 47, 64 (2d Cir.

2009) ("Where a jury must look to other trial evidence to link a defendant to a redacted

confession, the Confrontation Clause 'calculus changes' sufficiently to remove the statement

from *Bruton's* protective rule.").

ZAITAR's post-arrest statements made to DEA agents on or about April 14, 2008, are

those requiring review under *Bruton*.[5]  Defendant does not identify which part of ZAITAR's

confession inculpates him, but a review of the draft transcripts indicates only a few specific or

possible references to the defendant by ZAITAR, and none directly "name[] him as a participant

in the crime," so as to implicate *Bruton*.  *Richardson,* 481 U.S. at 201.  For instance, ZAITAR

confirms he has a brother named "Nemr" and "Shadi" (the defendant).  He also answers "Yes,

sir" when told by one of the agents that "You made many calls. Oh yes, many calls. Looking for

mules, fixing prices – calls to your brothers."  He admits that "I called my brother," when asked

by the agents, "Which scam, you were calling people?" but refused to give his brother's name to

the agents nor did he give any other information in that part of the conversation, for example,

where that brother was located, to indicate which brother he was referring to (the government's

evidence supports that, in addition to the defendant, at least two other brothers based in the

Middle East were involved in the heroin conspiracy with ZAITAR).  Twice, ZAITAR denied that

a female mule named Adriana who had problems passing ingested drugs was "Shadi's mule."

Clearly, these statements do not "expressly implicate" the defendant in the offense charged (*see*

*Bruton*), and in one instance, ZAITAR attempts to exculpate him.  At best, ZAITAR's

---

[5] The confession transcripts relied on herein were attached to the Government's Response
to Defendant's Motion to Suppress Statement Evidence, filed 9/9/11 at Exhibits 1-4 (Docs. 48
and 48-1 through 48-4).

affirmative answers ("Yes, sir") and acknowledgment that he called his brother or brothers ("I called my brother") are only potentially "inferentially" incriminating because the government certainly intends to present evidence at trial that one of the individuals ZAITAR called to facilitate the conspiracy was his brother, the defendant.  But, even after the introduction of this evidence, it would not be immediately, obviously, or directly inferentially incriminating as to the defendant so as to bring the statements within prohibitions under *Gray* because the jury could infer ZAITAR was just as equally referring to two other brothers in Lebanon with whom he also conspired to import heroin, at least one of which he called according to the government's review of the Romanian wiretap calls.  Therefore, the government submits that there would not be any need to redact the "brother(s)" references or that failure to do so would be in violation of *Bruton, Richardson*, or *Gray*.

Even if this Court disagrees with the government as to these statements' nature, references to the defendant could be redacted in such a way as to satisfy *Bruton, Richardson,* and *Gray*.  This includes redacting through the use of indefinite pronouns and other general terms, as long as the redacted statements' "when viewed together with other evidence, . . . does not create an *inevitable association* with the defendant, and a proper limiting instruction is given." *United States v. Washington*, 952 F.2d 1402, 1406-07 (D.C. Cir. 1991)*; see also Gray*, 523 U.S. at 196 (providing example of a permissible redaction); *United States v. Vasilakos*, 508 F.3d 401, 407-08 (6th Cir. 2007) (government's replacement of "person"or "another person" for the defendant's name in co-defendant's implicating deposition satisfied Confrontation Clause); *United States v. Logan*, 210 F.3d 820, 821-22 (8th Cir. 2000) (police properly permitted to testify that co-defendant said he plotted the crime with "another individual" because "[t]here [was] no

inconsistency between a statement that includes a refusal to name an accomplice and a statement that 'another individual' committed a crime."); *United States v. Verduzco-Martinez*, 186 F.3d 1208, 1214 (10th Cir. 1999) (use of neutral pronoun "another person" satisfies *Gray* "inasmuch as [the defendant] is not mentioned by name, alias, or description."); *United States v. Akinkoye,* 185 F.3d 192, 198 (4th Cir. 1999) (prosecutor properly retyped confessions to replace defendant's name with "another person" or "another's individual.").  In addition, prior to trial, the Court could review the proposed redactions "to ensure that the redacted confessions would not be directly accusatory, or contain obvious pointers to any specific co-defendant, or invite direct inferences of any particular co-defendant's involvement in the offense." *Clarke*, 767 F. Supp. 2d at 31 (describing the various instructions the Court gave the government before it could introduce out-of-court statements with redactions and substitutions).

If ZAITAR's post-arrest statements are considered "testimonial" in that they implicate the defendant, then once redacted in line with *Bruton*, *Richardson*, and *Gray*, they would not be statements offered against the defendant, but only as to ZAITAR himself. *See, e.g., United States v. Lung Fong Chen*, 393 F.3d 139, 150 (2d Cir. 2004) ("The same attenuation of [defendant's] statements from [his co-defendant's] guilt that prevents *Bruton* error also serves to prevent *Crawford* error."); *Clarke*, 767 F. Supp. 2d at 32 ("Where the out-of-court statements are redacted as required by *Bruton, Richardson,* and *Gray,* no *Crawford* problem arises because the statements do not constitute 'testimonial' statements against the non-declarant defendants"). Therefore, no Confrontation Clause or *Crawford* bar would arise as to the admission of ZAITAR's post-arrest statements in a joint trial.

As a final point, should ZAITAR testify, either at the suppression motion hearings or at

trial, *Bruton* and *Crawford* do not apply because the defendant will then have the opportunity to cross-examine his brother.  *Nelson v. O'Neil*, 402 U.S. 622, 627-31 (1971). This exception may also apply where the co-defendant only testifies at the pre-trial hearing, and the defendant has an adequate opportunity to cross-examine at that time. *California v. Green*, 399 U.S. 149, 153-54 (1970).

      **C.**      **Defendant Fails to Meet His Burden That Severance Is Required Under Rule 14 of the Federal Rules of Criminal Procedure.**

Rule 14(a) of the Federal Rules of Criminal Procedure allows severance of defendants, or any other relief that justice requires, if consolidation for trial prejudices either party.  Fed. R. Crim. P. 14(a).  However, "when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 *only if* there is a *serious risk* that a joint trial would compromise a *specific* trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  *Zafiro v. United States*, 506 U.S. 534, 539 (1993) (emphasis added); *see also United States v. Celis,* 608 F.3d 818, 844 (D.C. Cir. 2010). "[E]ven if prejudice is shown," the district court may tailor the relief as appropriate – in other words, severance is not required.  "When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but, . . . less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice."  *Zafiro*, 506 U.S. at 534, 538-39 (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)).

Defendant does not offer any new or particularized arguments of prejudice which cannot be overcome through limiting instructions to the jury or redactions as may be contemplated pursuant to the Confrontation Clause issues discussed above.  He has also failed to demonstrate

that admission of the post-arrest statements would engender prejudice through compromising a *specific trial right*, *e.g.*, through violation of the Confrontation Clause, *Crawford,* or *Bruton*. Therefore, defendant has made an insufficient showing of prejudice to warrant severance.  Nor does ZHAYTER offer any new or particularized arguments of prejudice for his related but conclusory allegation that the admission of ZAITAR's "other crimes" evidence or statements will unfairly prejudice him (thereby warranting severance).  In any event, the prejudicial nature of any Rule 404(b) evidence goes to the admissibility of that evidence in the first instance.  Whether the probative value of the other crimes evidence is "substantially outweighed" by the danger of unfair prejudice or other considerations is an evaluation which will be properly addressed by the Court pretrial under Rule 403 or at the time of the government's offering of the "other crimes" evidence.

Following the admission of ZAITAR's statements, including any Rule 404(b) evidence, the Court can instruct the jury on how to compartmentalize and weigh the evidence, and on its responsibility to independently determine the guilt or innocence of each defendant on the basis of that evidence.  This is a well-established alternative to severance in this district.  For instance, in *United States v. Celis,* 608 F.3d 818, 844 (D.C. Cir. 2010), an international drug importation conspiracy case, the Circuit rejected a defendant's arguments that he was prejudiced at a joint trial by evidence admitted by the government that showed a co-defendant was a member of Colombia's Revolutionary Armed Forces (FARC) and the FARC committed atrocities.  The Circuit concluded that, "it does not follow that the jury was incapable of fairly assessing [the defendant's] guilt" despite the introduction of the FARC evidence because "the government offered ample evidence of [the defendant's] personal involvement in the conspiracy." *Celis*, 608

19

F.3d at 845.  "Moreover, the district court instructed the jury to base its evaluation of each defendant's guilt on his or her own conduct – not that of the FARC."  *Id.*  The Circuit concluded that "[b]ecause the jury is 'presumed to follow [its] instructions,' 'these instructions cured any possible risk of prejudice.'"  *Id.* (quoting *Zafiro,* 506 U.S. at 540, and *United States v. Carson*, 455 F.3d 336, 375 (D.C. Cir. 2006)).  *See also, e.g.*, Halliman, 923 F.2d at 884 (drug possession evidence admitted against a co-defendant was not unfairly prejudicial; government introduced "'independent and substantial evidence'" about defendant's intent to distribute drugs, jury confusion risk was minimal, and defense "resisted any attempts by the government to lump together the two defendants and their offenses" at trial) (internal citations omitted); *Clarke*, 767 F. Supp. 2d at 26-27 (rejecting defense's "spillover" arguments regarding "other crimes" evidence admitted about three other hostage takings allegedly committed by the defendants months before and after the abduction in the case before the Court; jury received instructions to compartmentalize evidence).

Moreover, the introduction of different quanta of evidence showing the different roles of the defendants in the conspiracy is not, without more, a sufficient basis for severance.  *Clarke*, 767 F. Supp. 2d at 25-26; *United States v. Edelin*, 118 F. Supp. 2d 36, 43 (D.D.C. 2000). Nothing the defendant alleges suggests that the jury will not be able to "'reasonably compartmentalize the evidence introduced against each individual defendant'" or that any disparity in evidence introduced against the defendants would be more than seen in a typical conspiracy case or that it is an otherwise "extreme case" warranting severance. *Clarke*, 767 F. Supp. 2d at 26 (quoting *Celis,* 608 F.3d at 844, and *United States v. Gray*, 173 F. Supp. 2d 1, 11 (D.D.C. 2001)). Therefore, severance is not required under Rule 14.

### III.   CONCLUSION

For the foregoing reasons, the government submits that no hearing is necessary, and the

Court should deny defendant's motion to deny consolidation of the separate indictments or, in the

alternative, to sever the defendant from ZAITAR's case.  The Court should also deny defendant's

request for an evidentiary hearing on the matter.

Respectfully submitted this 24th day of January 2012.

> ARTHUR G. WYATT, Chief
> Narcotic and Dangerous Drug Section
> Criminal Division
> U.S. Department of Justice

> By:        /s/ Meredith A. Mills
> Meredith A. Mills (D.C. Bar # 457843)
> Trial Attorney
> Narcotic and Dangerous Drug Section
> Criminal Division / U.S. Department of Justice
> 1400 New York Avenue, NW
> Washington, DC 20005
> Main Office: (202) 514-0917
> Fax: (202) 514-0483
> Meredith.Mills@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 24th day of January 2012, I filed the foregoing GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DENY CONSOLIDATION OF SEPARATE INDICTMENTS OR, IN THE ALTERNATIVE, TO SEVER AND REQUEST FOR AN EVIDENTIARY HEARING with the Clerk of the Court via ECF / CM.  A copy will be served on the following counsel via the Notice of Electronic Filing (NEF) system:

<u>Counsel for Defendant NEMR ALI ZHAYTER</u>
Carmen D. Hernandez, Esq.
7166 Mink Hollow Road
Highland, MD 20777
Tel: 202-628-0090 / Direct: 240-472-3391 / Fax: 202-628-2881
chernan7@aol.com

<u>Counsel for Defendant YAHYA ALI ZAITAR</u> (related / consolidated case)
Barry Coburn, Esq.
Coburn & Greenbaum PLLC
1710 Rhode Island Avenue, NW, Second Floor
Washington, DC  20036
Main: 202-657-4490 / Fax:  866-561-9712
barry@coburngreenbaum.com

Respectfully submitted,

ARTHUR G. WYATT, Chief
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice

By:            */s/  Meredith A. Mills*
Meredith A. Mills (D.C. Bar # 457843)
Trial Attorney
Narcotic and Dangerous Drug Section
Criminal Division / U.S. Department of Justice
1400 New York Avenue, NW
Washington, DC 20005
Main Office: (202) 514-0917
Fax: (202) 514-0483
Meredith.Mills@usdoj.gov