UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | CRIMINAL NO.: 1:08cr00214-RMC |
| NEMR ALI ZHAYTER, | ) | |
| A/K/A SHADI, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S NOTICE OF SUPPLEMENTAL BRIEF IN RESPONSE TO
COURT'S MINUTE ORDER DATED MARCH 5, 2012**

The United States, by and through the undersigned, submits the following supplemental

brief on whether 21 U.S.C. § 952 addresses conduct outside the United States, pursuant to this

Honorable Court's oral Order dated March 2, 2012.  The Court raised the issue of the

extraterritorial reach of § 952 during the parties' hearing on defendant's motion to dismiss under

Fed. R. Crim. P. 12(b)(3).  The Court requested a supplemental brief listing or summarizing cases,

rather than providing additional argument on the issue. The government submits that § 952

criminalizes conduct engaged in outside the United States, as does a 21 U.S.C. § 963 conspiracy

charge predicated on a § 952 offense, as supported by the cases discussed herein.

**Factual Background**

The defendant is charged in a one-count Indictment returned in this district on April 25,

2008 (1:08cr123), with conspiring, from in or about May 2007 to April 25, 2008, in Paraguay,

Brazil, Romania, and elsewhere, to (1) knowingly and intentionally import 1 kilogram or more of

heroin into the United States from the Middle East, in violation of 21 U.S.C. §§ 952 and 960, and

(2) knowingly and intentionally distribute 1 kilogram or more of heroin, intending and knowing

that such substance would be unlawfully imported into the United States, in violation of 21 U.S.C.

§§ 959(a) and 960, all in violation of 21 U.S.C. §§ 960 and 963, and 18 U.S.C. § 2.  ZAITAR's

conspirators include, among others, his brother NEMR ALI ZHAYTER, a/k/a "Shadi," who was

separately indicted in this district in the same heroin importation conspiracy on July 17, 2008

(Criminal Case No. 1:08cr214).  ZAITAR's and ZHAYTER's cases are currently joined for trial

set for May 14, 2012, and this supplemental brief is being filed by the government in both cases

with the only difference being a change in the caption.

### Summary of Cases

Section 952(a) states, in relevant part:

> It shall be unlawful to import into the customs territory of the United States from
> any place outside thereof (but within the United States), or to import into the
> United States *from any place outside thereof*, any controlled substance in schedule
> I or II of subchapter I of this chapter.

21 U.S.C. § 952(a) (emphasis added).  There are limited exceptions to this prohibition not

relevant to the discussion herein.  As is clear from the summary of cases provided below, the

courts have historically addressed the extraterritorial application of § 952(a) in the context of

cases involving a charge of conspiracy to import a controlled substance, in violation of 21 U.S.C.

§§  952(a) and 963.[1]

In *United States v. May May*, 470 F. Supp. 384 (S.D.Tex. 1979), the defendants were

charged with, among other offenses, conspiracy to import marijuana into the United States under

21 U.S.C. §§ 963 and 952 after being found on the high seas on a vessel carrying a multi-ton

cargo of the drug.  The defendants claimed the court lacked jurisdiction on the basis that they had

"never entered into or had any contact with the United States or its territorial waters, and . . . all of

---

[1] Neither ZAITAR or ZHAYTER are charged with a substantive § 952(a) offense
although the conspiracy charge is predicated, in part, on a § 952(a) object.

the events involved in the case at bar took place in international waters and had no actual effect within the United States." *Id.* at 394.  The district judge denied the defendants' motion to dismiss for lack of jurisdiction finding that, "it has been established that the concept of extraterritorial application is implicitly contained within the [§ 963 statute]." *Id.* at 395 (citing *United States v. Postal*, 589 F.2d 862, 885 (5th Cir. 1979)).  The Court relied on the Fifth Circuit's then recent holding in *United States v. Williams*, 589 F.2d 210 (5th Cir. 1979), which "expressly held that 'proof of an overt act within the judicial district is not a prerequisite for district court jurisdiction' in cases involving 21 U.S.C. [§] 963." *Id.*  The district judge opined:

> Based upon the holdings of Williams and its immediate predecessors, it seems clear to this Court that the fact that all of the events in a particular conspiracy may have occurred outside the territorial limits of the United States is irrelevant to the question of a court's jurisdiction; if the Government can demonstrate that the extraterritorial acts of Defendants charged with conspiracy to import a controlled substance . . . were intended to have an impact within the United States, then those Defendants are subject to the jurisdiction of the federal courts. Therefore, in cases involving charges such as those that went to the jury in the instant case, the Government does not have to prove any overt act within the United States; under 21 U.S.C. . . . [§] 963, intended impact within this country is sufficient for jurisdictional purposes.

*Id.*  The court denied the motion to dismiss after determining that the government "successfully demonstrated that the intended impact of the acts of those aboard the [vessel] was within the United States." *Id.* at 396.

Similar rulings applying §§ 952 and 963 extraterritorially in "boat cases" followed from the Fifth Circuit.  For instance, in *United States v. Baker*, the Circuit stated, "In terms of importation, Congress clearly intended that [§§] 952 and 963, for example, 'apply to persons who commit acts or a series of acts that at least commenced outside the territorial limits of the United States.'" *United States v. Baker*, 609 F.2d 134, 137-38 (5th Cir. 1980) (quoting *United States v.*

*Cadena*, 585 F.2d 1252, 1259 (5th Cir. 1978)).  However, in *Baker*, the Circuit left open the

question of "whether jurisdiction may be maintained over a [§] 963 conspiracy, without proof that

any acts whatsoever took place within United States territory, or whether mere proof of intended

territorial effects is enough." *Id.* at 139 (citations omitted).  In *United States v. Perez-Herrera*,

610 F.2d 289 (5th Cir. 1980), the Fifth Circuit took on that issue.  The defendants were U.S.

citizens convicted of attempting to import marijuana into the United States in violation of §§ 963

and 952(a) after being found aboard a drug-laden American-registered ship 70 miles off the U.S.

coast.  In addressing the extraterritorial scope of the statute when the acts did not occur in the

United States, the Circuit stated, "[W]e determine that Congress intended that the prohibition of

attempts to import drugs should apply to attempts made wholly outside of our borders." *Id.* at

291.  The Court noted that although Congress had not addressed the precise issue before it, "the

legislative history of the Act [showed] an acute awareness of the problems posed by international

drug trafficking and an intention to do whatever was necessary to end it." *Id.* at 291-92.  The

Court then reasoned that:

> Limiting the application of section 963 to attempts committed at least partially in
> the United States would not eliminate all prosecutions, but, by setting up a
> free-zone just beyond our territorial waters where smugglers could safely await
> opportunities to move drugs to the mainland, such a construction would
> substantially impair enforcement activities. We conclude that the realities of drug
> smuggling are such that Congress must have intended section 963 to apply in the
> context of this case.

*Id.* at 292 (citations omitted). *See also United States v. Freeman*, 660 F.2d 1030, 1034 (5th Cir.

1981) (affirming convictions for conspiracy to import marijuana after finding defendants on board

a vessel carrying 41,000 pounds of marijuana although there was no evidence the agreement to

conspire or an over act was committed within the United States; "[i]n the context of 21 U.S.C. §

4

963, . . . '(t)he fact that appellants intended the conspiracy to be consummated within territorial boundaries satisfies jurisdictional requisites.'") (quoting *United States v. DeWeese*, 632 F.2d 1267, 1271 (1267), quoting *United States v. Ricardo*, 619 F.2d 1124, 1129 (5th Cir. 1980)); *see also United States v. Egan*, 501 F. Supp. 1252, 1257-58, 1260-61 (S.D.N.Y. 1980) (finding that conspiracy and attempt to import marijuana, although not "expressly made applicable to conduct occurring outside the United States," was punishable under the objective territorial and protective principles of international law, even in the absence of the formation of the conspiracy or an overt act in the United States).

In *Chua Han Mow v. United States*, 730 F.2d 1308 (9th Cir. 1984), the defendant pled guilty to conspiracy to import heroin (§§ 953, 952) and distribution of heroin charges (21 U.S.C. § 959). The defendant, a Malaysian citizen arrested there, argued in his appeal of an order denying his 22 U.S.C. § 2255 motion to vacate his sentence, that the Court lacked subject-matter jurisdiction "because all the unlawful acts he committed were done in Malaysia." *Id.* at 1311. The Court disagreed, finding "no constitutional bar to the extraterritorial application of penal laws," and noting that the Court "has regularly inferred extraterritorial reach of conspiracy statutes on the basis of a finding that the underlying substantive statutes reach extraterritorial offenses." *Id.* (citations omitted). Thus, "the inference that Congress intended section[] . . . 963 to have extraterritorial application is readily made." *Id.* The Circuit also found that the objective territorial and protective principles of international law justified the exercise of jurisdiction over the conspiracy count, although the Court noted that Chua's co-conspirators committed acts in furtherance of the conspiracy inside the United States, *i.e.*, the actual importation of the heroin. *Id.* at 1312.

In *United States v. Wright-Barker*, 784 F.2d 161 (3d Cir. 1986), another case involving a drug laden vessel and charges of conspiring to import marijuana into the United States, the Court recognized that §§ 963 and 952(a) do not expressly indicate "that they are to be given extraterritorial application."  However, the Court looked to *United States v. Bowman*, 260 U.S. 94 (1922) for guidance in its extraterritorial analysis.  After determining that the statutes fell within the second category of those described in *Bowman*, for which the extraterritorial nature could "be inferred from the nature of the offense," the Court stated:

> Congress undoubtedly intended to prohibit conspiracies to import controlled substances into the United States, and intentions to distribute such contraband there, as part of its continuing effort to contain the evils caused on American soil by foreign as well as domestic suppliers of illegal narcotics. Application of these laws to smugglers on the high seas is necessary to accomplish this purpose, such that extraterritorial application may be readily implied. To deny such use of the criminal provisions "would be greatly to curtail the scope and usefulness of the statute[s]."

*Id.* at 167.  The Court explained, however, that a second hurdle to finding jurisdiction over the particular acts was whether "an effect occurs within [the] borders."  *Id.* (citing *Strassheim v. Daily*, 221 U.S. 280, 285 (1911); *Restatement (Second) of the Foreign Relations Law of the United States* § 18 (1965)).  The Court then noted a recent change in the *Restatement* supporting that "international law permits jurisdiction even where an effect is intended but not accomplished in the forum state's territory."  *Id.* at 168 (citing *Restatement (Revised) of the Foreign Relations Law of the United States* § 402 at comment d (Tent. Draft No. 6, 1985)) ("When the intent of the person sought to be charged is clear and the effect to be produced by the challenged activity is substantial and foreseeable, the fact that an act or conspiracy was thwarted before its effect was felt does not deprive the target state of jurisdiction to make its law applicable to that activity.").

6

*Id*.  The Court then concluded that, "Here, importation and distribution of over 23 tons of

marijuana would clearly have a harmful effect and merit federal law enforcement attention . . .

Therefore, Congress' intent to apply the enumerated statutes extraterritorially is, under the facts of

this case, reasonable."  *Id*.  The Circuit further noted:

> All the crimes charged here do not require proof of an action within the United
> States.  A conspiracy to import may be established without proof of an overt act in
> the United States . . . The purpose of these provisions is to halt smugglers *before*
> they introduce their dangerous wares into and distribute them in this country.  A
> jurisdictional requirement that an effect occur in the United States contravenes this
> purpose, and need not be imposed in a case such as this, so long as it is proven that
> an effect in the United States was intended, and no interests of comity are affected.

*Id*. (citations omitted).  In concluding, the Court held, " Congress intended the statutes to have

extraterritorial application to the crimes charged.  Further, international law permits such

jurisdiction over every count in this case if intended effects in the United States, and not actual

effects, are proven."  *Id*. at 167-68.

In *United States v. Noriega*, 746 F. Supp. 1506 (S.D. Fla. 1990), the defendant was

charged with, among other offenses, a dual object conspiracy to distribute and import cocaine into

the United States, in violation of 21 U.S.C. §§ 952, 959 and 963.[2]  The district court first assessed

"whether the United States has the power to reach the conduct in question under traditional

principles of international law."  *Id.* at 1512.  The district court also relied on principles

enunciated in *Strassheim*, and the *Restatement (Third) of the Foreign Relations Law of the United

States* § 402(1)(c) in support of the United States' long-standing "ability to attach criminal

consequences to acts occurring outside this country which produce effects within the United

---

[2] Defendants ZAITAR and ZHAYTER are similar charged, albeit for an offense
involving heroin.

States." *Id.* at 1513. Second, the Court noted that the objective territorial theory of jurisdiction supported exercising "jurisdiction over foreigners who conspired to import narcotics into the United States but never entered this country nor personally performed any acts within its territorial limits, as long as there was proof of an overt act committed within the United States by a co-conspirator." *Id.* at 1512-13 (collecting Fifth Circuit cases). The Court then recognized the expansion of these international law principles "to permit jurisdiction upon a mere showing of *intent* to produce effects in this country, without requiring proof of an overt act or effect within the United States." *Id.* at 1513 (citations omitted). Thus, a conspirators' attempt but failure to actually succeed in importing an illegal drug into the United States, which if successful would itself be a substantive offense under 21 U.S.C. § 952, did not deprive the United States of jurisdiction over the defendant in the conspiracy charge, even in the absence of an act committed or repercussions felt within the United States, given that the "conduct was clearly directed at the United States." *Id.* (citing *Wright-Barker*, 784 F.2d at 168 ("The purpose of these [narcotics laws] is to halt smugglers *before* they introduce their dangerous wares into and distribute them in this country.") (emphasis in original); *Baker*, 609 F.2d at 138-39). The Court explained that, "[w]hen the intent to commit the proscribed act is clear and demonstrated by some activity, and the effect to be produced by the activity is substantial and foreseeable, the fact that a plan or conspiracy was thwarted does not deprive the target state of jurisdiction to make its law applicable." *Id.* at 1513 (quoting *Restatement (Third)* at § 402, Comment d). *See also id.* at 1514 (citing *Restatement (Third)* at § 403, Reporters' Note 8, for its explicit recognition of narcotics trafficking as a "serious and universally condemned offense[]" which would provide strong justification for extending jurisdiction over the extraterritorial conduct). The Court concluded that these collective

8

international law principles "unequivocally support [extraterritorial] jurisdiction" over Noriega's conduct in Panama. *Id.* at 1513-14. The district court further stated that although overt acts were allegedly performed within the United States in furtherance of the conspiracy, "even if no overt acts or effects occurred within the territorial borders, the object of the alleged conspiracy was to import cocaine into the United States and therefore an intent to produce effects is present." *Id.* at 1513-14.

Secondary to the *Noriega* Court's analysis of international law principles was its evaluation of the congressional intent underlying the statutes with which Noriega was charged, including § 952. The Court stated:

> With respect to 21 U.S.C. § 952, it is apparent from the very nature of the offense that the statute was intended to reach extraterritorial acts. Section 952 makes it unlawful to import narcotics "into the United States from *any place outside* thereof ..." (emphasis added). Because importation by definition involves acts originating outside of the territorial limits of the United States, the Court can only infer that § 952 applies to conduct which begins abroad; any interpretation to the contrary would render the statute virtually meaningless.

*Id.* at 1515-16 (citing *United States v. Cadena,* 585 F.2d 1252, 1259 (5th Cir. 1978) ("Because importation necessarily originates in an act in a foreign country, it is apparent that Congress intended that 21 U.S.C. [§] 952 and [§] 963 apply to persons who commit acts or a series of acts that at least commenced outside the territorial limits of the United States.")). Finding that the Court had extraterritorial jurisdiction over a § 952 substantive violation (and an offense under 21 U.S.C. § 959), and noting that "a conspiracy to commit an offense is closely related to the offense itself," the Court also held that "jurisdiction over the conspiracy and aiding and abetting counts likewise follows." *Id.* at 1516.

9

Although not specifically addressing the extraterritorial effect of 21 U.S.C. § 952, a number of cases have also affirmed convictions for a substantive 21 U.S.C. § 952 offense or a 21 U.S.C. § 963 conspiracy based on a § 952 object where the defendant appears to have engaged in solely extraterritorial conduct but the evidence sufficiently supported the defendant's knowledge or intent to import the controlled substance into the United States.  *See, e.g., United States v. Martinez,* 476 F.3d 961 (D.C. Cir. 2007) (affirming defendant's convictions for § 963 conspiracy to import cocaine and substantive § 952(a) offenses given sufficient evidence demonstrating his intent and knowledge about the U.S. destination of the drugs); *United States v. Richeson*, 825 F.2d 17 (4th Cir. 1987) (affirming § 952 conviction after finding Pakistan-based defendant sold multiple kilograms of heroin to conspirators in Pakistan with knowledge that it was to be imported into the United States); *United States v. Conroy*, 589 F.2d 1258, 1269-71 (5th Cir. 1979) (affirming § 963 conviction after finding defendant assisted in loading marijuana onto a boat off the coast of Jamaica with knowledge and intent that it was to be imported into the United States).

More recently, in an unpublished case but one similar to that before this Court, the Fourth Circuit affirmed the extraterritorial application of §§ 952(a), 959, 963 where defendant's conspiratorial conduct occurred entirely in Afghanistan, Dubai, and Ghana.  *See United States v. Mohammad-Omar*, 323 Fed. Appx. 259 (4th Cir. 2009) (unpublished opinion).  The defendant had been convicted following trial of conspiring to import one kilogram or more of heroin into the United States (as well as, conspiracy to possess with intent to distribute heroin, in violation of 21 U.S.C. § 846).  Following a determination that the drug importation statutes "contain [] a congressional expression" of extraterritorial application, the Circuit then conducted a due process analysis "to ensure the reach of Congress does not exceed its constitutional grasp."  *Id.* at 261

(citations omitted).  The Court explained that "[t]o apply a federal criminal statute to a defendant

extraterritorially without violating due process, 'there must be a sufficient nexus between the

defendant and the United States, so that such application would not be arbitrary or fundamentally

unfair.'" *Id.* (quoting *United States v. Yousef*, 327 F.3d 56, 111 (2d Cir. 2003), quoting *United*

*States v. Davis,* 905 F.2d 245, 248-49 (9th Cir. 1990) (case involving a due process challenge to

the extraterritorial application of the Maritime Drug Law Enforcement Act, now codified at 46

U.S.C. § 70501 *et seq.*)).  The Circuit found a sufficient nexus in Mohammad-Omar's case and

thus no violation of the defendant's Fifth Amendment Due Process rights:

> Omar [] had ample reason to anticipate being haled into court in the United States
> on account of his drug trafficking activity in Afghanistan, Dubai, and Ghana.  His
> partner, Nasrullah, knew the heroin he sold was destined for the United States.
> With regard to a planned 2007 transaction, Nasrullah personally met with an
> undercover agent he believed to be an American heroin distributor.  Nasrullah
> affirmatively indicated that his partner, Omar, knew the full details and scope of
> the transaction.  Because the evidence demonstrated that the drugs Omar conspired
> to transport were destined for the United States, jurisdiction over him was proper.

*Id.* at 261-62.  *See also United States v. Campbell*, 798 F. Supp. 2d 293 (D.D.C. 2011)

(prosecution under 18 U.S.C. § 666(a)(1)(B) not barred on the basis of defendant's wholly

extraterritorial conduct nor deemed a violation of customary international law or due process).

## CONCLUSION

WHEREFORE, based on the sampling of cases cited above and the international law

principles discussed therein, the government submits that 21 U.S.C. § 952(a), as well as any 21

U.S.C. § 963 conspiracy based on a § 952(a) object, addresses conduct occurring outside the

United States.  Further, the Court has jurisdiction over such offenses, and the defendants

themselves, notwithstanding the extraterritorial nature of the conduct or the defendants' presence,

where the government's evidence sufficiently demonstrates the defendant knew or intended that

the controlled substance would be imported into the United States.  Moreover, neither § 963 nor

the case law requires that the government prove the defendant actually conspired with an

individual located within the United States in order to be convicted of a conspiracy offense

predicated on § 952.  Finally, the extraterritorial application of the statutes does not violate a

defendant's due process rights where there are sufficient contacts between the defendant and the

United States, for instance, because the evidence demonstrates that the drugs the defendant

conspired to transport were destined for the United States.

Respectfully submitted this 15th day of March 2012.

> Respectfully submitted,
>
> ARTHUR G. WYATT, Chief
> Narcotic and Dangerous Drug Section
>
> By:      /s/ *Meredith A. Mills*
> Meredith A. Mills (D.C. Bar # 457843)
> Trial Attorney
> Narcotic and Dangerous Drug Section
> U.S. Department of Justice / Criminal Division
> 1400 New York Avenue, NW
> Washington, DC 20005
> Main Office: (202) 514-0917
> Fax: (202) 514-0483
> Meredith.Mills@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of March 2012, I filed the foregoing GOVERNMENT'S NOTICE OF SUPPLEMENTAL BRIEF IN RESPONSE TO COURT'S MINUTE ORDER DATED MARCH 5, 2012 with the Clerk of the Court via the CM/ECF system which will deliver a Notice of Electronic Filing on the following:

Counsel for Defendant YAHYA ALI ZAITAR

Barry Coburn, Esq.
Coburn & Greenbaum PLLC
1710 Rhode Island Avenue, NW, Second Floor
Washington, DC  20036
Tel: 202-657-4490 / Fax: 866-561-9712 / barry@coburngreenbaum.com

Counsel for Defendant NEMR ALI ZHAYTER

Carmen D. Hernandez, Esq.
7166 Mink Hollow Road
Highland, MD 20777
Telephone: 202-628-0090 / Direct: 240-472-3391 / Fax: 202-628-2881 / chernan7@aol.com


By:      /s/ Meredith A. Mills
Meredith A. Mills (D.C. Bar # 457843)
Trial Attorney
Narcotic and Dangerous Drug Section
U.S. Department of Justice / Criminal Division
1400 New York Avenue, NW
Washington, DC 20005
Main Office: (202) 514-0917
Fax: (202) 514-0483
Meredith.Mills@usdoj.gov