UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL CASE NO.: 1:08CR214-RMC |
| | ) | |
| NEMR ALI ZHAYTER, | ) | |
| a/k/a "Shadi," | ) | |
| Defendant. | ) | |

## GOVERNMENT'S OMNIBUS MOTION *IN LIMINE*[1]

COMES NOW the United States of America, by and through undersigned counsel with the United States Department of Justice, Criminal Division, Narcotic and Dangerous Drug Section, and pursuant to the Court's Order For Joint Pretrial Statement, dated March 16, 2012, hereby files the Government's Omnibus Motion *in Limine* in advance of the commencement of trial on May 14, 2012, in the above-captioned matter.  The government respectfully requests this Court preclude the defense from:

(1)   offering the exculpatory out-of-court statements of the defendants or their other co-conspirators;

(2)   offering evidence, comments, argument regarding the impact of incarceration, conviction, trial, or punishment on either defendant's family;

(3)   conducting Jencks Act inquiries in the presence of the jury;

(4)   introducing the contents of DEA-6s or agents' notes to impeach witnesses (other than the agent who prepared the report) on the basis of inconsistent statements, publishing the contents of the DEA-6 or notes to the jury, or suggesting to the jury in any way that the DEA-6 or notes are a statement of the interviewed witness; and

(5)   asking questions of government witnesses relating to the description and technical specifications of recording devices utilized during the investigation conducted by DEA in this case.

The government also seeks permission to have the government's lead investigative officer be seated at counsel's table throughout the trial.

---

[1] Given the foreign language complexities of this case, the government will also be filing a separate motion to admit recordings and transcripts as evidence in the case.

## I.    PROCEDURAL BACKGROUND

On April 25, 2008, and July 17, 2008, a Grand Jury sitting in the United States District Court for the District of Columbia separately returned original one-count indictments against defendants Yahya Ali ZAITAR (hereinafter "ZAITAR") (Criminal Case No. 1:08cr123) and Nemr Ali ZHAYTER (hereinafter "ZHAYTER") (1:08cr214-RMC), respectively.  Each were charged with conspiring to (1) knowingly and intentionally import 1 kilogram or more of heroin into the United States, in violation of 21 U.SC. §§ 952 and 960, and (2) knowingly and intentionally distribute 1 kilogram or more of heroin, intending and knowing that such substance would be unlawfully imported into the United States, in violation of 21 U.SC. §§ 959(a) and 960, all in violation of 21 U.SC. §§ 960 and 963, and 18 U.SC. § 2.  The defendants' cases have been consolidated for trial which is now set to commence May 14, 2012.  This omnibus motion *in limine* is being filed by the government in both cases with the only difference being a change in the caption.

## II.    STANDARD OF REVIEW

As the Supreme Court has noted, "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988).  Likewise, a defendant's proposed evidence should be excluded when it "would confuse the jury and misdirect the jury's focus from the issues properly before it." *United States v. Wellons*, 32 F.3d 117, 120 n.3 (4th Cir. 1994).  Accordingly, the government makes this motion *in limine* in order to narrow the issues for trial, to exclude irrelevant, extraneous, or unduly prejudicial arguments or evidence, and to expedite this Court's determination of legal disputes likely to arise during trial.  In turn, the Court is granted wide discretion in ruling on the government's motion to preclude or admit evidence,

comment, arguments or questioning. *See, e.g.*, *Herring v. New York*, 422 U.S. 853, 862 (1975) ("The presiding judge must be and is given great latitude in . . . ensur[ing] that argument does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial . . . he must have broad discretion."); *see also United States v. Jones*, 356 F.3d 529, 535 (4th Cir. 2004) ("The decision to admit evidence at trial is committed to the sound discretion of the district court and is subject to reversal only if the court abuses that discretion."); *United States v. Schnabel*, 939 F.2d 197, 202 (4th Cir. 1991) ("[T]he decision to exclude evidence because of possible prejudicial effect rests in the sound discretion of the trial court."); *United States v. Wables*, 731 F.2d 440, 449 (7th Cir. 1984) ("Since it [is] the court's responsibility to present [the law] to the jury in a clear manner, the court [will] not abuse its discretion by requiring the defense counsel to argue consistently with the correct law.").

## III.   REQUESTS FOR PRECLUSION OF CERTAIN EVIDENCE, COMMENTS, AND ARGUMENTS AND QUESTIONING.

### A.   To preclude evidence of any exculpatory, out-of-court statements of the defendants or their conspirators.

The defendants have indicated that at trial they intend to rely on certain wiretap calls and conversations consensually-recorded by informants (and corresponding transcripts ), apart and separate from those the government is likely to introduce.  The defendants should not be permitted to introduce their own out-of-court statements or the out-of-court statements of co-conspirators, whether elicited through a third party witness or repeated by the defendants themselves should either of them testify.  It is well-established that such statements are hearsay pursuant to Rule 801, and are not "admissions by a party opponent" pursuant to Rule 801(d)(2) when offered by a party himself, rather than the party's "opponent." *See, e.g., United States v. Henderson,* 626 F.3d 326, 344 (6th Cir. 2010) (noting that "although the government was

properly permitted to introduce select recordings" of prison calls with defendant as party-opponent admissions under Rule 801(d)(2), defendant "could not take advantage of this hearsay exclusion to introduce his own out-of-court statements."); *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005) ("Rule 801(d)(2) . . . does not extend to a party's attempt to introduce his or her *own* statements through the testimony of other witnesses."); *United States v. Jackson*, 180 F.3d 55, 73 (2d Cir. 1999) (finding no error in district court's denial of defendant's request to admit remainder of tape recording pursuant to the "rule of completeness" and no abuse of discretion in the exclusion on the basis that "the portions of the tape proffered by [the defendant] consisted largely of [the defendant's] own self-serving statements, which, as offered by him, are inadmissible hearsay."); *United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996) (holding that the rules of evidence do not provide an exception "for self-serving, exculpatory statements made by a party which are being sought for admission by that same party."); *United States v. Haddad*, 10 F.3d 1252, 1258 (7th Cir. 1993) ("Ordinarily a defendant's self-serving, exculpatory out of court statements would not be admissible."); *Leal v. Morris,* 842 F.2d 332, 1988 WL 25007, at *7 (6th Cir. Mar. 18, 1988) (unpublished opinion) (rejecting defendant's claim the court should have allowed the admission of defendant's recorded telephone calls with conspirators as such were self-serving, prior consistent statement's deemed inadmissable under Ohio R. Evid. 801(d)(2)(a)'s governing statements offered by an opposing party); *United States v. Smith*, 490 F.2d 789, 791-92 (D.C. Cir. 1974) (holding that defendant's statement to a police officer that defendant killed the victim in self-defense was properly excluded as self-serving hearsay); *see also United States v. Defreitas*, 2010 WL 2710445, at *2 (E.D.N.Y. June 29, 2010) (ordering, pursuant to government's motion *in limine* to preclude defendant's introduction of certain recorded conversations between themselves and conspirators, that "defendants must set

forth why they should not be barred as inadmissible hearsay" and their relevance).

Nor are the defendants' out-of-court's statements admissible under Rule 806 in order to attack or support the declarant's (*e.g.*, the defendants') credibility.  Rule 806 refers *only* to statements defined in Rule 801(d)(2)(C), (D), or (E) – that is, statements not made by the defendants, but by "a person authorized by the party to make a statement," "the party's agent or servant," or "a coconspirator of a party."  *See* Fed. R. Evid. 801(d)(2)(C), (D), (E) and 806.   Rule 806 clearly does not apply to statements made by the defendants themselves, which are covered by Rule 801(d)(2)(A) and (B).  *See* Fed. R. Evid. 801(d)(2)(A) ("the party's own statement") and (B) ("a statement of which the party has manifested an adoption or belief . . . .").  Accordingly, the Court should preclude any defense witness (or the defendants themselves) from testifying as to any defendant or co-conspirator's out-of-court statements.

Furthermore, while Rules 801(d)(2) and 806 clearly foreclose any attempt by the defendants to offer their exculpatory statements, the defense should also be precluded from attempting to improperly admit the statements by way of Fed. R. Evid. 106's "Rule of Completeness."  Rule 106 provides that, "When a writing or recorded statement thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."  Fed. R. Evid. 106.  The purpose of the rule of completeness is to "prevent a party from misleading the jury by allowing into the record relevant portions of the excluded testimony which clarify or explain *the part already received*." *Wilkerson*, 84 F.3d at 696 (emphasis added).  It ought not to be used as a vehicle to allow the defendants to admit otherwise inadmissible exculpatory statements.  *See, e.g., United States v. (Antoine) Washington*, 12 F.3d 1128, 1137 (D.C. Cir. 1994); *United States v. Sutton*, 801 F.2d 1346, 1368 (D.C. Cir.

1986); *United States v. Crosby*, 713 F.2d 1066, 1073-74 (5th Cir. 1983) ("[Rule 106] restricts a requirement of completeness by the qualification that the portion sought to be admitted must be relevant to the issues, and only the parts which qualify or explain the subject matter of the portion offered by the opponent need be admitted."); *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982) (finding that supplemental statements must be "necessary to explain the admitted portion, to place it in context, or to avoid misleading the trier-of-fact, or to ensure a fair and impartial understanding of the admitted portion.").

Moreover, the D.C. Circuit requires defendants to make a threshold showing that "the [admitted] statements are misleading because of a lack of context" before allowing the introduction of additional statements under Rule 106.  *Sutton*, 801 F.2d at 1368-69. The rule of completeness, therefore, does not confer upon the defendants a broad license to admit otherwise inadmissible statements, and absent a clear showing by the defendants that the portions of the recorded conversations offered by the government are misleading – *and that the portions the defendants offer would remedy any asserted confusion* – the Court should not allow the defendants to introduce exculpatory, self-serving, or otherwise irrelevant portions of those conversations under Rule 106.

**B.      To preclude evidence, comment, or argument regarding the impact of incarceration, conviction, or punishment on the defendants' families.**

On more than a few occasions in motions filings or proceedings, counsel has commented that the defendants have been held in Paraguayan, Romanian, or U.S. custody to the detriment of contact with their families.  Included among these is an acknowledgment that ZAITAR has never met his daughter who was born while the defendant was on his way to Romania in April 2008.  At least once, counsel has also stated there has been a financial toll on

the families in Paraguay. The defense should not be permitted to draw attention to the effect of

the defendants' incarcerations (whether domestic or foreign), trial, or potential convictions and

punishment on the defendants' family members, including the families' need for financial or

emotional support.  This kind of information is irrelevant and amounts to nothing more than an

appeal to the sympathy of the jury.  *See, e.g., United States v. Ramirez*, 482 F.2d 807, 816 (2d

Cir. 1973); *United States v. D'Arco*, 1991 WL 264504, at *4 (N.D. Ill. 1991) (holding that "no

testimony or argument will be allowed regarding the impact of the trial or possible conviction

upon a family member."); *United States v. Shields*, 1991 WL 236492, at *4 (N.D. Ill. 1991)

(granting motion *in limine* precluding "any testimony regarding the possible impact which a

conviction might have upon any family member.").  Personal or familial consequences of

incarceration, trial, conviction or punishment should play no part in the jury's deliberations on

whether either defendant is guilty of the crimes charged.

      Moreover, defense questions, comments, and arguments on such could invite jury

nullification.  It is improper for a defendant to suggest in any way that the jury should acquit even

if it finds that the government has met its burden of proof.  *See, e.g., United States v. Edwards*,

101 F.3d 17, 19-20 (2d Cir. 1996) (holding good motives do not nullify a defendant's violation

of the law and a jury should not be encouraged to consider such arguments); *United States v.

Perez*, 86 F.3d 735, 736 (7th Cir. 1996) ("[A]n unreasonable jury verdict . . . is lawless, and the

defendant has no right to invite the jury to act lawlessly. Jury nullification . . . is not a right,

either of the jury or of the defendant."); *Scarpa v. Dubois*, 38 F.3d 1, 11 (1st Cir. 1994)

("Defense counsel may not press arguments for jury nullification in criminal cases."); *United

States v. Trujillo*, 714 F.2d 102, 105 (11th Cir. 1983) ("Appellant's jury nullification argument

would have encouraged the jurors to ignore the court's instruction and apply the law at their

caprice. While we recognized that a jury may render a verdict at odds with the evidence or the law, neither the court nor counsel should encourage jurors to violate their oath.").

The D.C. Circuit also adheres to the almost universal rule disapproving arguments that ask the jury to decide a criminal case on extraneous matters, that is, to engage in jury nullification.  Indeed, this Circuit has consistently refused to admit evidence that is relevant *only* to the extent that it would support a jury nullification argument or verdict.  *United States v. (Myrtle) Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983) (holding defendant had no right to an instruction informing the jury of its power to engage in nullification if it found her conduct not culpable or morally blameworthy under prevailing community standards); *United States v. Gorham*, 523 F.2d 1088, 1098 (D.C. Cir. 1975) ("Of course a jury can render a verdict at odds with the evidence and the law in a given case, but it undermines the very basis of our legal system when it does so."); *United States v. Dougherty*, 473 F.2d 1113, 1133-34 (D.C. Cir. 1972) ("This so-called right of jury nullification is put forward in the name of liberty and democracy, but its explicit avowal risks the ultimate logic of anarchy.").

Accordingly, the government requests a pre-trial ruling precluding defense counsel's attempts to confuse the jury with appeals based on emotion, sympathy or other similar consideration as a result of the impact of the defendants' incarceration, trial, conviction or punishment on the defendants' families.  *See, e.g., United States v. Young*, 470 U.S. 1, 7-10 (1985) (holding that court has duty to prevent counsel from making improper arguments to the jury, including those that are designed to divert the jury from its duty to decide the case on the facts and the law); *see also United States v. Muse*, 83 F.3d 672, 677 (4th Cir. 1996) (explaining that trial court should prevent defense counsel from presenting nullification arguments to the jury); *United States v. Young*, 20 F.3d 758, 765 (7th Cir. 1994) (affirming trial court's granting of

government's motion *in limine* to exclude jury nullification arguments); *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993) ("[N]either the court nor counsel should encourage jurors to exercise [nullification] power.  A trial judge, therefore, may block defense attorneys' attempts to serenade a jury with the siren song of nullification.") (citations omitted); *United States v. Sloan*, 704 F. Supp. 880, 884 (N.D. Ind. 1989) (granting government's motion *in limine* to preclude jury nullification arguments).

The government does not doubt that counsel is well acquainted with these general principles of relevancy and jury nullification and would not knowingly seek to violate them. However, given the defense's statements relating to the defendants' foreign custody impact on their relationships with their families, the defendants should be precluded from presenting any evidence, comment, or argument, as well as any questioning of the government's witnesses, on or about these matters. This would also prevent unfairly prejudicial and potentially confusing matters from influencing the jury's decision as to the charged crimes.

C. <u>**To preclude the defense from conducting Jencks Act inquiries in the presence of the jury.**</u>

This is the first of two government requests for pre-trial rulings concerning the handling of Jencks Act inquiries and materials at trial. The Jencks Act requires the government to disclose to the defense any "statements" made by a witness which pertain to the same subject matter as the witness' testimony.  *See* 18 U.S.C. § 3500. A "statement" includes: (1) a written statement made by the witness or signed, adopted or approved by him; (2) a "substantially verbatim" contemporaneous recording of an oral statement made by the witness; and (3) the witness' grand jury testimony.  18 U.S.C. § 3500(e).  The provisions of the Jencks Act have been codified in Federal Rule of Criminal Procedure 26.2.  The parties' have addressed the Jencks Act's

requirements in their respective filings relating to the regulation of trial issues.  The government

incorporates its responsive filings herein.  *See* Criminal Case No. 1:08cr123 (Docket Entries 33

and 52); Criminal Case No. 1:08cr214 (Docket Entries 26 and 38).  The government has

requested that it not be required to disclose Jencks Act material to the defense any sooner than

one week prior to trial.  The Court's ruling on the timing of the disclosure of Jencks Act material

remains pending.

Notwithstanding such a ruling and the government's concomitant pre-trial production of

Jencks materials, at trial the defense is likely to question government witnesses on whether all of

*their* Jencks material has been provided to the prosecution team (and, in turn, to the defense).

The defendant is also likely to ask whether the witness made prior statements to government

agents which the agents then documented in investigative reports or notes.  The government

expects the defense would then demand their production in front of the jury.  By doing this, the

defense may imply to the jury – whether intentionally or otherwise – that the government is

wrongfully withholding material or that the witness is being less than candid.  *See United States*

*v. Curry*, 512 F.2d 1299, 1303 (4th Cir. 1975) (trial court read the Jencks Act to the jury so they

could understand the dispute between counsel and to preclude any inference by the jurors that

evidence was being withheld from them).  In anticipation of this, and in accordance with the

Court of Appeals' unequivocal holding in *Johnson v. United States*, the government requests that

all Jencks Act inquiries made by defense counsel be conducted outside the presence of the jury.

*Johnson v. United States*, 347 F.2d 803, 806 (D.C. Cir. 1965) (holding that "in order to avoid the

undue prejudice which may arise from the jury's knowledge that Jencks Act statements were

available to the accused, motions for their production should be made outside the hearing of the

jury.").

10

Neither the Jencks Act nor the Federal Rules of Criminal Procedure set forth the procedures for ensuring that all appropriate Jencks Act material has been disclosed. *See* 18 U.S.C. § 3500; Fed. R. Crim. P. 26.2.  However, requiring that the defense request Jencks material and any questioning about its disclosure outside the hearing of the jury protects both parties from unfair prejudice.  For instance, it "avoid[s] the undue prejudice [to the government] which may arise from the jury's knowledge that Jencks Act statements were available to the accused." *Johnson*, 347 F.2d at 806.  Such a requirement would also be consistent with the purpose of the Jencks Act which is not to permit cross-examination about the existence of notes, but to facilitate impeachment by cross-examination with prior inconsistent statements contained in any such notes.  Conversely, requiring that Jencks matters be pursued outside the jury's purview also protects the defendants by precluding the jury "from drawing an inference that the prior statements received are consistent with the witnesses' [trial] testimony . . . . " *Gregory v. United States*, 369 F.2d 185, 191 (D.C. Cir. 1966).  *Accord United States v. Pickett*, 746 F.2d 1129, 1135 (6th Cir. 1984); *United States v. Frazier*, 479 F.2d 983, 985-86 (2d Cir. 1973); *United States v. Nielson*, 392 F.2d 849, 854 (7th Cir. 1968).

Apart from the prejudicial nature to both parties of conducting a Jencks Act inquiry in front of the jury, doing so can be laborious, time consuming, and confusing to the jury and to the witness being questioned.  *See* Fed. R. Crim. P. 403.  That is particularly likely in this case where some of the witnesses are foreign nationals and have no prior experience with the United States' judicial system.  Nor is there reason to subject the jurors to an endless and confusing repetition of questions with each witness concerning agents' investigative report and note-taking procedures. The government is not asking to circumscribe the defense efforts to examine the witnesses as to the existence of other Jencks material; rather, it asks only that any such inquiry be done outside

11

the presence of the jury.

**D.** **To preclude the defense from introducing the contents of DEA-6s or agents' notes to impeach witnesses (other than the agent who prepared the report) on the basis of inconsistent statements, publishing the contents of the DEA-6 or notes to the jury, or suggesting to the jury in any way that the DEA-6 or notes is a statement of the interviewed witness.**

The government's second Jencks-related motion relates to the defense's use of Jencks material during cross-examination.  The government intends to call law enforcement agents employed with the DEA who conducted interviews with witnesses, including at least one confidential informant, which were memorialized in "DEA-6" investigative reports.  These reports (and any available notes) will be among the Jencks materials disclosed for any testifying agent to the extent the statements in the reports or notes relate to the subject of his or her testimony.  *See* 18 U.S.C. § 3500.  However, DEA-6s are not statements of the interviewed individual under the Jencks Act.  The Supreme Court has held that because the Jencks Act is meant to restrict the defendant's use of discoverable statements to impeachment, "only those statements which could properly be called the witness' own words should be made available to the defense."  *Palermo v. United States*, 360 U.S. 343, 349, 352 (1959).  Thus, agent's "summaries of an oral statement [made by the interviewee] which evidence substantial selection of material" or "statements which contain [an] agent's interpretations or impressions" are "not to be produced."  *Id.* at 352-53.  Consistent with *Palermo* then, DEA-6s are not discoverable under the Jencks Act as statements of the interviewed witness within the meaning of the statute, unless the witness reviewed and adopted the DEA-6 – which was not the practice in this case.  Thus, the DEA-6s to be disclosed for any testifying agent are not statements of the interviewed witness under subsection (e)(1) of the Jencks Act.  Moreover, because the DEA-6s are written after interviews are completed and reflect the thought processes and interpretations of the agent, they

do not constitute a contemporaneous and substantially verbatim recital of the witness' statement

under subsection (e)(2) of the Act.

The circuit courts have routinely held that witness interview summaries prepared by DEA

and FBI agents (*e.g.*, through FBI 302s[2]) generally are not discoverable under the Jencks Act.

*See, e.g., United States v. Price*, 542 F.3d 617, 621 (8th Cir. 2008) (holding that absent evidence

that the witnesses "approved or adopted" the FBI 302s, "these documents are not discoverable

under . . . the Jencks Act."); *United States v. Jordan*, 316 F.3d 1215, 1255 (11th Cir. 2003)

(holding that FBI 302s "are not Jencks Act statements of the witness unless they are substantially

verbatim and were contemporaneously recorded, or were signed or otherwise ratified by the

witness."); *United States v. Donato*, 99 F.3d 426, 433 (D.C. Cir. 1996) ("[T]he agent's notes and

302 report . . . are not covered by the Jencks Act."); *United States v. Roseboro*, 87 F.3d 642, 646

(4th Cir. 1996) ("[T]he district court's finding that the FBI Report was not a Jencks Act

statement is not clearly erroneous."); *United States v. Farley*, 2 F.3d 645, 654-55 (6th Cir. 1993)

(holding that because there was "no proof that the statement was adopted or approved . . . it was

not clearly erroneous . . . to deny defendants access to the FBI 302."); *United States v. Williams*,

998 F.2d 258, 269 (5th Cir. 1993) ("We hold that the FBI Forms 302 were not discoverable

statements under the Jencks Act."); *United States v. Morris*, 957 F.2d 1391, 1402 (7th Cir. 1992)

("[T]he documents are not statements producible under the Jencks Act because they were neither

signed nor adopted . . . and further because they are not a verbatim recital . . . but rather only an

agent's summary."); *United States v. Foley*, 871 F.2d 235, 239 (1st Cir. 1989) ("It is plain that

the 302s are not substantially verbatim recitals . . . and recorded contemporaneously."); *United*

---

[2]  An FBI 302 is the investigation report form used by the Federal Bureau of Investigation
to describe the details of an ongoing FBI case and to summarize witness interviews.

*States v. Claiborne*, 765 F.2d 784, 801 (9th Cir. 1985) (because "the summaries represent . . . the

agents' selection of certain information . . . the district court properly characterized the

summaries as non-Jencks Act material."); *United States v. Merida*, 765 F.2d 1205, 1214-16 (5th

Cir. 1985) (Jencks Act did not require government to release to defense copies of DEA-6s which

were short, concise, summaries of witness' versions of the facts as recounted to agents, and in

which summarization and not verbatim recital was manifest).

 Given this well-established law supporting that investigative reports summarizing witness

interviews are not the Jencks Act material of the interviewed witness, the defense should be

limited to using DEA-6s (or an agent's notes of an interview with a witness) consistent with the

law and rules of evidence.  In particular, the defense must be precluded from introducing the

contents of DEA-6s or notes to impeach witnesses (other than the agent who prepared the report)

on the basis of inconsistent statements because the DEA-6s or notes are not the statements of the

interviewed witnesses themselves.  Moreover, the defense must be precluded from publishing the

contents of the DEA-6 to the jury, or otherwise suggesting to the jury that the DEA-6 is a

statement of the witness who did not write them or adopt them.  To allow otherwise would

subvert the meaning of the Jencks Act and the Supreme Court's holding in *Palermo* that it would

"be grossly unfair to allow the defense to use statements to impeach a witness which could not

fairly be said to be the witness' own rather than the product of the investigator's selections,

interpretations and interpolations."  *Palermo*, 360 U.S. at 350.

 The defense is, of course, free to ask a witness whether he or she made a statement that is

reflected in a DEA-6 or agents' notes.[3]  However, if the defense is not satisfied with the witness'

---

 [3]  Likewise, in the appropriate circumstances and with the proper foundation, the defense
may attempt to refresh the witness' recollection by showing the witness the DEA-6 or notes, but

answer, the defense may not publish or introduce the contents of the DEA-6 or notes as a prior

inconsistent statement.  *See United States v. Brika,* 416 F.3d 514, 529 (6th Cir. 2005) (holding

that "such documents [in which the interviewing agent summarizes the contents of the interview,

like an FBI 302] have been deemed inadmissible for impeaching witnesses on cross-

examination."); *United States v. Leonardi*, 623 F.2d 746, 757 (2d Cir. 1980) (holding that

because "the written statement of the FBI agent was not attributable to [the witness]" it was

"properly rejected as a prior inconsistent statement"); *United States v. Hill*, 526 F.2d 1019, 1026

(10th Cir. 1975) (upholding the trial court's decision to "not allow counsel to use the 302

statement to impeach a witness because the witness did not prepare or sign the document and

probably never adopted it").  Moreover, the defense may not use the DEA-6 or notes in a way

that suggests to the jury that the DEA-6 or notes are a statement of the witness'.  *See United*

*States v. Marks*, 816 F.2d 1207, 1210-11 (7th Cir. 1987) (holding that where defense counsel

read from an FBI 302 during cross-examination in a way that would "seem authoritative" and

potentially confuse the jury, the judge was entitled to require the witness be shown the FBI 302

and given the opportunity to adopt or reject it as a statement, although such a practice was no

longer required by the federal rules of evidence).

Thus, the government seeks a pre-trial ruling precluding the defense from introducing the

contents of DEA-6s or agents' notes to impeach witnesses (other than the agent who prepared the

report) on the basis of inconsistent statements, publishing the contents of the DEA-6 or notes to

the jury, or suggesting to the jury in any way that the DEA-6 or notes are a statement of the

interviewed witness.

---

only if the defense does so in a manner that does not imply that the DEA-6 or notes are the
witness' own statement.

**E.**     **To preclude defense counsel from asking questions of government witnesses relating to the description and technical specifications of recording devices utilized during the investigation conducted by DEA in this case.**

At trial, the government will introduce as part of its evidence audio and video recorded conversations.  The recordings were made by an undercover agent or confidential informants through the use of a small recorder designed and disguised to be inconspicuous and unnoticeable, for instance, to other participants in the conversation.  Copies of the recordings, as well as transcriptions and translations of some of the recordings, have been provided to the defendants.  The small recorders are valuable tools used by law enforcement officers.  Use of this type of device is a sensitive technique involving surreptitious surveillance and evidence gathering currently used by the DEA and other law enforcement agencies.  It is this sensitive investigative technique to which this motion is directed.  Absent stipulations, as part of its evidence to authenticate the recorded conversations, the government intends to call several witnesses to describe the operation and establish the reliability of the recording systems used by DEA to collect and store the recorded conversation in this case.  However, the government intends to elicit only general testimony regarding the description and type of surveillance equipment employed and how it works.  The government does not intend to elicit any testimony regarding the specific design or technical specifications of the precise apparatus used in this case, as such information is not necessary to any issue in this case, and would unnecessarily reveal and compromise sensitive investigative techniques used by law enforcement.  Given this, the government respectfully moves the Court to limit the defense's questioning on the description and technical specifications of the recording devices utilized during the investigation.

It is beyond question that the government has an interest in protecting sensitive law enforcement information from public disclosure.  Consequently, unrestricted testimony of

information revealing the design, nature, and location of electronic surveillance equipment would jeopardize future criminal investigations, but most importantly, might jeopardize the safety of the undercover agents and informants who must use these devices.  Several courts, including the Court of Appeals for the District of Columbia, have recognized this qualified privilege not to disclose sensitive investigative techniques, including the nature and location of electronic surveillance equipment.  *See, e.g., Roviaro v. United States*, 353 U.S. 53 (1957); *see also United States v. Angiulo*, 847 F.2d 956, 983 (1st Cir. 1988); *United States v. Cintolo*, 818 F.2d 980, 1001-03 (1st Cir. 1987); *United States v. Fernandez*, 797 F.2d 943, 952 (11th Cir. 1986); *United States v. Van Horn*, 789 F.2d 1492, 1508 (11th Cir. 1986); *United States v. Harley*, 682 F.2d 1018, 1020 (D.C. Cir. 1982); *United States v. Green*, 670 F.2d 1148, 1155 (D.C. Cir. 1981); Fed. R. Evid 501 (providing that the common law governs privilege claims unless the U.S. Constitution, a federal statute or the Supreme Court rules provide otherise).  In *Van Horn*, the Eleventh Circuit held:

> [T]he privilege applies equally to the nature and location of electronic surveillance equipment.  Disclosing the precise locations where surveillance devices are hidden or their precise specifications will educate criminals regarding how to protect themselves against police surveillance.  Electronic surveillance is an important tool of law enforcement, and its effectiveness should not be unnecessarily compromised.

*Van Horn*, 789 F.2d at 1508.  "[E]cho[ing] the concern" of the Eleventh Circuit in *Van Horn,* the First Circuit in *Cintolo* stated that:

> discoverability of this kind of information will enable criminals to frustrate future government surveillance and perhaps unduly jeopardize the security of ongoing investigations.  The potential price to be paid by law enforcement is heavy, and should not be assessed without good reason.

*Cintolo*, 818 F.2d at 1002.  In ruling that the location of the surveillance post was privileged in *Green*, the D.C. Circuit explained:

17

> Just as the disclosure of an informer's identity may destroy his future usefulness in criminal investigations, the identification of a hidden observation post will likely destroy the future value of that location for police surveillance. The revelation of a surveillance location might also threaten the safety of police officers using the observation post, or lead to adversity for cooperative owners or occupants of the building.

*Green*, 670 F.2d at 1155.

Under this privilege, the government need not disclose information such as the location or type of surveillance equipment without a showing by the defense of "authentic and sufficient need" for the information, *Anguilo*, 847 F.2d at 982, and that there are "no adequate alternative means of getting at the same point."  *Cintolo*, 818 F.2d at 1002-03; *see also Van Horn*, 789 F.2d at 1508 (no disclosure absent showing of need for the information).  The "necessity determination requires a case by case balancing process," *id*., "controlled by 'the fundamental requirements of fairness.'" *Harley*, 682 F.2d at 1020 (quoting *Roviaro*, 353 U.S. at 60).

Here, the defendants have been given copies of the audio and video recordings, as well as certain transcripts and translations.  Neither of the defendants has requested any information related to the description and technical specifications of the digital recording devices.  Thus, it cannot be said that disclosure of information relating to the description and particular type of surveillance equipment employed by the DEA in this case is necessary.  Indeed, any issue that the defendant could raise would be mere supposition and conjecture. Accordingly, the government respectfully requests that this Court preclude defense counsel from asking questions of government witnesses relating to the description and technical specifications of recording devices utilized during the investigation conducted by DEA in this case.

//

//

IV.     **REQUEST TO PERMIT THE GOVERNMENT'S LEAD INVESTIGATIVE AGENT TO BE SEATED AT COUNSEL'S TABLE THROUGHOUT TRIAL.**

Finally, the government requests that the Court permit it to allow one of the lead investigative agents in the case, Drug Enforcement Administration ("DEA") Special Agent Gregory Conners, to be seated at government counsel's table throughout the trial, notwithstanding that the agent is expected to testify at some point during the trial.  Federal Rule of Evidence 615 codifies what is generally known as the "Rule on Witnesses," which requires witnesses to be excluded from trial proceedings so that they cannot hear the testimony of other witnesses.  However, the rule also delineates four exceptions to the general rule, including for "(a) a party who is a natural person; (b) an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney; (c) a person whose presence a party shows to be essential to presenting the party's claim or defense; or (d) a person authorized by statute to be present."  Fed. R. Evid. 615.  The government submits that the lead investigative agent, Special Agent Conners, meets two of these exceptions, and as such, he should be permitted to be seated at the government's counsel table throughout the trial.

First, Special Agent Conners is "an officer or employee of a party which is not a natural person," and by this pleading is "designated as its representative by its attorney."  In this context, the pertinent party to this litigation is the Federal Government, and as a DEA agent, Special Agent Conners is an employee of such.  The Federal Government's attorney in this matter is the Department of Justice, and as such the undersigned designate Special Agent Conners as the government's representative.  Fed. R. Evid. 615(2).

This exception to the general rule against a witness being present at trial applies to investigative agents, such as federal agents and police detectives.  Fed. R. Evid. 615 (advisory

notes). *See United States v. Farnham*, 791 F.2d 331, 334-35 (4th Cir. 1986) (under Rule 615(2)

a district court may allow the government's investigating agent to remain in the courtroom

throughout the proceedings, even if he is expected to testify). This exception to the rule does not

require the government to establish that the agent's presence is essential to the presentation of the

case; that requirement applies solely to the third exception listed in the rule. The government,

therefore, may have an investigative agent present in the courtroom, even if the agent will testify.

Moreover, Congress clearly intended that this exception to Rule 615 apply to the government's

investigative agents. *See* Fed. R. Evid. 615 advisory committee's note; S. Rep. No. 1277, 93d

Cong., 2d Sess. 26, reprinted in 1974 U.S.C.C.A.N. 7051, 7072-73.

This Circuit has routinely approved of district courts allowing an investigative agent to

remain seated at government counsel's table throughout the trial, even when that witness has

testified. *See, e.g., United States v. Sullivan*, 56 F.3d 1532, 1995 WL 364662, *2 (D.C. Cir.

June 6, 1995) (unpublished) (concluding that even if the district court erred in permitting a

testifying Metropolitan Police Department officer to remain in the courtroom during trial as

essential to the prosecutors' presentation of their case under Rule 615(3), the court nevertheless

could have let the officer attend the entire trial as the government's representative under Rule

615(2)); *see also United States v. Eiland*, 2006 WL 516743, at *17 (D.D.C. Mar. 2, 2006)

(finding that government's intention to have its case agent seated at government counsel's table

"falls squarely within the exception for investigative agents included in [Rule 615]") (citing

cases). Numerous other courts have issued similar rulings. *See, e.g., United States v. Phibbs*,

999 F.2d 1053, 1072-73 (6th Cir. 1993) ("Rule 615(2) allows the government to have any law

enforcement officer it wants at its counsel table."); *United States v. Rivera*, 971 F.2d 876, 889

(2d Cir. 1992); *United States v. Adamo*, 882 F.2d 1218, 1235 (7th Cir. 1989); *United States v.*

*Parodi*, 703 F.2d 768, 773-74 (4th Cir. 1983); *United States v. Perry*, 643 F.2d 38, 53 (2d Cir. 1981).

## **CONCLUSION**

Accordingly, for the reasons set forth above, the government respectfully requests that the Court preclude: (1) the defendants from offering the exculpatory out-of-court statements of themselves, each other, or their other co-conspirators; (2) evidence, comments, argument regarding the impact of incarceration, conviction, trial or punishment on either defendant's family;  (3) the defense from conducting Jencks Act inquiries in the presence of the jury; (4) the defense from introducing the contents of DEA-6s or agents' notes to impeach witnesses (other than the agent who prepared the report) on the basis of inconsistent statements, publishing the contents of the DEA-6 or notes to the jury, or suggesting to the jury in any way that the DEA-6 or notes are a statement of the interviewed witness; and (5) defense counsel from asking questions of government witnesses relating to the description and technical specifications of recording devices utilized during the investigation conducted by DEA in this case.  In addition, the government seeks permission to have its lead investigative officer seated at counsel's table throughout the trial.

//

//

//

//

//

//

WHEREFORE, for the foregoing reasons, the United States respectfully requests that the government's omnibus *motion in limine* be granted.

Respectfully submitted this 5th day of April 2012.

> Respectfully submitted,
>
> ARTHUR G. WYATT, Chief
> Narcotic and Dangerous Drug Section
> Criminal Division
> U.S. Department of Justice

By:        */s/ Meredith A. Mills*
> Meredith A. Mills (D.C. Bar # 457843)
> Trial Attorney
> Narcotic and Dangerous Drug Section
> Criminal Division / U.S. Department of Justice
> 1400 New York Avenue, NW
> Washington, DC 20005
> Main Office: (202) 514-0917
> Fax: (202) 514-0483
> Meredith.Mills@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 5th day of April 2012, I filed the foregoing GOVERNMENT'S OMNIBUS MOTION *IN LIMINE* with the Clerk of the Court via the CM/ECF system which will deliver a Notice of Electronic Filing on the following related and consolidated cases:

<u>Counsel for Defendant YAHYA ALI ZAITAR</u>
Barry Coburn, Esq.
Coburn & Greenbaum PLLC
1710 Rhode Island Avenue, NW, Second Floor
Washington, DC  20036
Tel: 202-657-4490 / Fax: 866-561-9712 / barry@coburngreenbaum.com

<u>Counsel for Defendant NEMR ALI ZHAYTER</u>
Carmen D. Hernandez, Esq.
7166 Mink Hollow Road
Highland, MD 20777
Telephone: 202-628-0090 / Direct: 240-472-3391 / Fax: 202-628-2881 / chernan7@aol.com

By:        */s/ Meredith A. Mills*
           Meredith A. Mills (D.C. Bar # 457843)
           Trial Attorney
           Narcotic and Dangerous Drug Section
           Criminal Division / U.S. Department of Justice
           1400 New York Avenue, NW
           Washington, DC 20005
           Main Office: (202) 514-0917
           Fax: (202) 514-0483
           Meredith.Mills@usdoj.gov