USA v. Zhayter
08-cr-214 (RMC)

**FILED**
MAY - 2 2012
Clerk, U.S. District and
Bankruptcy Courts

**JOINT STATEMENT OF STIPULATED FACTS**

1. The following statement of facts does not purport to include all the defendant's illegal conduct during the course of his charged offense. Nor does it purport to be an inclusive recitation of all that the defendant heard, knew, or witnessed concerning the illegal activities of himself or those of his co-conspirators. It represents enough information for the Court to find a factual basis for accepting the defendant's guilty plea in the above-captioned matter.

2. From in or about May 2007, and continuing thereafter up to and including July 17, 2008, in Paraguay, Brazil, Romania, and elsewhere, the defendant, NEMR ALI ZHAYTER, a/k/a "Shadi," knowingly and unlawfully combined, conspired, confederated and agreed with co-conspirator Yahya Ali Zaitar, a/k/a "Yehya Ali Daoud Zeiter," a/k/a "Abu Rabih," (hereafter referred to as "Zaitar") and others, both known and unknown, to (a) knowingly and intentionally import 100 grams or more of heroin, a Schedule I controlled substance, into the United States, in violation of 21 U.S.C. § 952, and (b) knowingly and intentionally distribute 100 grams or more of heroin, a Schedule I controlled substance, intending and knowing the heroin would be unlawfully imported into the United States, in violation of 21 U.S.C. § 959(a), all in violation of 21 U.S.C. §§ 960(b)(2)(A) and 963, and 18 U.S.C. § 2.

3. From in or about May 2007 and continuing thereafter up to and including July 17, 2008, the defendant was a member of a narcotics trafficking organization ("DTO") operating in the Tri-Border area of Paraguay, Brazil and Argentina and in various locations in the Middle East, to include Lebanon. The defendant's associates in the DTO included his brother and co-conspirator, Zaitar, as well as others known and unknown.

4. In or about early April 2008, the defendant became aware that his brother, Zaitar, had traveled to Bucharest, Romania to meet in person with a potential large scale heroin buyer to

discuss a multiple kilogram quantity deal.  The buyer was an undercover law enforcement agent.  While Zaitar was in Romania negotiating the deal, the defendant and Zaitar discussed by telephone the logistics of the transaction on numerous occasions.  These calls were intercepted pursuant to a lawful court-authorized wiretap conducted by Romanian law enforcement authorities.

      5.      During and in furtherance of the conspiracy, the defendant agreed in those intercepted calls to assist Zaitar in coordinating the transport of a one to three kilogram sample of high quality heroin ("test sample") from their drug associates in the Middle East for delivery by a courier to Zaitar and the buyer (the undercover agent) in Bucharest, Romania.  The defendant knew that the quantity was a distribution amount.  Based on his telephone conversations with Zaitar, the defendant also knew that the buyer (the undercover agent) was an American and the heroin sample was destined for importation into the United States for distribution purposes.

      6.      The defendant agreed during the calls with Zaitar to procure the drug couriers to transport and deliver the heroin sample from Lebanon to Romania, plan the courier's itinerary, obtain the requisite travel documents, and pay the couriers' travel costs and smuggling fees.  The defendant recruited or attempted to recruit several couriers to transport the heroin to Zaitar.

      7.      The defendant also agreed during the calls to consult, and did consult, on Zaitar's behalf, with other organizational members and a source of supply, in order to obtain information on the price and availability of a kilogram of heroin, the supplier's ability to fulfill the test sample order during the week Zaitar was in Romania, and the logistics for the transport of the heroin from the supplier in Lebanon.  The defendant and Zaitar discussed the various price quotes received which ranged from 16,000 Euros to 28,000 Euros per kilogram of heroin.  Defendant and Zaitar also arranged together for the down payment to the Lebanon-based supplier

to manufacture the heroin, and planned how the money for the heroin purchase would be transferred to the DTO from America by the buyer.  The defendant periodically reported to Zaitar on the status of the manufacture and transport of the heroin sample from Lebanon after talking with the Lebanon-based organizational members.  In addition, at Zaitar's direction, the defendant also coordinated the organizational members' quality testing and packaging of the heroin into a suitcase for delivery to Zaitar.

8. During the court-authorized intercepted calls, the defendant and Zaitar also discussed the future multi-kilogram quantities of heroin to be purchased by the buyer (the undercover agent) from the DTO for importation into the United States, after the sample was delivered.

9. The defendant was arrested in Paraguay in connection with the offenses on or about August 6, 2008, and remained in custody from that time until his extradition to the United States.

10. The defendant acknowledges that he distributed or conspired to import or distribute, or it is reasonably foreseeable to him that members of the conspiracy distributed or conspired to import or distribute, heroin in the amount of at least 1 kilogram but less than 3 kilograms of heroin.

DEFENDANT'S ACKNOWLEDGMENT

I have reviewed an Arabic (Lebanese dialect) translation of this factual proffer and have discussed it with my attorney, Carmen D. Hernandez, Esquire. I fully understand this factual proffer. I agree and acknowledge by my signature that this proffer of facts is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand this factual proffer fully. This factual proffer has been translated into Arabic (Lebanese dialect) for me. I understand that the English version controls.

_____    _____
NEMR ALI ZHAYTER,                   Date
a/k/a "Shadi"
Defendant


ATTORNEY'S ACKNOWLEDGMENT

I have read this factual proffer, and have reviewed it fully with my client with the assistance of a professionally qualified English-Arabic (Lebanese dialect) interpreter.

_____    _____
Carmen D. Hernandez, Esquire        Date
Attorney for Defendant

4