**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| vs. | * | Case No.  1:08-cr-00214-RMC |
| **NEMR ALI ZHAYTER,** | * | |
| **Defendant** | ****** | |

**MEMORANDUM IN AID OF SENTENCING**

Nemr Ali Zhayter, through undersigned counsel, hereby respectfully submits this memorandum in aid of sentencing, which is scheduled for June 14, 2012.  There are no factual or legal disputes between the parties.  Mr. Zhayter respectfully requests that this Honorable Court impose a sentence of fifty-four months or time-served.  Such a sentence is reasonable as it takes into account his acceptance of responsibility and limited involvement in the offense; considers the unique mitigating facts and circumstances of the case; and provides just punishment, protects the public, deters, and considers rehabilitation, as required under 18  U.S.C. § 3553(a).

**I.    INTRODUCTION**

There are a number of mitigating factors in this case.  As more fully set forth below, by pleading guilty, Nemr Zhayter broke the logjam and paved the  way for his brother's guilty plea and for the anticipated guilty plea of Amer Zoher El Hossni, in case No 1:08-cr-00172-BJR-2, which had previously been assigned to Your Honor.  This has saved substantial government resources and Court time.  He has been detained away from his family and child and has attempted to rehabilitate himself as best he could while at the D.C. Jail, participating in educational courses and tutoring others.  His participation in the offense was relatively limited and this is Mr. Zhayter's first involvement with drug trafficking into the United States.

The government will recommend a sentence of 70 months imprisonment, which is the low end of the sentencing range for Mr. Zhayter's guideline calculation. Mr. Zhayter respectfully requests that the Court grant a 6-month downward departure pursuant to *United States v. Smith,* 27 F.3d 649 (D.C. Cir. 1994) based on the fortuitous increase in the severity of his sentence as a result of his status as a deportable alien and further reduce his sentence pursuant to 18 U.S.C. § 3553(a) based on the nature and circumstances of the case and his history and characteristics pursuant to 18 U.S.C. § 3553(a). Were the Court to grant the *Smith* reduction from the 70-month recommended sentence, his sentence would be 64 months. Pursuant to 18 U.S.C. § 3624(b), good time credit on a sentence of 64 months would reduce his sentence by 9-1/2 months.[1] As of the date of sentencing, Mr. Zhayter will have already served 46 months of pretrial detention, for which he is entitled to full credit toward the service of his sentence. With good-time credit and the *Smith* departure, Mr. Zhayter would have an additional nine months to serve. Instead, were the Court to impose a sentence of 54 months as he requests, once the good-time credit and credit for time served is deducted, Mr. Zhayter would be in line for transfer to an ICE facility to await deportation.

Mr. Zhayter respectfully requests that instead of requiring that Mr. Zhayter serve an additional 9 to 10 month sentence, the Court sentence Mr. Zhayter to 54 months or time-served. That would eliminate an unnecessary expense to the United States in transporting him to a federal institution and the later transportation to an ICE facility to await deportation. The additional 10 months imprisonment would not substantially further the purposes of sentencing. A sentence of time-served would allow Mr. Zhayter to go home to his family and children without the additional expense to the Government and takes into account the time he will be detained awaiting deportation.

---

[1] The good-time credit works out to approximately 85% of the term imposed.

## II. PLEA AND GUIDELINE RANGE

### A. Guilty Plea and Safety Valve

Mr. Zhayter pleaded guilty to an Information that charged him with conspiracy to import and distribute 100 grams or more of heroin, knowing or intending that it would be imported into the United States in violation of 21 U.S.C. §§ 952, 959(a) and 963. Doc. 102. The offense carries a statutory maximum term of 40 years imprisonment and a 5-year mandatory minimum. 21 U.S.C. § 960(a)(3). However, because Mr. Zhayter provided a truthful proffer to the government regarding his involvement in the offense and he meets the other requirements for application of the Safety Valve, no mandatory minimum applies in the case. *See* 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2.

Mr. Zhayter wilfully and knowingly participated in the conspiracy. However, he was not a leader or organizer. Mr. Zhayter's direct involvement in the conspiracy spanned a one-week period in April, 2008 during which time he assisted his brother, Yahya Zaitar by attempting to secure couriers, who would transport a 1 to 3 kilogram sample quantity of heroin from Lebanon to Romania, where his brother would receive the heroin. Based on his telephone conversations with Yahya Zaitar, Nemr Zhayter knew that the supposed buyer for the heroin was an American, who planned to transport the sample to America for distribution and had discussed future multi-kilogram quantities purchases after the sample was delivered.

At the time of these telephone conversations, his brother, Yahya Zaitar was in Bucharest, Romania where he had traveled with an undercover officer and a confidential source, who posed as drug traffickers interested in purchasing large quantities of heroin for distribution in America. During the week when Yahya was in Romania, he telephoned Nemr Zhayter in Paraguay a number of times asking him to make arrangements for the couriers. At Yahya's request, Nemr made several

3

phone calls to the persons in Lebanon, who were manufacturing the heroin. At all times, Nemr remained in Paraguay.

**B.     Guideline Calculation**

Pursuant to the plea agreement, the following guideline calculation applies:

```
Base Offense Level, § 2D1.1(c)(4) (1 to 3 kilograms heroin). . . . . . . . . . . . . . . . 32
Safety Valve, § 2D1.1(b)(16). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2
Acceptance of Responsibility, § 3E1.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -3

Total Offense Level. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
```

*See* Presentence Report ("PSR") at ¶¶ 38-47. Mr. Zhayter's criminal history category is I. PSR at ¶¶ 48-50. This results in a guideline range of 70 to 87 months. PSR at ¶ 52. The government agreed to recommend a sentence of 70 months. Plea Agreement, Doc. 104 at ¶ 12.

**C.     *Smith* Downward Departure**

The parties agreed that Mr. Zhayter could seek a downward departure of six months, pursuant to the authority of *United States v. Smith*, 27 F.3d 649 (D.C. Cir. 1994). In *Smith,* the D.C. Circuit held that such a downward departure is warranted where a "where the defendant's status as a deportable alien is likely to cause a fortuitous increase in the severity of his sentence." *Smith*, 27 F.3d at 655. As a deportable alien, Mr. Zhayter will indeed be subject to increased severity in his confinement.

For example, he will not be eligible for placement in a minimum security prison or a camp due to an increased security designation. *See* BOP Program Statement ("P.S.") 5100.07 (applying Public Safety Factors (PSF) to a deportable alien).[2] He will not be eligible for a full 54-day good

---

[2] While the increased security designation may be waived for a defendant with a history of strong family or community ties, domicile in the U.S. of five years or more, and stable employment, Mr. Zhayter would not qualify as he had not been domiciled in the United States for any period.

time credit reduction because he is barred from participation in the literacy program. *See* BOP P.S. 5350.28 at 8. He will also not be eligible for community confinement or other similar transitional placement programs pursuant to BOP P.S. 7310.04. This precludes serving the final portion of his sentence in a halfway house or community correctional center as provided for all other federal prisoners. *Compare* 18 U.S.C. § 3624(c) (BOP shall assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed 12 months, of the last 10% of his term in a halfway house or home confinement). *See also United States v. Bakeas*, 987 F. Supp. 44 (D. Mass. 1997) (Gertner, J.) (departed down from a 12-month sentence to a sentence of probation with a number of restrictions that would approximate imprisonment in a prison camp for a defendant, who would have been denied minimum security classification because of his status as a deportable alien).

Moreover, after Mr. Zhayter completes the sentence imposed by this Court, he will be detained an additional number of months in the custody of ICE awaiting deportation. In counsel's experience, that time under the best of circumstances will be at least 3 months and as long as 6 months or more after he completes service of the sentence imposed by this Court.

As an alien, Mr. Zhayter also is completely cut off from his family, wife and children, none of whom have been able to visit him while he is imprisoned in the United States because of the cost of travel and because they lack visas to enter the United States. The cost of foreign telephone calls for an inmate is also prohibitive so that even minimal contact with Mr. Zhayter's wife and children, has been and will continue to be quite limited. *See, e.g.,* 28 C.F.R. § 540.105(a) (inmate responsible for costs of telephone calls, regulations do not allow use of reduced price options); 28 C.F.R. § 540.102 (calls must be through the Inmate Telephone System).

Further, as the Court is aware, in this district most of extradited foreign defendants are

granted the 6-month *Smith* departure.  In a similar case that involved the actual importation of 70 kilograms of heroin into the United States, Judge Huvelle granted a 6-month *Smith* departure over the government's objection and sentenced the defendant to 42 months imprisonment.  *See United States v. Lorente*, No. 03-cr-491-05 (ESH).  Mr. Lorente was a boat captain who imported 40 kilograms of heroin on a sailboat to Puerto Rico for a Colombian drug trafficking organization and had previously imported another 30 kilograms of heroin and 10 kilograms of cocaine for the same organization.  *See Lorente* Statement of Facts, Doc. 134 at 3-4.  There are a number of other cases where undersigned counsel has represented extradited defendants, where a *Smith* departure has been granted.[3]  *See also United States v. Navarro-Diaz*, 420 F.3d 581 (6th Cir. 2005) (illegal reentry case remanded in light of *Booker* where district court noted defendant would be punished more than a citizen due to ineligibility for six months half way house at end of term); *United States v. Davoudi*, 172 F.3d 1130 (9th Cir.1999) (ineligibility for minimum security designation of up to six months of home confinement authorized by 18 U.S.C. § 3624(c) can justify departure); *see United States v. Pacheco-Soto,* 386 F. Supp. 2d 1198 (D.N.M.2005) (deportable alien convicted of drug crime sentenced to 60 months, rather than minimum guideline term of 74 months, in light of his ineligibility for early release, minimum security prison, or credits for participation in residential drug or alcohol abuse program).

Accordingly, this is not a case where the additional 6-month sentence reduction is out of line with the nature of the defendant's offense.  For all these reasons, therefore, Mr. Zhayter respectfully requests that this Court grant him a 6-month downward departure under the authority of *United*

---

[3] *See, e.g., United States v. LNU*, No. 07-0270 (Judge Walton accepted 11(c)(1)(C) pleas ranging from 30 months (36 - 6 month *Smith* reduction) to 42 months (48 - 6-month Smith reduction) in case involving the actual importation of multi-kilograms quantities of cocaine).

*States v. Smith, supra*.

### III. A SENTENCE OF FIFTY-FOUR MONTHS OR TIME-SERVED IS REASONABLE AND COMPLIES WITH PURPOSES OF SENTENCING AS REQUIRED BY 18 U.S.C. § 3553(A)

Section 3553(a) directs district courts to impose a sentence that is "sufficient, but not greater than necessary" to provide just punishment, protect the public, deter, and provide defendants with needed rehabilitation. In determining the sentence to impose, district courts are required to consider several factors including the nature and circumstances of the offense and the history and characteristics of the defendant; the kinds of sentences available; the federal sentencing guidelines and policy statements; the purposes of sentencing; and the need to avoid unwarranted sentencing disparities. The plea agreement in this case provides for a sentence of forty-months, which under all the relevant circumstances is reasonable and complies with the statutory mandate in 18 U.S.C. § 3553(a).

The plea agreement does not precludes the defendant from seeking a downward departure but does not include any limitation on defense requests for downward variances pursuant to 18 U.S.C. § 3553(a). As the Supreme Court has noted, a "'departure' is a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines"; in contrast, a "variance" refers to a non-Guidelines sentence outside the Guidelines framework." *Pepper v. United States*, 131 S.Ct. 1229, 1245 (2011). While there may be some overlap between downward departures and variances, it is clear that these are different concepts. *See Rita v. United States,* 127 S. Ct. 2456, 2473 (2007) ("The Commission has not developed any standards or recommendations that affect sentencing ranges for many individual characteristics. Matters such as age, education, mental or emotional condition . . . family ties . . . are not ordinarily

considered under the Guidelines. See USSG. Manual §§ 5H1.1-6, 11, and 12 ). These are, however, matters that § 3553(a) authorizes the sentencing judge to consider. See, *e.g.,* 18 U.S.C. § 3553(a)(1))." Hence, Mr. Zhayter is free to request that this Court vary down from the guideline range pursuant to 18 U.S.C. § 3553(a).

### A.   Nature and Circumstances of the Offense and History and Characteristics of the Defendant

Mr. Zhayter acknowledges that his conduct relevant to this case is inexcusable and he has fully accepted responsibility for what he did. He acknowledges before the Court the harm his involvement causes to others and assures the Court that he will never again become involved in illegal activity. Although his family unit, including his wife and two sons, remains intact, he has lost essential years with his children, which the children will never get back.

Moreover, Mr. Zhayter's active participation in the offense, which spanned a period of one-week mitigates the punishment he should face. He was not the leader or organizer. His primary role was to procure the couriers at the request of his brother and to assist him by speaking to the heroin suppliers in Lebanon. In this effort, he made a number of phone calls at his brother's request and remained in Paraguay throughout this time. *See United States v. Adelson*, 441 F. Supp. 2d 506 (S.D. N.Y. 2006) (Rakoff, J.) (in securities fraud case, below guideline sentence imposed in part because defendant did not participate in conspiracy until its final months).[4]

---

[4] This was Mr. Zhayter's first involvement with drug trafficking involving the United States, which also mitigates the punishment when compared to similarly situated defendants. *See United States v. Azeem*, 946 F.2d 13, 16 (2d Cir.1991) (transaction involving drugs intended for other countries "was not a crime against the United States" and should not count as relevant conduct); *see also United States v. Arbane*, 446 F.3d 1223, 1229-30 (11th Cir. 2006) (drug trafficking activities in South America not knowingly intended for importation into the United States are not crimes in the United States). In the usual case, defendants have been involved in ongoing drug trafficking into or within the United States when the government finally catches up with them.

While at the D.C. Jail, Mr. Zhayter has attempted to rehabilitate himself. He has availed himself of the limited educational program at the jail and is even serving as a tutor to others. This is a mitigating factor. *See, e.g., United States v. Bradstreet*, 207 F.3d 76 (1st Cir. 2000) (sentence reduction from 51 to 31 months at re-sentencing in securities fraud case properly based on post-offense rehabilitation wherein defendant tutored inmates in prison).

Mr. Zhayter is married and the father of two young children. In Paraguay, he ran a retail business selling electronic equipment. He was not a wealthy man and is indigent, being represented by court-appointed counsel. Until his arrest, he was the sole support for his family.

His son has written a note for the Court to take into consideration in which he writes:

> I am writing you this letter to request that you put all your effort so that my father gets out of prison and comes back to be with us. I miss him a great deal and I pray every day for him to return home.
>
> When we go to parents' nights at the school, all of the children go with their fathers and mothers, but my mother and I go by ourselves. I miss him at meal time and at home. I also miss his affection and love, which I have been denied for many years. I am growing without him near me. My mother does not have any work; my father was the sole breadwinner and took care of all of our expenses and needs. Since he left, our situation has not been as good as it used to be.
>
> I urge you to return my father to us.[5]

The Court can take into account the effect of incarceration on the well-being of Mr. Zhayter's wife and children. *See Rita v. United States,* 127 S. Ct. at 2473 (family ties proper consideration under § 3553(a)); *In Re Sealed Case*, 292 F.3d 913 (D.C. Cir. 2002) (district court may properly consider

---

[5] The note was translated from Arabic by Ghada Attieh, the defense translator.

"defendant's acceptance of responsibility, her desire to seek rehabilitation, and her family and community ties" in a totality of the circumstances analysis even though Commission considered these factors separately).

### B.     Pretrial Incarceration

The nearly four years that Mr. Zhayter has spent in pretrial detention is extraordinarily long, even for extradition cases involving multiple defendants. As the Court is well aware, conditions of confinement and opportunities for training and other services at the D.C. Jail, a local facility, are less favorable than those available at federal facilities. Also, despite his exemplary conduct, extradited defendants are placed in solitary segregation for months upon arrival and do not have access to placement at CTF. In addition, our own State Department recognizes that the conditions of confinement in Paraguay jails are "deplorable" and do not meet international standard of care.[6] It thus makes sense for this Court to take that into consideration in imposing sentence. *See, e.g., United States v. Carty*, 263 F.3d 191 (2d Cir. 2001) (finding that pre-trial confinement in Dominican Republic where conditions were bad may be a permissible basis for downward departure); *United States v. Ortiz*, 2007 WL4208842 (D. N.J. Nov. 27, 2007) (granting downward variance from

---

[6] As noted in the most recent US State Department Country Report on Paraguay:

> Prison and detention center conditions generally did not meet international standards. In August the Senate Human Rights Committee reiterated the Senate's Special Committee on Penal Reform and Penitentiaries' 2006 finding that prisons remained in "deplorable" condition. The most serious problems included violence, mistreatment, overcrowding, inadequate staffing, deteriorating infrastructure, unsanitary living conditions, poor food safety standards, and inadequate medical and psychological care.

Report found at http://www.state.gov/g/drl/rls/hrrpt/2008/wha/119169.htm

guidelines range based on horrible pretrial prison conditions). Lastly, as noted above, Mr. Zhayter will be detained for an additional period of time in ICE facilities while he awaits extradition.

        **C.**       **Positive Effect on the Administration of Justice**

As the Court is well aware, this and the related cases have consumed a lot of resources in time and money and a trial would have taxed those resources even further. By pleading guilty, Mr. Zhayter "broke the log jam" which set in motion the plea agreement reached by his brother. It also facilitated the plea in the related case, *United States v. Amer Zoher El Hossni*, No 1:08-cr-00172-BJR-2. This has saved the Court and the government the time and expense of trying two additional cases. The Court may take this into account in determining the sentence to impose in the instant case. *See United States v. Garcia*, 926 F.2d 125, 128 (2d Cir. 1991) (sentence reduction warranted where guilty plea led others to plead guilty which "broke the log jam" in multi-defendant case thus facilitating the administration of justice).

        **D.**       **Disparity Among Similarly Situated Defendants**

Section 3553(a)(6) requires the Court to avoid unwarranted disparities among similarly situated defendants. In this district, extradited defendants who have been involved in on-going drug importation conspiracies of similar or larger scale have been sentenced to lower than 70-month sentences. *See, e.g., United States v. Lorente*, No. 03-cr-491-05 (ESH) (42-month sentence in heroin importation case involving 70 kilos); *United States v. Montero-Monsalvo,* No. 07-cr-00223-RMC-1 (36-month imprisonment in case where defendant was transporter of cocaine for a Colombian organization that supplied and transported multi-ton quantities of cocaine to the United States); *United States v. Montano*, 05-CR-316 (ESH) (several defendants sentenced to time served, one acquitted at trial, one sentenced to 36 months); *United States v. Royas-Yepes*, 04-CR-465 (RMC)

(three defendants sentenced to time served); *United States v. Ramirez*, 09-CR-310 (RBW) (two defendants sentenced to 30 months).

## IV.   PURPOSES OF SENTENCING

The Court is required to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing:  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. §§ 3553(a)(1) & (2)

### A.   Seriousness of the offense, respect for the law just punishment

Mr. Zhayter's offense is undoubtedly serious although because no drugs were actually imported the harm is not as great as when an offense is consummated.  However, he has demonstrated his respect for the law and the legal process by accepting responsibility, agreeing to plead guilty so as to avoid the need for a trial and attending strain on judicial and additional government resources.  Moreover, he provided a truthful Safety Valve proffer, which is a step further than merely accepting responsibility for the offense.  As a result of this conviction, Mr. Zhayter will be unable to return to Paraguay, where he had been living.  Considering that he was not the leader, and that his activities were fairly limited, a sentence of 54 months or less is appropriate. Additionally, the fact that he has been and will continue to be isolated from his family, who have had to move back to Lebanon, adds another dimension to his punishment that domestic inmates do not have to endure.

**B. Deterrence to criminal conduct and protection from further crimes**

As the Court is aware, Mr. Zhayter is a citizen of Lebanon, who will be returned to that country upon completion of his sentence. Until this offense, he had not posed a risk to the United States and he will not pose a further risk to the United States. As noted previously, he and his family have already paid a heavy price for his activities.

**C.     Provide treatment and training**

Mr. Zhayter does not have a history of substance abuse or any mental health problems. Thus, a sentence of incarceration will does not need to include any treatment or counseling for such issues.

## CONCLUSION

For all these reasons, therefore, Mr. Zhayter respectfully requests that this Honorable Court sentence him to a sentence no greater than 54-months imprisonment. Such a sentence would take into account all the mitigating circumstances set out above and comply with the purposes of sentencing as required by 18 U.S.C. § 3553(a). It would be a sentence in the best tradition of federal judicial discretion, that would consider Mr. Zhayter as an individual and account for his unique failings and positive attributes that, in the words of Justice Kennedy "sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Rita v. United States,* 551 U.S. at 364, (Stevens, J. concurring), *citing, Koon v. United States*, 116 S. Ct. 2035, 2053 (1996).

Respectfully submitted,
*/s/ Carmen D. Hernandez*
**Carmen D. Hernandez**
Bar No MD03366
7166 Mink Hollow Rd
Highland, MD 20777
(240) 472-3391; (301) 854-0076 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the instant motion was served on all counsel of record via ECF this 12th day of June, 2012.

*/s/ Carmen D. Hernandez*
**Carmen D. Hernandez**